UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS
COALITION, et al.,

        Plaintiffs,

    v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

        Defendants.

Civil Action No. 23-3344 (CJN)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

THOMAS W. DUFFEY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 5

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 7

    I.     Defendants Conducted an Adequate Search ........................................... 9

          A.     Enforcement and Removal Operations' Search Was Appropriate .......... 11

          B.     Homeland Security Investigations' Search in Response to Plaintiff's FOIA Request was Appropriate ........................................................................... 13

    II.    Defendants Properly Withheld Information Pursuant to Exemption 7(E)............ 14

          A.     Threshold Requirements of Exemption 7 .................................................. 15

          B.     Defendants Properly Applied Exemption 7(E) Withholdings .................. 17

    III.    Defendants Have Released All Segregable Information. ..................................... 19

    IV.    Plaintiffs' Argument That ICE Cannot Avail Itself of Additional Time Is Moot  19

CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

*Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*,
567 F. Supp. 3d 97 (D.D.C. 2021) .............................................................. 17, 18, 19

*Allen v. U.S. Secret Serv.*,
335 F. Supp. 2d 95 (D.D.C. 2004) ............................................................... 7

*Ancient Coin Collectors Guild v. Dep't of State*,
641 F. 3d 504 (D.C. Cir. 2011) .................................................................... 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................... 6, 7

*Banks v. Dep't of Just.*,
538 F. Supp. 2d 228 (D.D.C. 2008) ............................................................ 15

*Benjamin v. Dep't of State*,
178 F. Supp. 3d 1 (D.D.C. 2016) ................................................................ 7

*Blackwell v. FBI*,
646 F.3d 37 (D.C. Cir. 2011) ...................................................................... 17, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................... 6-7

*Ctr. for Nat'l Policy Review on Race & Urb. Issues v. Weinberger*,
502 F.2d 370 (D.C. Cir. 1974) .................................................................... 15

*Department and ICE, Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*,
573 F. Supp. 3d 78 (D.D.C. 2021) .............................................................. 8, 9

*Jud. Watch, Inc. v. Dep't of Com.*,
337 F. Supp. 2d 146 (D.D.C. 2004) ............................................................ 17

*Keys v. Dep't of Just.*,
830 F.2d 337 (D.C. Cir. 1987) .................................................................... 16

*McErlean v. Dep't of Just., Civ. A.*
1999 WL 791680 (S.D.N.Y. Sept. 30, 1999) ............................................. 15

*McGehee v. CIA*,
697 F.2d 1095 (D.C. Cir. 1983) .................................................................. 7

*Media Rsch. Ctr. v. Dep't of Just.*,
818 F. Supp. 2d 131 (D.D.C. 2011) ............................................................ 10-11

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ...................................................................... 9, 10, 11, 12, 13

*Pratt v. Webster*,
   673 F.2d 408 (D.C. Cir. 1982) ...................................................................... 15, 16

*Santana v. Dep't of Just.*,
   828 F. Supp. 2d 204 (D.D.C. 2011) ...................................................................... 7

*Tax Analysts v. IRS*,
   294 F.3d 71 (D.C. Cir. 2002) ...................................................................... 16

*Techserve All. v. Napolitano*,
   803 F. Supp. 2d 16–29 (D.D.C. 2011) ...................................................................... 17

*Valencia-Lucena v. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ...................................................................... 7

*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980) ...................................................................... 7

*Weisberg v. Dep't of Just.*,
   705 F.2d 1344 (D.C. Cir. 1983) ...................................................................... 9

*Zadvydas v. Davis*,
   533 U.S. 678 (2001) ...................................................................... 14

## **Statutes**

5 U.S.C. § 552 ...................................................................... 8, 15, 17, 19

8 U.S.C. § 1103 ...................................................................... 16, 17

## **Rules**

Fed. R. Civ. P. 56 ...................................................................... 6

Defendants, the United States Department of Homeland Security (the "Department") and United States Immigration and Customs Enforcement ("ICE") (collectively "Defendants"), respectfully submit this memorandum of Points and Authorities in opposition to Plaintiffs' motion for summary judgment and in support of Defendants' cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 in this Freedom of Information Act ("FOIA") case.

