# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION<br><br>Plaintiff,<br><br>v.<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT<br><br>&<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | 1:23-cv-03344-CJN |

**DECLARATION OF FERNANDO PINEIRO**
**IN SUPPORT OF THE UNITED STATES IMMIGRATION AND**
**CUSTOMS ENFORCEMENT'S OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The

1

ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2.    As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.    The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.    The purpose of this declaration is to provide a description of how ICE received Plaintiff's FOIA request, how ICE searched for and processed records in response to Plaintiff's FOIA request, and how ICE disclosed records located in response to Plaintiff's FOIA requests.

5.    In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration explains the basis for withholding portions of the requested information pursuant to FOIA Exemption (b)(7)(E)..[1] **ICE's *Vaughn* Index is attached hereto as Attachment A.**

## I. PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

6.    This suit stems from a FOIA request Plaintiff sent to ICE dated August 29, 2023. **A true and complete copy of Plaintiffs' FOIA Request to ICE are attached hereto as Attachment B.** The FOIA request sought information related to the detention of Plaintiff's client, Roberto Carlos Rodriguez Guerra, and ICE's effort to remove Rodriguez Guerra from the United States.

---

[1] Plaintiff has not challenged the withholdings made pursuant to FOIA Exemptions (b)(6) or (b)(7)(C).

7.    The FOIA request to ICE was acknowledged on September 15, 2023, and assigned tracking number 2023-ICFO-40841.

8.    On September 15, 2023, the ICE FOIA Office tasked Enforcement and Removal Operations ("ERO") with conducting a search.

9.    Not having heard from ICE, on October 12, 2023, Plaintiff sent a status inquiry to the ICE FOIA Office.  The ICE FOIA Office responded the following day stating, "[a]s of today, your request is currently pending the search for responsive documents. If any responsive records are located, they will be reviewed for a determination of releasability." The ICE FOIA Office also informed Plaintiff that it was experiencing delays and would respond to Plaintiff's request as expeditiously as possible.

10.    On November 8, 2023, Plaintiff filed the instant Complaint in the United States District Court for the District of Columbia.

11.    Shortly after the filing of the lawsuit, the ICE FOIA Office again tasked ERO with conducting a search because ERO did not perform a search after the initial tasking.  The ICE FOIA Office also tasked Homeland Security Investigations ("HSI") with conducting a search.

12.    On March 21, 2024, after ICE made the sole production in the matter, Plaintiff requested expedited processing.

## II. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

13.    When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

14.    Proper FOIA requests are entered into a database known as Secure Release and assigned a case tracking number. Based upon the requestor's description of the records being

3

sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

15.    ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the Office of Public Affairs, the Office of Enforcement and Removal Operations ("ERO"), the Office of Professional Responsibility ("OPR"), the ICE FOIA Office, the Office of the Director, the Office of the Principal Legal Advisor ("OPLA"), and the Chief Financial Officer ("CFO"). The program offices are typically staffed with a designated point of contact ("POC") who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her respective program office.

16.    Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and task the relevant program offices with searches. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions.

4

17.     ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

18.     Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files - some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

19.     Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who determines whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

20.     Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor.

## III. DESCRIPTION OF PROGRAM OFFICE TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST

21.     ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization

Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

22.     After reviewing the instant FOIA request, the ICE FOIA Office determined that because of the subject matter of Plaintiff's FOIA Request, ERO and HSI were the program offices likely to have responsive records (if such records existed). Therefore, based on their subject matter expertise and knowledge of the agency record systems, the ICE FOIA Office instructed these program offices to conduct a comprehensive search for records and to provide all potentially responsive records located during that search to the ICE FOIA Office for review and processing. Accordingly, and based on the information described below, all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched.

23.     ERO is responsible for arrest and removal of aliens, managing ICE detention operations and providing medical and mental health care to persons in ICE custody.  HSI is the principal investigative arm of DHS, responsible for investigating transnational crime and threats, specifically those criminal organizations that exploit the global infrastructure through which international trade, travel and finance move.

### ERO's Search in Response to Plaintiff's FOIA Request

24.     ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States.  ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls.  ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.

