IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 1:23-CV-03344-CJN

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et. al,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et. al,

*Defendants*.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' RESPONSE**

Daniel Melo
NC Bar # 48654
Capital Area Immigrants' Rights Coalition
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 916-8180
Fax: (202) 331-3341
Daniel.Melo@amicacenter.org
*Pro Bono Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................3

INTRODUCTION ...................................................................................................................................4

ARGUMENT............................................................................................................................................5

    I.    Defendants have demonstrably failed to conduct an adequate search or are wrongfully withholding records............................................................................................5

    II.    Defendants have improperly withheld information under Exemption 7(E). ................10

    III.    Defendants have not released all segregable information and therefore their request for additional time to complete the request is not moot..................................11

CONCLUSION.......................................................................................................................................13

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bayala v. United States Dep't of Homeland Sec.*, 827 F.3d 31 (D.C. Cir. 2016) ......................... 11

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013) ............................................................................................................................... 12, 13

*Gov't Accountability Project v. U.S. Dept. of Homeland Sec.*, 335 F. Supp. 3d 7 (D.D.C. 2018) ............................................................................................................................. 9

*Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999) ....................................................................... 10

*King v. DOJ*, 830 F.2d 210, 219-25 (D.C. Cir. 1987) .................................................................. 10

*Reporters Comm. For Freedom of Press v. FBI*, 877 F.3d 399 (D.C. Cir. 2017) ....................... 5, 9

*Roth v. DOJ*, 642 F.3d 1161 (D.C. Cir. 2011) .............................................................................. 10

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) ......................................... 5

**STATUTES**

5 U.S.C. § 552(b)(5) ..................................................................................................................... 10

5 U.S.C. § 552(b)(7)(E) ........................................................................................................... 10, 11

**OTHER AUTHORITIES**

DHS ICE, *FY 2023 Implementation Status of Public Recommendations* (March 20, 2023) ........... 7

DHS ICE, *Privacy Impact Assessment update for the Enforcement Integrated Database (EID)* (December 3, 2018) ................................................................................................................ 8

**INTRODUCTION**

This matter comes before the Court only after the Defendants' consistent failure to abide by Congressionally mandated requirements and deadlines for FOIA. Nearly a year after filing the initial request, this matter remains before this Court because of the agency's intransigence in meeting its obligations under FOIA.

Defendants' characterization of this suit as "premature[] and unnecessary[]" is disingenuous. By their own admissions, Defendants only began fulfilling their statutory obligations once prompted by the threat of intervention from the judiciary, i.e. after Plaintiffs filed this lawsuit. As noted in the agency's declaration from ICE FOIA Director Fernando Pineiro (Pineiro Declaration), the agency took two weeks to even acknowledge Plaintiffs' digital request—over half of the initial time the statute gives them to make a determination on a FOIA request—and task ICE's Enforcement and Removal Operations ("ERO") subcomponent with conducting a search for records. ECF No. 14-4 ¶¶ 6-9. Despite getting a status request from Plaintiffs on October 12, 2023, ERO had to be re-tasked with conducting the search *after* Plaintiff's initial Complaint a month later because "ERO did not perform a search after the initial tasking." *Id.* ¶ 11. ERO did not even begin looking for responsive records until December 14, 2023—nearly 4 months after Plaintiffs' relatively simple FOIA request was submitted to the agency. *Id.* ¶¶ 26-27 ("Subsequent to the initiation of the lawsuit, ERO was tasked again with performing a search. . . .").

Only after Plaintiffs filed the instant summary judgment motion did Defendants reprocess documents and remove some exemptions. *Id.* ¶¶ 21-40. And now, despite clear evidence to the contrary, they insist that they have fulfilled their obligations under FOIA. Defendants' explanation for the lack of ePOCR records is unavailing and this Court should order ICE to either release those records or for the agency to conduct an additional search if necessary. Similarly, Defendants have

not met their burden for withholdings under 7(E) and those records should also be released unredacted.

