# Exhibit D

1:23-cv-03344-CJN

continue with the administrative removal process regardless of whether the Assistant United States Attorney (AUSA) declines to prosecute or the outcome of the criminal case results in an acquittal or a "not guilty" verdict.[6]

In a typical scenario, an ERO CAP officer will create a new prosecution case in the Prosecutions Module when he or she believes there is sufficient evidence to charge an alien with a criminal offense. Once the case is created, the officer will input any relevant information and present the case to a designated AUSA.[7] If the AUSA decides to prosecute the criminal case, the ERO officer will record all relevant case information (i.e., criminal offenses, date of case) and case proceedings, including case updates, into the prosecution record. Upon the conclusion of the criminal case, the ERO officer will select and submit the prosecution case to the appropriate supervisor within their AOR for approval.

Once the ERO officer submits the prosecution case for approval, the Prosecutions Module will automatically generate an email containing the name of the submitting officer, the date, the EARM case number, and the subject's Alien Registration Number (A-number), notifying the supervisor that the case is ready for review. Next, the supervisor reviews the case and either approves it or returns it for further updates. In either instance, the supervisor is able to provide comments to allow the officer to either revise and re-submit the case or receive other supervisory feedback related to the approved request. Upon final review and approval, the prosecution case will then be recorded as "Approved" and the prosecution's case record considered closed.

Alternatively, if the AUSA declines the prosecution case presented by the ERO officer, the ERO officer indicates that the AUSA declined to prosecute the case and records the reason for the declination. Cases declined for prosecution are not submitted to the supervisor for approval but are recorded as "Completed" (i.e., closed) and tracked on statistical reports. Regardless of the outcome of the prosecution case, the Prosecutions Module allows CAP to manage the lifecycle of criminal prosecutions in an effort to coordinate and expedite the removal of aliens from the United States.

*Electronic Removal Management Portal (eRMP)*

ICE recently developed the Electronic Removal Management Portal (eRMP) as a case management system to track aliens' custody status as they move through the Post Order Custody Review (POCR) process. By law, aliens detained under a final order of removal who are not

---

violation of U.S. criminal law, which is federally prosecuted by the U.S. Attorney's Office (USAO).

[6] Criminal convictions are not the only qualifying factor for removal. In accordance with the INA, certain aliens are removable from the U.S. The administrative (removal) process will continue regardless of the criminal case outcome, aside from the granting of a Stay of Removal or a benefit. ERO officers will work to confirm removability and, absent other legal impediments, remove the alien from the U.S. in accordance with all laws and regulations.

[7] Case presentation is conducted in accordance with the local operating procedure for the prosecutions programs developed by each ERO office, which establishes the appropriate notification procedures. For example, case presentation can be made by email, in-person file review, or by phone.





removed within the ninety-day removal period must go through the POCR process to ensure continued detention is justified and in compliance with governing statues, regulations, and policies.[8] In some cases, ICE may continue detention beyond the ninety-day removal period for a variety of reasons, including but not limited to: delays in securing travel documents, lack of diplomatic relations with the alien's country of origin, or legal proceedings triggered by the alien's legal representative. When ERO is unable to execute final orders of removal of detained aliens within the removal period, it must complete several key POCR steps by day ninety of the alien's detention. This process must be repeated every ninety days thereafter so long as the alien remains in custody and/or the case's standing removal order has not been executed.

Before ICE created eRMP, ERO officers used various manual paper-based processes to manage the functions related to the POCR process, creating processing delays and data integrity issues. eRMP is a time-sensitive module running on a "POCR clock," which runs daily and requires ERO officers to meet milestones and accomplish actions at precise times throughout the POCR case lifecycle. For example, day one (1) of the POCR clock begins once the final order of removal is issued and tracks the activities and other functions related to the removal of detained aliens (e.g., securing travel documents, legal proceedings) throughout the ninety-day removal period and continues until the execution of the officer's final determination. In addition, the POCR clock will trigger an email alert, sent to the assigned officer, for milestones that require immediate action. Finally, ERO officers can view and check the status of all active and closed cases for detainees in their AORs and obtain a snapshot of their custody status during the POCR process, provide custody recommendations, and record decisions.

