UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS
COALITION, et al.,

              Plaintiffs,

      v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

              Defendants.

              Civil Action No. 23-3344 (CJN)

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR CROSS-MOTION
FOR SUMMARY JUDGMENT**

Defendants, the United States Department of Homeland Security (the "Department") and United States Immigration and Customs Enforcement ("ICE") (collectively "Defendants"), respectfully submit this reply in further support of Defendants' cross-motion for summary judgment in this Freedom of Information Act ("FOIA") case. Accompanying this reply is the Supplemental Declaration of Fernando Pineiro, the Director of ICE's FOIA Office.

## INTRODUCTION

Defendants repeat what was stated in their cross-motion for summary judgment: this matter has been brought prematurely and unnecessarily by the Plaintiffs, and Plaintiffs have been provided with all responsive records. The complaint in this matter was filed on November 8, 2023 (Compl., ECF No. 1), arising out of a FOIA request dated August 29, 2023. *See* Compl. Ex. A, ECF No. 1-1. The request does not seek information of any public interest but instead seeks personal information related to the detention of Plaintiff Roberto Carlos Rodriguez Guerra. *Id.* It is undisputed that ICE promptly responded to Plaintiffs' FOIA request on September 15, 2023, seventeen days after the request was submitted. It is also undisputed that the Defendants informed

Plaintiffs' counsel that due to the large number of FOIA requests received by ICE, there would be a delay in processing the request.  Compl. Ex. B, ECF No. 1-2.

Further, on October 12, 2023, Plaintiffs sent a status inquiry letter to ICE.  The ICE FOIA Office responded the following day, stating: "[a]s of today, your request is currently pending the search for responsive documents.  If any responsive records are located, they will be reviewed for a determination of releasability."  Pineiro Decl. ¶ 9.  ("Opp'n Ex. 1").  The ICE FOIA Office informed Plaintiffs' counsel a second time that it was experiencing delays and would respond to Plaintiffs' request as expeditiously as possible.  *Id.*  Instead of waiting their turn alongside numerous other FOIA requesters, Plaintiffs filed their complaint on November 8, 2023.

While Plaintiffs' opposition continues to attempt to portray Defendants' response to the FOIA request as dilatory and insufficient, that is simply incorrect.  Plaintiffs have been provided with the records responsive to their request concerning Mr. Guerra on two occasions, and the first response was provided to Plaintiffs before they even filed their motion for summary judgment. Further, Plaintiffs' opposition confirms that they only challenge the limited withholdings made pursuant to Exemption 7(E).  Opp'n, ECF No. 17, at 10.

## ARGUMENT

Defendants are entitled to summary judgment.  Despite the heavy burdens placed on ICE and the huge number of FOIA requests it receives and processes, Defendants have conducted a thorough and adequate search for the requested records concerning Mr. Guerra and Plaintiffs have twice been provided with them.  Pineiro Decl. ¶¶ 43, 44, n.3, Mot., ECF No. 15, Ex. 1; Release Letters, Exs. 2, 3.  Despite the claims made in Plaintiffs' opposition to Defendants' cross-motion (Opp'n, ECF No. 17), ICE performed an adequate search and appropriately applied Exemption 7(E) to withhold sensitive law enforcement information.

I.    **Defendants Conducted an Adequate Search and are not Withholding Records**

Plaintiffs are incorrect when they claim in their opposition, at 5-9, that the Defendants have not conducted an adequate search. Defendants conducted a search in the locations reasonably likely to have responsive records, and the Pineiro declarations demonstrate this.

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011). A search is inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records). Under FOIA, an agency does not have to search every record system; rather, it must conduct a good faith search of systems likely to have the requested information. *Pinson v. Dep't of Just.*, 160 F. Supp. 3d 285, 295 (D.D.C. 2016). Defendants have clearly met the search standards.

Mr. Pineiro describes the extensive search that was done in response to Plaintiffs' specific request. Pineiro Decl. ¶¶ 21-40. After reviewing Plaintiff's FOIA request, the ICE FOIA Office determined that, due to the subject matter, Enforcement and Removal Operations (or "ERO") and Homeland Security Investigations (or "HSI") were the program offices likely to have responsive records. Therefore, based on their subject matter expertise and knowledge of the agency record systems, the ICE FOIA Office instructed these two program offices to conduct a comprehensive search for records and to provide all potentially responsive records located during that search to

the ICE FOIA Office for review and processing.  *Id.* ¶ 22.  Accordingly, the locations likely to contain records responsive to Plaintiffs' FOIA Requests were searched.  *Id.*

Enforcement and Removal Operations is responsible for the arrest and removal of non-resident noncitizens such as Plaintiff Guerra, managing ICE detention operations, and providing medical and mental health care to persons in ICE custody.  Homeland Security Investigations is the principal investigative arm of the Department, responsible for investigating transnational crime and threats, specifically those criminal organizations that exploit the global infrastructure through which international trade, travel, and finance move.  *Id.* ¶ 23.