## INTRODUCTION

This matter was brought before this Court prematurely and unnecessarily by the Plaintiffs. The complaint in this matter was filed on November 8, 2023 (Compl., ECF No. 1), arising out of a FOIA request dated August 29, 2023.  *See* Compl. Ex. A, ECF No. 1-1.  The request sought information related to the detention of Plaintiff Roberto Carlos Rodriguez Guerra.  *Id*.  ICE promptly responded to Plaintiffs' FOIA request on September 15, 2023, assigning the request tracking number 2023-ICFO-40841, and informing Plaintiffs' counsel that due to the large number of FOIA requests received by ICE, there would be a delay in processing the request, and that the request would "necessitate a thorough and wide-ranging search[.]" Compl. Ex. B, ECF No. 1-2.

On October 12, 2023, Plaintiff sent a status inquiry letter to ICE.  The ICE FOIA Office responded the following day, stating: "[a]s of today, your request is currently pending the search for responsive documents. If any responsive records are located, they will be reviewed for a determination of releasability."  Pineiro Decl. ¶ 9, enclosed herewith as Ex. 1 ("Opp'n Ex. 1").[1] The ICE FOIA Office again informed Plaintiffs' counsel that it was experiencing delays and would respond to Plaintiffs' request as expeditiously as possible.  *Id*.   Shortly thereafter, Plaintiffs filed

---

[1]       ICE's *Vaughn* index is attached to the Pineiro Declaration as attachment A.

their complaint on November 8, 2023.  The answer to the complaint was filed on January 8, 2024.

Answer, ECF No. 8.

On February 28, 2024, ICE provided Plaintiffs with its response to the FOIA request,

producing forty-eight pages with partial withholdings pursuant to FOIA Exemptions 6, 7(C),

and 7(E).  Pineiro Decl. ¶¶ 43, 44, Opp'n Ex. 1; Release Letter, Opp'n Ex. 2.  ICE also withheld

information pursuant to Exemption 5 in the February 28, 2024, release.  Although Exemption 5

withholdings were properly applied, ICE decided to exercise its discretion and lift those redactions.

Pineiro Decl. at n.3, Opp'n Ex. 1.  Plaintiffs have not challenged the withholdings made pursuant

to Exemptions 6 or 7(C).  *Id.*; *see also* Pl. Open. Br.  The records were then re-released to Plaintiffs

with the previously withheld Exemption 5 information in a supplemental release dated July 15,

2024, consisting of forty-nine pages.  Release Letter, Opp'n Ex. 3.  The one additional page

consisted of a page that had been previously marked as a duplicate but was found to be responsive.

*Id.*[2]  Thus, Plaintiffs have been provided with all records responsive to their request on two

occasions, and the first response was provided to Plaintiffs before they even filed their motion for

summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact

is one that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty

Lobby, Inc*., 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate

an absence of a genuine issue of material fact.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[2]     On March 21, 2024, after ICE made its production in February, Plaintiffs requested
expedited processing.  Pineiro Decl. ¶ 12, Opp'n Ex. 1.  But the request was moot as the FOIA
request had already been processed.

(1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)), *aff'd*, No. 16-5175, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017).  A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records, and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See, e.g.*, *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See, e.g.*, *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Santana v. Dep't of Just.*, 828 F. Supp. 2d 204, 208 (D.D.C. 2011); *Allen v. U.S. Secret Serv.*, 335 F. Supp. 2d 95, 97 (D.D.C. 2004).

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F. 3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  Further, the Court can rely on an agency's declarations "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

Here, Plaintiffs have clearly not met the standard for summary judgment; Defendants have.