25.     When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU").  A POC in IDU reviews the substance of the request and based on the subject matter expertise and knowledge of the program offices' activities within ERO, IDU determines whether it can search for records, or whether it is necessary

6

to forward the FOIA request to specific individuals and component offices to conduct searches of their files systems which in their judgement, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.

26. Subsequent to the initiation of the lawsuit, ERO was tasked again with performing a search.

27.    On December 14, 2023, upon receipt of the supplemental FOIA tasking from the ICE FOIA Office, a Management & Program Analyst at ERO conducted a search of two ICE databases, CIS and EARM, using the terms "Rodriguez Guerra, Carlos," "03/16/1997," and "A216684164."

28.    On the same day, a Deportation Officer ("DO") at ERO conducted a search of his/her own sent and received emails using the terms "Carlos Rodriguez Guerra," and "A216684164."

29.    Four days later, on December 18, 2023, a second DO at ERO conducted a search of the EARM database using the terms "Carlos Rodriguez Guerra" and "A216684164."   The DO also conducted a search of his/her own computer using the terms "Carlos Rodriguez Guerra" and "A216684164." Lastly, the DO conducted a search of his/her own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."

30.    On the same day, a Supervisory Deportation and Detention Officer ("SDDO") at ERO conducted a search of conducted of his/her own computer using the terms "Carlos Rodriguez Guerra" and "A216684164." The SDDO also conducted a search of his/her own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."

31.    In addition, on December 18, 2023, an Assistant Field Office Director at ERO conducted a search of his/her own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164."

32.    In total, 73 pages of potentially responsive records were found and sent to the ICE
FOIA Office for review and processing.

33.    The Post-Order Custody Review (POCR) is a regulatory requirement, arising
from a precedential decision by the Supreme Court of the United States.[2]  Pursuant to the
applicable regulations, a POCR analysis must be performed to justify a noncitizen's continued
detention after being ordered removed. The electronic POCR (ePOCR) is not a database.
Instead, it is a tool which replaced the previous transfer checklist and is used to ensure that
certain documents are included in the review. The ePOCR does not store information.

34.    ICE reprocessed and released the Request for Acceptance of Alien (Form I-241)
to the Dominican Republic.  The I-241 for the Dominican Republic was inadvertently marked as
a duplicate in the February 28, 2024, production.

35.    As detailed in Paragraphs 27-31, *supra*, ERO conducted a reasonable search for
responsive records, which did not locate a Form I-241 to Chile.

36.    On June 25, 2024, a DO at ERO conducted a supplemental search of his/her own
sent and received emails using the terms "Carlos Rodriguez Guerra," and "A216684164."  The
DO also conducted a supplemental search of his/her own computer using the terms "Carlos
Rodriguez Guerra" and "A216684164."

37.    The supplemental search did not locate a I-241 for Chile.

**<u>HSI's Search in Response to Plaintiff's FOIA Request</u>**

38.    ICE HSI is responsible for investigating a wide range of domestic and international
activities arising from the illegal movement of people and goods into, within and out of the United
States. HSI uses its legal authority to investigate criminal activities such as immigration crime;
child exploitation; human rights violations and human smuggling; smuggling of narcotics,
weapons and other types of contraband; and financial crimes, cybercrime and export enforcement

---

[2] Zadvydas v. Davis, 533 U.S 678 (2001)

issues. In addition to ICE criminal investigations, HSI oversees the agency's international affairs operations and law enforcement intelligence functions.

39.     On December 12, 2023, upon receipt of the initial tasking from the ICE FOIA Office, a MPA reviewed the request and conducted a search for responsive records. The MPA conducted a search of the ICM database using the terms "Roberto Carlos Rodriguez Guerra," "Roberto Rodriguez Guerra," "Roberto Guerra," "Roberto Rodriguez," "Carlos Rodriguez Guerra," "Carlos Rodriguez," and "Carlos Roberto Guerra Rodriguez."

40.     No responsive records were found.

## IV. ORGANIZATION OF THE *VAUGHN* INDEX

41.     Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

42.     The *Vaughn* index is in a table format. The first column contains the bates stamp suffix (page numbers) of the responsive records. The second column describes the category of withholdings taken on the documents (full or partial). The third column describes the underlying records and provides justifications for the asserted exemptions. The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions.