## ARGUMENT

I. **Defendants have demonstrably failed to conduct an adequate search or are wrongfully withholding records.**

To prevail on summary judgment in a FOIA case, "an agency must show that it made a good faith effort to search the requested records, using methods which can be reasonably expected to produce the information requested" and can do this through a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Reporters Comm. For Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal citation and quotation marks omitted). However, summary judgment for the agency is inappropriate if a review of the record—particularly where there are "positive indications of overlooked materials"—"raises substantial doubt as to the search's adequacy." *Id.* (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)).

The parties' central dispute around the adequacy of the search is the existence of records in or connected to the electronic Post Order Custody Review (ePOCR). The Defendants obfuscate the issue by debating what precise technical label ePOCR records should have (reflecting what appears to be a similar debate or confusion within the agency). *See* ECF No. 14-4 ¶ 33 (describing ePOCR as an "electronic tool that replaced a prior checklist"); Pl. Mot. Ex. D, ECF No. 9-7 at 4 (ICE training materials that describe ePOCR as a "module"). Regardless of the terminology used within the agency, it is clear that the contents of the ePOCR system as they relate to Mr. Rodriguez Guerra are responsive records under FOIA and should be produced.

There is good reason to doubt Defendants' description of ePOCR as little more than a digital checklist. Much of the available record in this case flatly contradicts Officer Pineiro's affidavit and the explanation for why ePOCR records were not included in the production. Officer Pineiro's affidavit states that ePOCR "is not a database" and that it "does not store information." ECF No. 14-4 ¶ 33. Yet, as ICE's own emails in the instant matter indicate, a profile and case recommendation *for Mr. Rodriguez Guerra* were created within ePOCR:

```
Sent:     9/11/2023 8:31:30 PM
To:       (b)(6),(b)(7)(C)
Subject:  POCR Guerra-Rodriguez,

H (b)(6),(b)(7)(C)

Please submit a POCR for Guerra-Rodriguez, Carlos Roberto         first thing Tuesday in ePOCR. We'll release him
on OSUP once the POCR is reviewed and the release letter is signed. You can also go ahead and prep the I-220B and
216/203 for release.

Thanks,

(b)(6),(b)(7)(C)
Supervisory Detention and Deportation Officer
Caroline Detention Facility
Washington Field Office
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
Office: 804-330 (b)(6),(b)(7)(C)
```

Excerpted from 2024-ICLI-11 at 37 (attached as Exhibit A).

The email chain goes on to confirm that a profile (or similar record) was created within ePOCR specific to Mr. Rodriguez Guerra that included unique individual and case identifiers, a review of his custody and a recommendation, and even (erroneously) whether he had a pending habeas petition:

```
From:     (b)(6) (b)(7)(C)                  @ice.dhs.gov>
Sent: Tuesday, September 12, 2023 11:06 AM
To:       (b)(6) (b)(7)(C)         @ice.dhs.gov>
Subject: POCR recommendation submitted for CARLOS GUERRA-RODRIGUEZ

Please review the POCR recommendation submitted by    (b)(6) (b)(7)(C)    for the case listed below.

                    Alien Name: CARLOS GUERRA-RODRIGUEZ
                    Alien Number:
                    Case ID:  (b)(7)(E)
                    Habeas: No

Go to ePOCR review recommendation

This e-mail was automatically generated by ePOCR, please do not reply to this e-mail.
```

6

Excerpted from 20214-ICLI-11 at 13-14 (attached as Exhibit B).