ERO officers can access eRMP from the EARM Homepage, or independently using a web address. Similar to the Prosecutions Module, ICE ensures appropriate access by using SSO to validate ICE users with PIV-card authentication. To create a POCR record in eRMP and begin the POCR process, an EARM case record must already exist for the detainee. In a typical transaction, an ERO officer will create a POCR record once the alien is in ICE custody and a final order of removal has been issued. An ERO officer then enters the detainee's A-number into eRMP to create a detainee's POCR record. During the POCR process, ERO officers are required to review the entire case and submit a recommendation (known as a Decision Letter) to the appropriate supervisor to either continue the alien's detention or release the alien from ICE custody. The Decision Letter is generated in eRMP and must be reviewed and approved by a Field Office supervisor. Once a supervisor makes the final determination and signs the Decision Letter, the letter is uploaded into eRMP, a hard copy is placed in the detainee's file, and the ERO officer must then provide the signed Decision Letter to the alien, either by certified mail or in person. With this

---

[8] By statute, when an alien is ordered removed, federal agencies must remove the alien from the United States within a ninety-day period. *See* 8 U.S.C. 1231. In addition, the Supreme Court ruled in *Zadvydas v. Davis* (533 U.S. 678) that unlimited detention beyond the ninety-day period is not reasonable. Federal agencies must justify why aliens are detained beyond the ninety-day removal period.






module, the ERO Removal Division can ensure that POCRs are being conducted in a timely manner and cases are tracked through their completion.

*Operations Management Module (OM²)*

ICE developed the Operations Management Module (OM²) to assist the ERO National Fugitive Operations Program (NFOP) to identify, locate, and arrest persons of interest or fugitive aliens sought by ICE. The NFOP leverages the personnel at the National Criminal Analysis and Targeting Center (NCATC)[9] and Fugitive Operations Teams (FOT) to achieve this objective.[10] Before ICE created OM², ERO used the Fugitive Case Management System (FCMS).[11] FCMS has since been retired and its functionality has been incorporated into OM², a module within EARM. With this module, ICE agents and officers can generate and track leads (e.g., addresses and phone numbers), manage mission operations, track activities (e.g., arrests by team, target details) and link targets with specific operations.

OM² is only accessible by logging into EARM and requires that the alien already has an active EARM record. In a typical transaction, ICE receives information from a variety of sources to generate lead information on fugitive aliens. Such sources include: public or government records; information from federal and state correctional facilities that may locate a fugitive alien in jail or prison; or information from commercial sources. OM² users (either at the NCATC or members of FOTs) can either manually enter leads one at a time or in bulk, which are then linked to the fugitive alien's existing record using the target's A-number.

Once the lead information is uploaded into the OM² database, these new leads are assigned to the appropriate FOT to investigate, and when possible, arrest the target alien. As part of the investigative process, ERO officers will evaluate the lead information, manually compare other sources of information such as leads from commercial sources against Federal Government databases, validate information for accuracy, and document and update OM² as the investigation progresses. If the fugitive is arrested, ERO updates the fugitive alien's status in OM² to reflect that he/she is now in ICE custody. OM² allows ICE agents and officers to develop and track new leads, associate multiple leads with a target(s) and/or ongoing operation(s), and manage and record investigative and arrest activities.

*Law Enforcement Notification System (LENS)*

ICE developed the LENS interface within the EARM application to send notifications to other state and local law enforcement agencies via the National Law Enforcement Notification

---

[9] The NCATC serves as a national enforcement operations center for the ERO Targeting Operations Division (TOD), providing critical information to ICE law enforcement officers in the field and headquarters components.
[10] For more information about NFOP, please visit: https://www.ice.gov/fugitive-operations.
[11] For more information about FCMS, see DHS/ICE/PIA-009, at https://www.dhs.gov/publication/dhsicepia-009-fugitive-case-management-system-fcms.