A.    **Enforcement and Removal Operations' Search**

On December 14, 2023, upon receipt of the supplemental FOIA tasking from the ICE FOIA Office, a Management and Program Analyst in Enforcement and Removal Operations conducted a search of two ICE databases, the Central Index System (or "CIS") and the ENFORCE Alien Removal Module ("Removal Module" or "EARM"), using the terms "Rodriguez Guerra, Carlos," "03/16/1997," Plaintiff's birth date, and "A216684164," a unique number assigned to Plaintiff. *Id.* ¶ 27.  These databases are the ones used by deportation officers with Enforcement and Removal Operations to perform their duties. *Id.* ¶¶ 22-25, 27-28.  Plaintiff Guerra's contact with ICE was via Enforcement and Removal Operations.  *Id.*

On the same day, a Deportation Officer in Enforcement and Removal Operations conducted a search of their emails using the terms "Carlos Rodriguez Guerra," and "A216684164." *Id.* ¶ 28.  Four days later, on December 18, 2023, a second Deportation Officer conducted a search of the Removal Module database using the terms "Carlos Rodriguez Guerra" and "A216684164." *Id.* ¶ 29.  The officer also conducted a search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164."  Lastly, the officer conducted a search of their emails using the terms "Carlos Rodriguez Guerra" and "A216684164."  *Id.*

On that same day, a Supervisory Deportation and Detention Officer conducted a search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164." The Supervisory Officer also conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164." *Id*. ¶ 30. In addition, on December 18, 2023, an Assistant Field Office Director conducted a search of their own sent and received emails using the terms "Carlos Rodriguez Guerra" and "A216684164." *Id*. ¶ 31.

On June 25, 2024, a Deportation Officer at Enforcement and Removal Operations conducted a supplemental search of their own sent and received emails using the terms "Carlos Rodriguez Guerra," and "A216684164." The officer also conducted a supplemental search of their own computer using the terms "Carlos Rodriguez Guerra" and "A216684164." *Id*. ¶¶ 36, 37.

The above searches were performed by the custodians likely to locate records responsive to Plaintiffs' FOIA request. *Id.* ¶¶ 13-36.

### B.    Homeland Security Investigations' Search

Homeland Security Investigations likewise conducted a reasonable and adequate search. On December 12, 2023, upon receipt of the initial tasking from the ICE FOIA Office, a Management Program Analyst reviewed the request and conducted a search for responsive records. The analyst conducted a search of the ICM database, the database used for Homeland Security investigations, using the terms "Roberto Carlos Rodriguez Guerra," "Roberto Rodriguez Guerra," "Roberto Guerra," "Roberto Rodriguez," "Carlos Rodriguez Guerra," "Carlos Rodriguez," and "Carlos Roberto Guerra Rodriguez." No responsive records were found. *Id*. ¶¶ 38-40.

*    *    *

Despite these well-crafted, appropriately targeted searches, Plaintiffs continue to assert that ICE has failed to produce the contents of what it believes is a database known as electronic Post Order Custody Review ("Custody Review" or "ePOCR") (Opp'n at 5-6), and that this somehow

demonstrates an inadequate search.  As explained by Mr. Pineiro in his initial declaration, a post order custody review "analysis must be performed to justify a noncitizen's continued detention after being ordered removed.  The electronic [Custody Review] is not a database.  Instead, it is a tool which replaced the previous transfer checklist and is used to ensure that certain documents are included in the review.  The electronic [Custody Review] does not store information."  Pineiro Decl. ¶ 33.  The Supplemental Pineiro Declaration, which accompanies this reply, further clarifies Custody Review and the adequacy of the Defendants' search.