## ARGUMENT

In their motion for summary judgment filed on May 20, 2024, Plaintiffs make several specious claims.  Pl. Open. Br., ECF No. 9-1

First and foremost, Plaintiffs claim they are entitled to "a ruling from this Court ordering 'the production of agency records improperly withheld.'"  Pl. Mot. at 1, ECF No. 9 (quoting 5 U.S.C. § 552(a)(4)(B)).  Plaintiffs received the responsive records on February 28, 2024, almost three months before their motion for summary judgment was filed.  Pineiro Decl. ¶¶ 43, 44, Opp'n Ex. 1; Release Letter, Opp'n Ex. 2.  The records were subsequently re-released to Plaintiff on July 15, 2024, with Exemption 5 redactions removed by Defendants.  Release Letter, Opp'n Ex. 3.

Second, Plaintiffs claim they are entitled to judgment as a matter of law because ICE failed to adjudicate the request within thirty days (Pl. Open. Br. at 8–9, ECF No. 9-1).  But ICE informed Plaintiffs promptly of the FOIA burdens placed upon ICE approximately two weeks after the request was received and Plaintiffs were notified that there would be a delay.  *See* Compl. Ex. B, ECF No. 1-2.  When Plaintiffs sent a status inquiry to ICE on October 12, 2023, the ICE FOIA office responded the next day, stating "[a]s of today, your request is currently pending the search for responsive documents.  If any responsive records are located, they will be reviewed for a determination of releasability."  Pineiro Decl. ¶ 9, Opp'n Ex. 1.  Plaintiffs were also informed that ICE "was experiencing delays and would respond to Plaintiffs' request as expeditiously as possible."  *Id*.  That is exactly what ICE did in this case.

Plaintiffs ignore the reality of FOIA, and the extreme burdens being placed on agencies such as the Department and ICE due to FOIA requests made by nonprofit FOIA plaintiffs.  In a recent FOIA case against the Department and ICE, *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78 (D.D.C. 2021), the burden faced by these agencies was described.  "FOIA has not evolved with the realities and technologies of government operations" and "[a]s outstanding requests pile up at the agencies, so do FOIA cases on court dockets."  *Id*. at 83.  Agencies now must respond to a thirty-day deadline that was enacted twenty-eight years ago in

1996.  *See* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 8(b), 110 Stat. 3048, 3052 (1996).  Agencies "often miss that deadline" and the "[f]ailure to meet that deadline brings courts into the fray."  *Id.* at 82-83.  Indeed, Plaintiffs' motion even sets forth the incredible number of FOIA requests received by ICE and the resulting backlog.  Pl. Open. Br. at 20-26, ECF No. 9-1.

Nonetheless, despite the heavy burdens placed on ICE and the huge number of FOIA requests received, Plaintiffs have twice been provided with the requested records.  Pineiro Decl. ¶¶ 43, 44, n.3, Opp'n Ex. 1; Release Letters, Opp'n Exs. 2, 3.

Finally, Plaintiffs incorrectly claim in their motion that Defendants did not conduct an adequate search (Pl. Open. Br. at 12-13, ECF No. 9-1) and misapplied Exemption 7(E) (*id.* at 17-18).  On the contrary, as explained below, ICE clearly performed an adequate search and appropriately applied Exemption 7(E) to sensitive law enforcement information.

## I.   Defendants Conducted an Adequate Search

Defendants have conducted a reasonable and adequate search in all locations likely to have responsive records.  The Pineiro declaration and Defendants' accompanying statement of material facts not in dispute demonstrate that Plaintiffs' argument regarding an inadequate search is meritless and that Defendants are entitled to summary judgment as to the search.  While Plaintiffs maintain that Defendants failed to conduct an adequate search (Pl. Open. Br. at 12-13, ECF No. 9-1), they are incorrect.

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *see also Media Rsch. Ctr. v. Dep't*

*of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011).  A reasonable search is one that covers those locations where responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records).