43.     The *Vaughn* index encompasses the responsive records produced by the program offices. ICE made one (1) production, totaling 48 pages. The records contained in these productions were subject to partial withholdings pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(E).[3]

44.     The 48 pages of records were released to Plaintiffs on February 28, 2024. A complete description of the challenged documents, and the basis for the withholdings of

---

[3] ICE maintains that the withholdings made pursuant to Exemption (b)(5) were properly applied. However, upon further consideration, ICE exercised discretion and decided to lift all the contested (b)(5) withholdings and process the information for release. Plaintiff has not challenged the withholdings made pursuant to Exemptions (b)(6) or (b)(7)(C), and, as such, this declaration does not contain justifications for withholdings applied pursuant to Exemptions (b)(6) or (b)(7)(C).

information in them, is detailed in ICE's Vaughn index. Generally, they include email communications between ICE employees regarding the detention of a noncitizen and law enforcement records.

## V. DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFF

### FOIA Exemption 5 U.S.C. § 552(b)(7)(E)

45.    5 U.S.C. § 552(b)(7) establishes a threshold requirement that, to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

46.    The information for which FOIA Exemption (b)(7) has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act, codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. See 8 U.S.C. § 1103. ICE is the largest investigative arm of DHS and is responsible for identifying and eliminating vulnerabilities within the nation's borders. ICE is tasked with preventing any activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.

47.    The records and information at issue in this matter are compiled for law enforcement purposes because they pertain to ICE's obligation to enforce the immigration laws of the United States by arresting noncitizens who may be present in the United States illegally and placing certain categories of detainees in ICE-authorized detention facilities for the duration of their immigration proceedings, as appropriate. In particular, documents responsive to the Plaintiff's FOIA request were compiled as part of an effort by ICE OPLA, and specifically OCC Washington, to effectively represent ICE and its interests in immigration law proceedings both in immigration court and before the U.S. District Court for the District of Columbia, in order to ensure that ICE is able to effectively enforce immigration laws in this jurisdiction. Therefore, all

10

responsive ICE records were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption (b)(7).

48.    FOIA Exemption 7(E) affords protection to law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

49.    Here ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically disclosure of internal codes.

50.    The internal codes withheld pursuant to Exemption 7(E) include: case number; case ID; person ID; event number; event ID; operation name; historical priority; DNA collection device number; and site code.  The codes are used to track information associated with the immigration enforcement actions, such as the organization of cases, geographic locations, and other encounter-related information.   The codes also identify the public safety classifications of noncitizens and the names of law enforcement operations.

51.    The release of internal codes could enable unauthorized parties to decipher the meaning of the codes, aid in gaining improper access to law enforcement databases, assist in the unauthorized party's navigation of the law enforcement databases and compromise of law enforcement operations.  In addition, the disclosure of law enforcement sensitive techniques, practices, or investigatory steps taken during an investigation could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these internal strategies and practices could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.

52. The disclosure of this law enforcement sensitive information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory duties.

## VI. SEGREGABILITY

53. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

54. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

55. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 15th day of July 2024.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2024.07.15 08:35:28 -04'00'