ICE's training materials also contradict Officer Pineiro's declaration about ePOCR. The training materials discuss ePOCR in numerous places, all indicating that it is more than a generic "checklist." For example, ICE created a new form for panels reviewing the detention of noncitizens in the POCR process that has "interview results and a statement of the factors that formed the basis for the recommendation. This form is *required to be uploaded into ePOCR*." ECF No. 9-7 at 6 (emphasis added). Another slide details ePOCR as a system that houses case-specific materials. *Id.* at 8 ("In addition to the record materials submitted in ePOCR by the field office, the Assistant Director (AD) for Removal or designees shall consider . . . .") Elsewhere, the training materials confirm not only that ePOCR houses records but requires updating by ICE officers; one section notes that where a noncitizen files a writ of habeas corpus triggering a request for custody review, ePOCR should be updated. *See* ECF No. 9-7 at 7.

The publicly available information about ePOCR also clearly indicates that this system contains responsive records to Plaintiffs' request. In its official 2024 Supplement to Fiscal Year 2022 Report to Congress, ICE notes "ICE ERO deployed the Electronic Post Order Custody Review (ePOCR) system (**formerly called eRMP**) for pilot expansion to 12 field offices . . . ICE ERO soon will deploy ePOCR to all field offices . . . ." DHS ICE, *FY 2023 Implementation Status of Public Recommendations* at 274 (March 20, 2023), available at https://www.dhs.gov/sites/default/files/2023-04/OCFO%20-%20Implementation%20Status%20of%20Public%20Recommendations_Remediated.pdf (relevant excerpt attached as Exhibit C) (emphasis added). ICE's publicly available information about the eRMP (Electronic Removal Management Portal) describes the system in detail:

> ICE recently developed the Electronic Removal Management Portal (eRMP) as a <u>case management system</u> to track

> [noncitizens]' custody status as they move through the Post Order Custody Review (POCR) process. . . .
>
> Before ICE created eRMP, ERO officers used various manual paper-based processes to manage the functions related to the POCR process, creating processing delays and data integrity issues. eRMP is a time-sensitive module running on a "POCR clock," which runs daily and requires ERO officers to meet milestones and accomplish actions at precise times throughout the POCR case lifecycle. . . For example, day one (1) of the POCR clock begins once the final order of removal is issued <u>and tracks the activities and other functions related to the removal of detained [noncitizens]</u> (e.g., securing travel documents, legal proceedings) throughout the ninety-day removal period. . . ERO officers can view and check the status of all active and closed cases for detainees in their AORs <u>and obtain a snapshot of their custody status during the POCR process, provide custody recommendations, and record decisions</u>.
>
> ERO officers can access eRMP from the EARM Homepage, or independently using a web address . . .

DHS ICE, *Privacy Impact Assessment update for the Enforcement Integrated Database (EID)* at 5, (December 3, 2018) available at https://www.dhs.gov/sites/default/files/publications/privacy-pia-ice-eid-december2018.pdf (emphasis added) (relevant portions attached as Exhibit D). This document establishes that the now-named ePOCR is a robust case management system that tracks numerous activities (i.e., generates records) related to individual noncitizens in the post-order removal process and stores information related to each noncitizen in that process. *See id.* at 5-6.

Directly contrary to Officer Pineiro's declaration, the *Privacy Impact Assessment* goes on to detail that eRMP/ePOCR is not only a standalone system and/or database but *specifically* houses individualized noncitizen records:

> . . . <u>To create a POCR record in eRMP</u> and begin the POCR process, an EARM case record must already exist for the detainee. <u>In a typical transaction, an ERO officer will create a POCR record once the [noncitizen] is in ICE custody</u> and a final order of removal has been issued. <u>An ERO officer then enters the detainee's A-number into eRMP to create a detainee's POCR record.</u> During the POCR process, ERO officers are required to review the entire case and

8

> submit a recommendation (known as a Decision Letter) to the appropriate supervisor to either continue the [noncitizen]'s detention or release the [noncitizen] from ICE custody. <u>The Decision Letter is generated in eRMP and must be reviewed and approved by a Field Office supervisor.</u> Once a supervisor makes the final determination and signs the Decision Letter, the letter is uploaded into eRMP, a hard copy is placed in the detainee's file, and the ERO officer must then provide the signed Decision Letter to the [noncitizen], either by certified mail or in person. . . .