Electronic Custody Review or ePOCR is a report writing tool used in the custody review process for immigration officers to standardize the content and form of Post-Order Custody Reviews.  Supp. Pineior Decl. ¶ 5; Pineiro Decl. ¶ 33.  Electronic Custody Review or ePOCR is an electronic version of the Post-Order Custody Review worksheet that Enforcement and Removal Operations officers utilize to assist them in making custody decisions.  Supp. Pineiro Decl. ¶ 5. Electronic Custody Review is the same as the pdf version of the Post-Order Custody Review worksheet.  *Id.*  Electronic Custody Review or ePOCR is not a separate repository of documents but is only an electronic/digitized version of a downloadable POCR worksheet, which itself is stored within the Removal Module database, which, as noted, has been searched.  Supp. Pineiro Decl. ¶¶ 5, 7; Pineiro Decl. ¶ 27.  Simply put, the information in electronic Custody Review or ePOCR is stored within the Removal Module database.  Supp. Pineiro Decl. ¶¶ 5, 7.  Thus, electronic Custody Review is not a database with a repository of records but instead is a tool that generates a worksheet to assist Enforcement and Removal Operations officers.  Plaintiffs have that worksheet and have attached it as Exhibit A to their opposition.

Although the Post-Order Custody Review worksheet touted by Plaintiffs as Exhibit A was not included in the productions made by ICE, that was because the Custody Review section of the

Removal Module ("EARM") was not checked during the searches, as the responsive documents were located elsewhere, and those repositories were searched. In any event, the Post-Order Custody Review worksheet attached to Plaintiffs' opposition is but a single record. As explained by Mr. Pinero, on September 25, 2024, a Unit Chief from Enforcement and Removal Operations conducted a search of the Removal Module ("EARM") database using the terms "Carlos Rodriguez Guerra" and A216684164". Supp. Pineiro Decl. ¶ 8. It was verified that electronic Custody Review contained the downloadable version of the record cited by Plaintiffs as Exhibit A to their opposition. *Id*. The search further verified that this was the only Custody Review or ePOCR record for Mr. Guerra in the system. Supp. Pineiro Decl. ¶ 8. There are no additional documents other than the electronic custody review worksheet which is in Plaintiffs' possession, and there are no other responsive documents in other locations. *Id*.

Plaintiffs' assertions related to electronic Custody Review being a repository of documents center on their impressions of ICE's technological framework after reading portions of publicly available documents. Plaintiffs, in their Motion for Summary Judgment and opposition to Defendants' Cross-Motion, assert that Custody Review contains, amongst other things, the following: information regarding attempts to obtain travel documentation; contacts to embassies about third country removal; whether forms have been served; and a historical review of custody and recommendations made by ICE. Opp'n at 6. This is incorrect.

A review of the two productions made by ICE reveals that the information Plaintiffs suppose is housed within electronic Custody Review has already been produced. The two productions contain all the underlying documents used by immigration officers to complete the Post-Order Custody Review worksheet. A comparison of Mr. Guerra's electronic Post-Order Custody Review worksheet and the two productions show that the electronic Post-Order Custody

Review worksheet organizes the information contained in the two productions. Indeed, Plaintiffs' submission of Exhibit A only confirms that electronic Custody Review or ePOCR is a worksheet and not a repository of documents and that Plaintiffs have been provided with the information that is referenced in the worksheet.

Despite the foregoing, Plaintiffs continue to argue that electronic Custody Review is a database with a multitude of information; this is merely a misguided results-based challenge to the search. Plaintiffs do not contend that ICE interpreted the request too narrowly, nor do Plaintiffs challenge the search terms used to conduct the search or that the other locations searched were not proper. Further, Plaintiffs' reliance on Mr. Guerra's Post-Order Custody Review worksheet does not undermine the adequacy of the search. Plaintiffs' speculation about responsive records being in electroninc Custody Review or ePOCR is insufficient to rebut the good-faith presumption afforded to Mr. Pinero's declarations and the searches performed in the locations the Defendants determined were most likely to contain responsive records.

There is no requirement that an agency search every location or record system when responding to a FOIA request, nor that it recover every relevant document. *Meeropol v. Meese*, 790 F. 2d 942, 952-53 (D.C. Cir. 1986); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 72 (D.D.C. 2017). There is no requirement that an agency search every location in response to a FOIA request: "FOIA demands only a reasonable search tailored to the nature of a particular request . . . the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system.'" *Campbell v. Dep't of Just.*, 164 F. 3d 20, 28 (D.C. Cir. 1998) (citing *Oglesby*, 920 F. 2d at 68). Defendants have met this standard.

Here, Defendants have demonstrated that there are no other locations or record systems that are likely to have responsive records, Plaintiffs' Ex. A notwithstanding.  After reviewing Plaintiff's FOIA request, the ICE FOIA Office directed the two program offices likely to have responsive records to conduct a search.  Pineiro Decl. ¶¶ 22-40.  They did so and provided Plaintiffs with all responsive records.  The electronic Custody Review or ePOCR section of the Removal Module database was subsequently searched, and the worksheet was located, which was already in Plaintiffs' possession.