Mr. Pineiro is the Director of ICE's FOIA office.  Pineiro Decl. ¶ 1, Opp'n Ex. 1.  He set forth ICE's standard procedure for initiating FOIA requests, which was followed here.  *Id.*, ¶¶ 13-20.  He then sets forth the extensive search that was done in response to Plaintiffs' specific request. *Id.* ¶¶ 21-40.

ICE is the principal investigative arm of the Department and the second largest investigative agency in the federal government. *Id.*  ¶ 21.  After reviewing Plaintiff's FOIA request, the ICE FOIA Office determined that because of the subject matter, the Office of Enforcement and Removal Operations and Homeland Security Investigations were the program offices likely to have responsive records, if such records existed.  Therefore, based on their subject matter expertise and knowledge of the agency record systems, the ICE FOIA Office instructed these two program offices to conduct a comprehensive search for records and to provide all potentially responsive records located during that search to the ICE FOIA Office for review and processing.  *Id.* ¶ 22. Accordingly, all locations likely to contain records responsive to Plaintiffs' FOIA Requests were searched.  *Id.*

Enforcement and Removal Operations is responsible for the arrest and removal of non-resident noncitizens, managing ICE detention operations, and providing medical and mental health care to persons in ICE custody.  Homeland Security Investigations is the principal investigative arm of the Department, responsible for investigating transnational crime and threats, specifically those criminal organizations that exploit the global infrastructure through which international trade, travel, and finance move.  *Id.*  ¶ 23.

### A.     Enforcement and Removal Operations' Search Was Appropriate

Enforcement and Removal Operations oversees programs and conducts operations to identify and apprehend removable non-resident noncitizens, to detain these individuals when necessary, and to remove undocumented noncitizens from the United States.  Enforcement and Removal Operations prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and undocumented noncitizens who thwart immigration controls.  Enforcement and Removal Operations manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.  *Id.* ¶ 24.

When Enforcement and Removal Operations receives a FOIA tasking from the ICE FOIA Office, the request is submitted to Enforcement and Removal Operations' Information Disclosure Unit (the "Disclosure Unit").  The Disclosure Unit reviews the substance of the request and based on the subject matter expertise and knowledge of the program offices' activities within Enforcement and Removal Operations, the Disclosure Unit determines whether it can search for records, or whether it is necessary to forward the FOIA request to specific individuals and component offices to conduct searches of their file systems which in their judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any. *Id*. ¶ 25.

After this lawsuit was initiated, Enforcement and Removal Operations was tasked with performing a search.  *Id.* ¶ 26.  On December 14, 2023, upon receipt of the supplemental FOIA tasking from the ICE FOIA Office, a Management and Program Analyst in Enforcement and Removal Operations conducted a search of two ICE databases, CIS and EARM, using the terms "Rodriguez Guerra, Carlos," "03/16/1997," and "A216684164."  *Id.* ¶ 27.  On the same day, a Deportation Officer in Enforcement and Removal Operations conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra," and "A216684164." *Id.* ¶ 28.

Four days later, on December 18, 2023, a second Deportation Officer conducted a search of the EARM database using the terms "Carlos Rodriguez Guerra" and "A216684164."   The officer also conducted a search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164."  Lastly, the officer conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."  *Id.* ¶ 29.

On that same day, a Supervisory Deportation and Detention Officer (the "Supervisory Officer") conducted a search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164."  The Supervisory Officer also conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."  *Id.* ¶ 30.  In addition, on December 18, 2023, an Assistant Field Office Director conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."  *Id.* ¶ 31.

In total, seventy-three pages of potentially responsive records were found and sent to the ICE FOIA Office for review and processing.  *Id.* ¶ 32.  ICE reprocessed and released the Request for Acceptance of Alien (Form I-241) to the Dominican Republic.  The Form I-241 for the Dominican Republic was inadvertently marked as a duplicate in the February 28, 2024, production.