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009

ATTACHMENT A

**Capital Area Immigrants' Rights Coalition v. ICE**
No. 23-cv-03344 (D.D.C, filed 11.08.23)

U.S. Immigration and Customs Enforcement (ICE) *Vaughn* Index

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2024-ICLI-00011, 00013-14 | Partial | **Document Title**: Email titled "FW: POCR recommendation submitted for CARLOS GUERRA RODRIGUEZ" <br><br>**Document Description**: An email correspondence between a subordinate immigration officer and supervisor which contains internal codes.  **ICE no longer asserts (b)(5)** <br><br>**Redacted Information:** Internal codes <br><br>**Reason(s) for Redactions:** Exemption 7(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as case numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques and practices could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ERO during removal operations.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(5), (b)(7)(E) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 2023-ICLI-00003, 00020 | Partial | **Document Title**: Law Enforcement Database Webpage<br><br>**Document Description**: Web view of an ICE online database.<br><br>**Redacted Information:** Internal codes.<br><br>**Reason(s) for Redactions:** Exemption 7(E) exempts from release information that would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as case numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques and practices could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ERO during removal operations.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |
| 2023-ICLI- | Partial | **Document Title**: Law Enforcement Database Webpage | Freedom of Information |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 00003, 0022-23 | | **Document Description**: Web view of an ICE online database.<br><br>**Redacted Information:** Internal codes.<br><br>**Reason(s) for Redactions:** Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as case numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during removal operations.     The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | Act 5 U.S.C. § 552 (b)(7)(E) |
| 2023-ICLI-00011, 0025 | Partial | **Document Title**: Law Enforcement Database Webpage<br><br>**Document Description**: Web view of an ICE online database.<br><br>**Redacted Information:** Internal codes.<br><br>**Reason(s) for Redactions:** Exemption 7(E) affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  Disclosure of internal codes such as Law Enforcement Codes and FBI numbers could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized | Freedom of Information Act 5 U.S.C. § 552 (b)(7)(E) |

Capital Area Immigrants' Rights Coalition v. ICE - *Vaughn* Index (June 2024)

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | party's navigation of the law enforcement databases.  Disclosure of these techniques and practices for navigating the databases could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by ERO during criminal investigations.  In addition, the disclosure of law enforcement sensitive techniques, procedures, systems, undercover agent activities, staffing/resource allocation, or investigatory steps taken during a criminal investigation, could reveal techniques and/or procedures for law enforcement investigations or prosecutions, or disclose guidelines for law enforcement investigations or prosecutions which could reasonably be expected to risk circumvention of the law.  Disclosure of these techniques and practices could permit people seeking to violate or circumvent the law by taking proactive steps to counter operational and investigative actions taken by ERO during removal operations.  Further, how immigration officers conduct investigations, work with undercover agents, or allocate resources, are all law enforcement techniques and procedures that are not commonly known.  The disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities. | |
| 2023-ICLI-00011, 0031 | Partial | **Document Title**: Email titled "RE: Post-CAT Habeas 216684164"<br><br>**Document Description**: An email correspondence between a supervisor and officers on his team, where the supervisor is raising a potential concern and seeking additional information to begin assessing a possible course of action.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| | | **Reason(s) for Redactions:** Upon further consideration, ICE no longer claims the b(5) exemption as to this information and can re-process this page process to remove the redaction. | |
| 2023-ICLI-00011, 00032 | Partial | **Document Title**: Email titled "release notification" <br><br>**Document Description:** An email correspondence between a subordinate officer and a supervisor, where the subordinate is requesting the supervising officer to opine on a potential decision. <br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information. <br><br>**Reason(s) for Redactions:** Upon further consideration, ICE no longer claims the b(5) exemption as to this information and can re-process this page process to remove the redaction. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI-00011, 00038 | Partial | **Document Title**: Email titled: "Guerra-Rodriguez, Carlos Roberto 216 684 164" <br><br>**Document Description**: A correspondence between a supervisor and subordinate officer, where the supervising officer is collecting information from the subordinate officer to inform a future decision. <br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information. <br><br>**Reason(s) for Redactions** Upon further consideration, ICE no longer claims the b(5) exemption as to this information and can re-process this page process to remove the redaction. | Freedom of Information Act 5 U.S.C. § 552 (b)(5) |
| 2023-ICLI- | Partial | **Document Title**: Email Titled "POCR Guerra-Rodriguez, Carlos Roberto 216 684 164" <br><br>**Document Description**: An email communication between a supervising officer and subordinate | Freedom of Information |

| Bates Stamp Page # | Withholding: Full/Partial | Description of Records and Redactions, and Reasons for Redactions | Exemption(s) Applied |
|---|---|---|---|
| 00011, 00045-46 | | officer.<br><br>**Redacted Information:** Partial redactions pursuant to FOIA Exemption (b)(5) were made to withhold deliberative information and attorney work-product.<br><br>**Reason(s) for Redactions:**  Upon further consideration, ICE no longer claims the b(5) exemption as to this information and can re-process this page process to remove the redaction. | Act 5 U.S.C. § 552 (b)(5) |