*Id.* (emphasis added). Thus, ePOCR *does* store information and the credibility of Officer Pineiro's affidavit is questionable at best.

When combined with the available documents Defendants have produced so far surrounding Mr. Rodriguez Guerra and ePOCR, it is clear that ePOCR is more than just a "checklist" and has responsive records or is itself a responsive record to Plaintiffs' request. Whatever the exact technical term used to describe ePOCR within ICE, "FOIA requests are not a game of Battleship. The requester should not have to score a direct hit on the records sought based on the precise phrasing of his request." *Gov't Accountability Project v. U.S. Dept. of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018). The records generated by and available in ePOCR are perhaps the most directly responsive to Plaintiff's request of anything yet produced by the agency to date. *See* ECF No. 1, Exhibit A (Plaintiffs' FOIA Request).

Defendants have either failed to conduct an adequate search, are improperly withholding records, misunderstand or misrepresent the nature of the ePOCR system, or some combination thereof but regardless—Plaintiffs are entitled to summary judgment as a matter of law and this Court should order the disclosure of the agency's responsive records forthwith. *See Reporters Comm.*, 877 F.3d at 402.

9

## II.     Defendants improperly withheld information pursuant to Exemption 7(E).

After Plaintiffs filed for summary judgment, Defendants agreed to re-release portions of records withheld under exemption (b)(5) and thus only its application of exemption 7(E) remains as a disputed issue. *See* ECF No. 14-4. In its *Vaughn* index, Defendants apply 7(E) to a broad group of withholdings it calls "internal codes" and state that disclosure of them would risk circumvention of the law. *Id*. This kind of categorical treatment of redactions has long been rejected by several circuits, including the D.C. Circuit. *See King v. DOJ*, 830 F.2d 210, 219-25 (D.C. Cir. 1987) ("Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate."); *see also Halpern v. FBI*, 181 F.3d 279, 293 (2d Cir. 1999) (rejecting affidavit that failed to discuss "the specific facts of the documents at hand" and citing cases from the First, Third, Ninth, and D.C. Circuits). Defendants' cursory and vague assertions that disclosing internal codes, particularly those related to Mr. Rodriguez Guerra, will lead to circumvention of the law does not meet the requirements of the statute: "A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information.") (emphasis added). *See King*, 830 F.2d at 233. ICE has not established how each of these codes as they relate to *these* documents establish a risk of circumvention of the law and therefore have not met their burden under 7(E).

Defendants also appear to assert that by virtue of their enforcement function as an agency, these internal codes are necessarily shielded under exemption 7(E). *See* Pineiro Decl., ECF No. 14-4 ¶¶ 47-51 ("Here ICE has applied Exemption 7(E) to law enforcement sensitive information, specifically disclosure of internal codes."). The D.C. Circuit has squarely rejected this kind of blanket approach to law enforcement exemptions. *See Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C.

Cir. 2011) ("FBI records are not law enforcement records under FOIA simply by virtue of the function that the FBI serves."). Both the agency's declaration and the *Vaughn* index recite the same generalized concern under 7(E)—that disclosing the identification of a DNA collection device or an operation name as it relates to a single individual—will allow others to "decipher[] the meaning of the codes" and thereby gain access to ICE databases and elude removal. *See Vaughn* Index, ECF 14-4 at 16-19; Pineiro Decl. ¶¶ 47-51. The illusory and generalized risk from disclosing one noncitizen's identifiers does not meet the agency's burden to show the exemption applies in the instant case and the Court should order the agency to remove its 7(E) redactions.

### III. Defendants have not released all segregable information and therefore their request for additional time to complete the request is not moot.