Thus, contrary to Plaintiffs' opposition, Defendants searched in the repositories likely to contain the requested information, and appropriate personnel with knowledge of the request and the various repositories conducted the searches.  Responsive documents were provided to Plaintiff on two occasions.  Defendants are entitled to summary judgment on their search, and Plaintiffs' motion for summary judgment alleging an inadequate search should be denied.

## II.    Defendants Properly Withheld Information Pursuant to Exemption 7(E)

Plaintiffs are incorrect when they claim that information was improperly withheld pursuant to Exemption 7(E).  Opp'n at 10.  On the contrary, Defendants' Exemption 7(E) withholdings were proper.  The Pineiro Declaration and the accompanying *Vaughn* index (Pineiro Decl. Attach. A) demonstrate that Exemption 7(E) has been properly applied by Defendants.

As stated in Defendants' cross-motion, they have met the threshold requirement of Exemption 7, that the withheld information was "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  Mot. at 15.  Courts give great deference to a "criminal law enforcement agency['s]" assertion that its records were for law enforcement purposes, because government agencies "typically go about their intended business."  *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982).  Considering that deference, the D.C. Circuit has opined that an agency need only show that the nexus between the agency's activity and its law enforcement duties "must be based on

information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. Dep't of Just.*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421); *see also Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (noting that the Exemption 7 threshold may be satisfied even where the records in question do not relate to a particular investigation).

ICE is tasked with preventing activities that threaten national security and public safety by investigating the people, money, and materials that support illegal enterprises.  Pineiro Decl. ¶ 46. The records and information at issue in this matter were compiled for law enforcement purposes because they pertain to ICE's obligation to enforce the immigration laws of the United States by arresting noncitizens who may be present in the United States illegally and placing certain categories of detainees in ICE-authorized detention facilities for the duration of their immigration proceedings, as appropriate.  In particular, documents responsive to Plaintiff's FOIA request were compiled as part of an effort by the ICE Office of the Principal Legal Advisor and specifically the Office of Chief Counsel Washington, to effectively represent ICE and its interests in immigration law proceedings both in immigration court and before the U.S. District Court for the District of Columbia, in order to ensure that ICE is able to effectively enforce immigration laws in this jurisdiction.  Therefore, all responsive ICE records were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.  *Id.* ¶ 47.  Plaintiff cannot reasonably contest this plain fact.

Under Exemption 7(E), agencies may withhold information that "would provide insight into [their] investigatory or procedural techniques." *Techserve All. v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) sets "a relatively low bar for the agency to justify withholding" information).  This exemption is so broad that "even commonly known procedures may be protected from disclosure

if the disclosure could reduce or nullify their effectiveness." *Jud. Watch, Inc. v. Dep't of Com.*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (cleaned up).

Plaintiffs' assertion in their opposition (at 10-11) that they are entitled to Defendants' internal codes is without merit. ICE has demonstrated the foreseeable harm that would occur if this information were released. The internal codes withheld pursuant to Exemption 7(E) include: case number; case ID; person ID; event number; event ID; operation name; historical priority; DNA collection device number; and site code. The codes are used to track information associated with immigration enforcement actions, such as the organization of cases, geographic locations, and other encounter-related information. The codes also identify the public safety classifications of noncitizens and the names of law enforcement operations. Pineiro Decl. ¶¶ 48-52, Attach. A (*Vaughn* index).

Contrary to the assertions in Plaintiffs' opposition, the release of these internal codes could enable unauthorized parties to decipher the meaning of the codes, aid them or others in gaining improper access to law enforcement databases, assist in the unauthorized party's navigation of the law enforcement databases, and compromise law enforcement operations. In addition, the disclosure of law enforcement sensitive techniques, practices, or investigatory steps taken during an investigation could reveal techniques or procedures for law enforcement investigations or prosecutions, which could reasonably be expected to risk circumvention of the law. Disclosure of these internal strategies and practices could permit people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by Enforcement and Removal Operations during removal operations. *Id.* ¶ 51, Attach. A (*Vaughn* index).

This Circuit recognizes that Exemption 7(E) is written in broad and general terms and that agencies such as ICE do not have to prove that circumvention of the law is a necessary result, but

only that release of the exempt information would risk circumvention of the law.  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).   Rather than requiring the agency to prove a risk of circumvention, the statute exempts information that would be expected to risk circumvention of the law.  *Id.*  "In short, the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk."  *Id.*  In *Blackwell*, 646 F. 3d at 42, the FBI was allowed to invoke Exemption 7(E) to protect methods of data collection, organization, and presentation in reports that were internal to the agency and not known to the public.