*Id*. ¶ 34.  Enforcement and Removal Operations conducted a reasonable search for responsive records, which did not locate a Form I-241 to Chile.  *Id*. ¶¶ 27-31, 35.

On June 25, 2024, a Deportation Officer at Enforcement and Removal Operations conducted a supplemental search of their own sent and received emails using the terms "Carlos Rodriguez Guerra," and "A216684164."  The officer also conducted a supplemental search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164."  The supplemental search did not locate a Form I-241 for Chile.  *Id*. ¶¶ 36-37.

## B.     Homeland Security Investigations' Search in Response to Plaintiff's FOIA Request was Appropriate

Homeland Security Investigations is responsible for investigating a wide range of domestic and international activities arising from the illegal movement of people and goods into, within and out of the United States. Homeland Security Investigations uses its legal authority to investigate criminal activities such as immigration crime; child exploitation; human rights violations and human smuggling; smuggling of narcotics, weapons, and other types of contraband; and financial crimes, cybercrime and export enforcement issues.  In addition to ICE criminal investigations, Homeland Security Investigations oversees the agency's international affairs operations and law enforcement intelligence functions. *Id*. ¶ 38.

On December 12, 2023, upon receipt of the initial tasking from the ICE FOIA Office, a Management Program Analyst reviewed the request and conducted a search for responsive records. The analyst conducted a search of the ICM database using the terms "Roberto Carlos Rodriguez Guerra," "Roberto Rodriguez Guerra," "Roberto Guerra," "Roberto Rodriguez," "Carlos Rodriguez Guerra," "Carlos Rodriguez," and "Carlos Roberto Guerra Rodriguez."  No responsive records were found.  *Id*. ¶¶ 39-40.

Plaintiffs incorrectly assert in their motion that ICE has "failed to produce the contents of a pivotal database" known as the electronic Post Order Custody Review system ("Custody System").  Pl. Open. Br. at 13, ECF No. 9-1.  Plaintiffs are simply incorrect about this system. Post Order Custody Review is a regulatory requirement imposed by the Supreme Court. *Zadvydas v. Davis*, 533 U.S. 678 (2001).   The Custody System is not a database, but an electronic tool that replaced a prior checklist.  As explained by Mr. Pineiro in his declaration, a post order custody review "analysis must be performed to justify a noncitizen's continued detention after being ordered removed. The electronic [Custody System] is not a database.  Instead, it is a tool which replaced the previous transfer checklist and is used to ensure that certain documents are included in the review.  The [Custody System] does not store information."  Pineiro Decl. ¶ 33, Opp'n Ex. 1.

Plaintiffs' counsel submitted a power point explaining the Post Order Custody Review process, which identifies ePOCR as a module (Pl. Mot. Ex. D at 4, ECF No. 9-7).  Moreover, counsel included as an exhibit the very records he claims are being withheld in the Custody System "database."  Plaintiffs outline the records they claim they should have received from the Custody System on page 13 of their motion.  But those documents were produced to Plaintiffs.

Thus, Defendants searched in the repositories likely to contain the requested information and appropriate personnel with knowledge of the request and the various repositories conducted the searches.  Responsive documents were provided to Plaintiff on two occasions.  Defendants are entitled to summary judgment on their search and Plaintiffs' motion for summary judgment alleging an inadequate search should be denied.

## II.   Defendants Properly Withheld Information Pursuant to Exemption 7(E)

Defendants properly withheld information pursuant to Exemption 7(E) and Plaintiffs argument to the contrary is meritless.   Plaintiffs also claim in their motion that Defendants improperly withheld information pursuant to Exemption 5.  Pl. Open. Br. at 15-17, ECF No. 9-1.

However, as stated above, Defendants made a discretionary decision to release that information in the July 2024 re-release, so that argument is moot.  Release Letter, Opp'n Ex. 3.  In their motion for summary judgment Plaintiffs only argue the appropriateness of ICE's Exemption 7(E) redactions (Pl. Open. Br. at 17-18, ECF No. 9-1), thus that is the only exemption at issue in this matter.