Defendants argue that because they believe themselves to have released all segregable information, the timeliness of their response is moot. As discussed at length, *supra* at Section I, ICE has failed to produce relevant records to Plaintiffs' request and as such, the issue of whether ICE should be afforded more time to complete the request is still before the Court and not moot. *See Bayala v. United States Dep't of Homeland Sec.*, 827 F.3d 31, 34 (D.C. Cir. 2016) ("But where the government has released only a portion of the requested documents, the case is moot only with regard to those documents.") (internal citation omitted). Defendants have not meaningfully responded to Plaintiffs' arguments on this question of undue delay, and Plaintiffs again assert to the Court that ICE cannot avail itself of more time to respond.

As a preliminary matter, Defendants repeatedly assert that they have made the requisite determination under FOIA on Plaintiffs' request by virtue of having produced and re-released records. *See* ECF No. 14-1 ¶¶ 8-9. However, it was not until the very last letter accompanying re-released records on July 15, 2024—after Plaintiffs filed for summary judgment—that the word "final" even appeared in Defendants' correspondence regarding the universe of documents. *See*

11

ECF 14-6 at 2 ("The supplemental response is a re-release of 49 pages of documents from the first and final release . . . ."). On the other hand, ICE's initial correspondence, as discussed at length in Plaintiffs' motion for summary judgment—gives no indication of finality (or even what the full universe of responsive documents is) but signals in several places that there is more to come: "This is the *first response* to your Freedom of Information Act (FOIA) request. . ." and "For *this* production ICE reviewed 73 pages of potentially responsive documents. . . ." See ECF No. 9-4 at 2-3 (emphasis added). In a subsequent communication with Defendants on March 19, 2024, Plaintiffs attempted to further clarify the universe of documents Defendants had gathered and provided a basis for expediting the remainder of the production. *See* ECF No. 9-3 ¶¶ 16-18 (Declaration of Daniel Melo).

The first time Defendants posited the already-produced records were all there were—and for the first time made something close to the requisite determination under the statute—was on July 15, 2024, nearly a year after Plaintiffs initial request. While an agency need not always produce all responsive documents within the statute's 30-day period, *at a minimum* "the agency must at least indicate within the relevant time period, the scope of the documents it will produce and the exemptions it will claim . . . ." *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (hereinafter, "CREW"). "It is not enough that, within the relevant time period, the agency simply decides to later decide." *Id*. at 186. Here, ICE did just that—issued an initial response (already well outside the statutory period) that gave it some apparently indefinite timeline to make a full determination on Plaintiffs' request. While a determination on a FOIA request does not require actual production of the records at the exact same time, the agency must nevertheless make them *promptly* available, which typically means "within days or a few weeks . . . not months or years." *CREW*, 711 F.3d at 189

Without revisiting the entirety of the argument here, it is clear from ICE's own communications in the instant matter and the available administrative record information about ePOCR that Defendants have not disclosed all relevant and responsive records and therefore have not mooted out the question of their timeliness in responding to Plaintiffs' request, which at the time of this filling, is days away from being a year old. Because ICE considers the issue moot, it also failed to respond to the core of Plaintiffs' timeliness claim under FOIA—that this year-long struggle to obtain a narrow set of responsive records to a request involving one individual is a symptom of the agency's wholesale failure to comply with the FOIA statute and to take diligent steps to reduce its backlog; on most meaningful metrics, the agency has done less with more. *See* ECF No. 9-1 at 14-26. ICE cannot sustain the heavy burden of proof imposed by Congress under FOIA to avail itself of any more delay, and the Court should not allow the agency to further delay the disclosure of responsive records.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment should be granted. Respectfully submitted,

Date:   August 21, 2024               /s/ *Daniel Melo*

Daniel Melo
NC Bar # 48654
Capital Area Immigrants' Rights Coalition
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 916-8180
Fax: (202) 331-3341
Daniel.Melo@amicacenter.org
*Pro Bono Counsel for Plaintiffs*