Further, Plaintiffs' opposition fails to demonstrate how the disclosure of this law enforcement sensitive information serves any public benefit or how it would assist in understanding how the agency is carrying out its statutory duties.  *Id*. ¶ 52, Attach. A (*Vaughn* index).  That failure is telling and undercuts their challenge to the Exemption 7(E) withholdings.

In sum, contrary to the assertion in Plaintiffs' opposition, Defendants have clearly met the "low bar" for justifying withholdings under Exemption 7(E).  Thus, Defendants are entitled to summary judgment on their application of Exemption 7(E).

## III.    <u>Defendants Have Released All Segregable Information.</u>

Plaintiffs are incorrect when they argue that Defendants have not released all reasonably segregable information.  Opp'n at 11.

Defendants conducted a line-by-line review of all documents to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.  With respect to the records that were released, all information that was not exempt from disclosure was correctly segregated and non-exempt portions were released.  ICE did not withhold any non-

exempt information on the grounds that it was non-segregable.    Pineiro Decl. ¶¶ 53-55.

Foreseeable harm would result from release of any further information, and no further segregation

is possible. *Id*. ¶¶ 50-55.

## IV.    **Plaintiffs' Argument That ICE is Delaying is Meritless**

Plaintiffs continue to make the meritless and incongruous argument that ICE cannot avail

itself of additional time under FOIA and that it has not exercised due diligence in responding to

Plaintiffs' request.  Opp'n at 11-12.  As set forth above and in their cross-motion, Defendants have

responded to Plaintiffs' FOIA request and have produced all responsive documents.    Any

challenge to the timing of Defendants' response accordingly is moot. *See Feinman v. FBI*, 598 F.

App'x 15, 15-16 (D.C. Cir. 2015) (finding plaintiff's request for search moot where the agency

subsequently searched and located no responsive records); *Shapiro v. Dep't of Just*., 40 F.4th 609,

615 (D.C. Cir. 2022) ("Now that the FBI has turned over all responsive documents, we lack

authority to turn back the clock and compel the FBI to hand them over faster."); *Atkins v. Dep't of

Just*., 946 F.2d 1563 (D.C. Cir. Sept. 18, 1991) (unpublished) ("The question whether DEA

complied with [FOIA] time limitations in responding to Aaron Atkins' request is moot because

DEA has now responded to this request.").  Plaintiffs cannot use any tardiness in processing and

responding to the request as basis for continuing this suit. *Voinche v. FBI*, 999 F.2d 962, 963 (5th

Cir. 1993) (dismissing case as moot because only issue in case was "tardiness" of agency response,

which was made moot by agency disclosure determination); *Tijerina v. Walters*, 821 F.2d 789, 799

(D.C. Cir. 1987) ("[H]owever fitful or delayed the release of information[,] . . . if we are convinced

appellees have, however belatedly, released all nonexempt material, we have no further judicial

function to perform under the FOIA.'"); *Khine v. Dep't of Homeland Sec*., 943 F.3d 959, 965 (D.C.

Cir. 2019) (same).

First, as stated above, ICE responded to Plaintiffs' FOIA request on February 28, 2024, nearly three months before Plaintiffs filed their summary judgment motion. ICE re-released the documents in July 2024 with the Exemption 5 redactions removed. Thus, Defendants have diligently and appropriately responded to Plaintiffs' FOIA request on two occasions.

Further, as discussed above, Plaintiffs were informed at the outset, when Defendants first received the FOIA request, that due to the overwhelming number of FOIA requests received by the agency, there would be a delay in responding to the request. Indeed, Plaintiffs' motion itself (ECF No. 9-1 at 18-26) describes the extremely burdensome number of FOIA requests ICE has received and the backlog of pending requests. Despite this huge burden, Defendants have responded to Plaintiffs' request and provided the requested information, with some limited information properly withheld under Exemption 7(E). This response was appropriate, and any quibbling with the timing of Defendants' responses is now beside the point.

## CONCLUSION

Based on the foregoing and the arguments in Defendants' cross-motion, Defendants are entitled to summary judgment and Plaintiffs motion should be denied.

Dated: October 4, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____/s/ Thomas W. Duffey_____
THOMAS W. DUFFEY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2510
Thomas.duffey@usdoj.gov

*Attorneys for the United States of America*