The Pineiro Declaration (Opp'n Ex. 1) and the accompanying *Vaughn* index (Pineiro Decl. Attach. A), demonstrate that Exemption 7(E) has been properly applied by Defendants.

### A.     Threshold Requirements of Exemption 7

Federal agencies must meet the threshold requirement of Exemption 7 before they may withhold requested documents under any of its subparts.  *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982).  That threshold requires the records or information to be "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  "In assessing whether records are compiled for law enforcement purposes . . . the focus is on how and under what circumstances the requested files were compiled, . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Banks v. Dep't of Just.*, 538 F. Supp. 2d 228, 239 (D.D.C. 2008) (citing *Jefferson v. Dep't of Just.*, 284 F.3d 172-77 (D.C. Cir. 2002)).  The types of law to be enforced for FOIA Exemption 7 purposes includes administrative, regulatory, civil, and criminal law.  *Ctr. for Nat'l Policy Review on Race & Urb. Issues v. Weinberger*, 502 F.2d 370, 373 (D.C. Cir. 1974) (holding that an administrative determination has the "salient characteristics of 'law enforcement' contemplated" by Exemption 7 threshold requirement); see also *McErlean v. Dep't of Just.*, Civ. A. No. 97-7831, 1999 WL 791680, at *8 (S.D.N.Y.  Sept. 30, 1999) (stating that "it is well-settled that documents compiled by the INS in connection with the administrative proceedings authorized by the Immigration and Naturalization Act are documents compiled for 'law enforcement purposes'").

Courts give great deference to a "criminal law enforcement agency[s']" assertion that its records were for law enforcement purposes because government agencies "typically go about their intended business." *Pratt*, 673 F.2d at 408.  Considering that deference, the D.C. Circuit has opined that an agency need only show that the nexus between the agency's activity and its law enforcement duties "must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

Here, Defendants have met the threshold requirement under Exemption 7 since the withheld information was clearly compiled for law enforcement purposes.  The information for which Exemption 7 has been asserted in the instant matter satisfies the threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103.  ICE is the largest investigative arm of the Department and is responsible for identifying and eliminating vulnerabilities within the nation's borders.  ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.  Pineiro Decl. ¶ 46, Opp'n Ex. 1.

The records and information at issue in this matter were compiled for law enforcement purposes because they pertain to ICE's obligation to enforce the immigration laws of the United States by arresting noncitizens who may be present in the United States illegally and placing certain categories of detainees in ICE-authorized detention facilities for the duration of their

immigration proceedings, as appropriate.  In particular, documents responsive to Plaintiff's FOIA request were compiled as part of an effort by ICE Office of the Principal Legal Advisor and specifically Office of Chief Counsel Washington, to effectively represent ICE and its interests in immigration law proceedings both in immigration court and before the U.S. District Court for the District of Columbia, in order to ensure that ICE is able to effectively enforce immigration laws in this jurisdiction. Therefore, all responsive ICE records were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.  *Id*. ¶ 47.

## B.      Defendants Properly Applied Exemption 7(E) Withholdings

Under Exemption 7(E), agencies may withhold records or information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption applies broadly and allows agencies to withhold information that "would provide insight into [their] investigatory or procedural techniques." *Techserve All. v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) sets "a relatively low bar for the agency to justify withholding" information).  This exemption is so broad "even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (internal citation and quotation omitted).

ICE has demonstrated the foreseeable harm that would occur if this information is released. According to *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 127-28 (D.D.C. 2021), "[w]hat an agency must do to show foreseeable harm under Exemption 7(E) is an open question…but exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm."  The Court further held: "The text of 7(E) allows withholding

only when the withheld material "could reasonably be expected to risk" circumvention of the law. Put differently, an agency must show some risk of circumvention before withholding material under 7(E). Thus, the agency must show some risk of harm." *Id*. at 128

Here, Defendants have shown the risk of circumvention of the law if the withheld information were released.   ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically disclosure of internal codes.   The internal codes withheld pursuant to Exemption 7(E) include: case number; case ID; person ID; event number; event ID; operation name; historical priority; DNA collection device number; and site code.   The codes are used to track information associated with immigration enforcement actions, such as the organization of cases, geographic locations, and other encounter-related information.   The codes also identify the public safety classifications of noncitizens and the names of law enforcement operations.   Pineiro Decl. ¶¶ 48-52, Attach. A (*Vaughn* index), Opp'n Ex. 1.

The release of internal codes could enable unauthorized parties to decipher the meaning of the codes, aid in gaining improper access to law enforcement databases, assist in the unauthorized party's navigation of the law enforcement databases and compromise of law enforcement operations.   In addition, the disclosure of law enforcement sensitive techniques, practices, or investigatory steps taken during an investigation could reveal techniques or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these internal strategies and practices could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.  *Id*. ¶ 51, Attach. A (*Vaughn* index).

Further, the disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties. *Id*. ¶ 52, Attach. A (*Vaughn* index)..

Defendants have clearly met the "low bar" for justifying withholdings under Exemption 7(E). *See Blackwell*, 646 F.3d at 42. Thus, Defendants are entitled to summary judgment on their application of Exemption 7(E), and Plaintiffs' motion should be denied.

## III.   <u>Defendants Have Released All Segregable Information.</u>

5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

A line-by-line review was conducted by Defendants to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied. With respect to the records that were released, all information not exempted from disclosure was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable. Pineiro Decl. ¶¶ 53-55, Opp'n Ex. 1.

## IV.   <u>Plaintiffs' Argument That ICE Cannot Avail Itself of Additional Time Is Moot</u>

Plaintiffs make the meritless and incongruous argument that ICE cannot avail itself of additional time under FOIA, that it has not exercised due diligence in responding to Plaintiffs' request, and that it has not reduced the backlog of pending FOIA requests. Pl. Open. Br. at 18-26, ECF No. 9-1. Defendants have responded to Plaintiffs' FOIA request and produced all responsive documents.

First, as stated above, ICE responded to Plaintiffs' FOIA request on February 28, 2024, nearly three months before Plaintiffs filed their summary judgment motion. ICE re-released the documents in July 2024 with the Exemption 5 redactions removed. Thus, Defendants have diligently responded to Plaintiffs' FOIA request on two occasions.

Further, as discussed above, Plaintiffs were informed at the outset that due to the overwhelming number of FOIA requests received by the agency, there would be a delay in responding to the request.  Indeed, Plaintiffs' motion itself describes the extremely burdensome number of FOIA requests ICE has received and the backlog of pending requests.  Despite this huge burden, Defendants have responded to Plaintiffs' request and provided the requested information, with some limited information properly withheld under Exemption 7(E).

\* \* \*

**CONCLUSION**

Based on the foregoing, Defendants' cross-motion for summary judgment should be granted and Plaintiffs' motion for summary judgment should be denied.  A proposed order is attached.

Dated: August 15, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____*/s/ Thomas W. Duffey*_____
    THOMAS W. DUFFEY
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2510
    Thomas.duffey@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Civil Action No. 23-3344 (CJN) |

## [PROPOSED] ORDER

This matter, having come before the Court on the parties' cross-motions for summary judgment, and the Court having considered the cross-motions, any oppositions thereto, and the entire record herein, it is hereby,

ORDERED that Plaintiffs' Motion for summary judgment is DENIED.  It is further

ORDERED that Defendants' cross-motion for summary judgment is GRANTED.  And it is further

ORDERED that JUDGMENT shall be entered in favor of Defendants.


Date: _____

          _____
CARL J. NICHOLS
United States District Judge