UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. IMMIGRATIONS AND CUSTOMS ENFORCEMENT,<br><br>Defendant. | Civil Action No. 23-3344 (CJN) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

On January 27, 2025, Plaintiff filed a notice of supplemental authority (Pl. Not., ECF No. 21). Accompanying the notice was a decision from the United States District Court for the Northern District of Illinois (ECF No. 21-1). Plaintiff contends, based on the ruling in *Stevens v. Department of Health & Human Services,* Civ. A. No. 22-5072, 2025 WL 213734 (N.D. Ill. Jan. 16, 2025), *appeal docketed*, No. 25-1126, (7th Cir. Jan. 27, 2025), that this Court should find that Immigration and Customs Enforcement ("ICE") conducted an inadequate search in this case.

As an initial matter, *Stevens* is not controlling on this Court. Further, for the reasons below, the Illinois decision in no way supports the argument that the search conducted by ICE in this case was inadequate. Indeed, the *Stevens* decision bolsters the adequacy of not only ICE's search but also the declarations submitted in support of its cross-motion for summary judgment.

In *Stevens,* the court found that plaintiff successfully rebutted the presumption of good faith afforded to the agency's affidavit. *Stevens*, 2025 WL 213734, at *7–8. With respect to the sufficiency of the declaration, the court found a pair of defects: (1) the declaration was not sufficiently detailed to show ICE adequately searched for the requested records; and (2) the

declaration did not sufficiently detail which potentially responsive records were ultimately produced to the plaintiff. *Id.* at *7. Next, the court determined that the plaintiff established a positive indication of overlooked records, because the agency identified 10,000 pages of potentially responsive records without a sufficient explanation as to why they were withheld, or a description of which program office located the records. *Id.* After balancing the defects in the declaration against the positive indication of overlooked records, the court found the agency's declaration inadequate. *Id.*

*Stevens* is inapplicable to the instant case and distinguishable. Here, the declarations[1] submitted by ICE are sufficiently detailed and Plaintiff has failed to establish positive indicia of overlooked records. Specifically, Plaintiff contends that Fernando Pineiro's declarations are inadequate because they do not contain an explanation about "why no other record system was likely to produce responsive documents." Pl. Notice, ECF No. 21 at 1. But, Plaintiff's notice of supplemental authority fails to address any positive indications of overlooked records, the cornerstone of the *Stevens* decision that ultimately led the Northern District of Illinois to find that the presumption of good faith had been rebutted. Even though this appears to be a fatal omission, ICE will still address Mr. Pineiro's declarations and the potential existence of overlooked records, in turn.

I.   **The Government's Declarations are Sufficiently Detailed**

First, Mr. Pineiro's declaration (ECF No. 15-4) and supplemental declaration (ECF No. 20-1) are sufficiently detailed regarding ICE's search. A search is inadequate only if the agency cannot "show, with reasonable detail, that the search method . . . was reasonably calculated to

---

[1] Fernando Pineiro submitted two declarations in support of Defendant's motion for summary judgment, one accompanied the motion (ECF No. 15-4), and a supplemental declaration was submitted with the reply (ECF No. 20-1).

uncover all relevant documents." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records). There is no requirement that an agency search every location in response to a FOIA request. *Campbell v. Dep't of Just.*, 164 F. 3d 20, 28 (D.C. Cir. 1998) ("FOIA demands only a reasonable search tailored to the nature of a particular request…the agency has discretion to confine its inquiry to a central filing system if additional searches are unlikely to produce any marginal return; in other words, the agency generally need not 'search every record system." (citing *Oglesby*, 920 F. 2d at 68)).

Unlike *Stevens*, where the court found that the potential custodian of the records was not readily apparent in the nature of the request, here the records custodian is discernible by the very nature of the Plaintiff's request.[2] Specifically, Plaintiff requested the detention records of Roberto Carlos Rodriguez Guerra and even listed the Enforcement and Removal Operations (or "ERO") in its request. Compl., Ex. A, ECF No. 1. Further, unlike *Stevens*, where the agency allegedly did not identify which office located the records and what records were ultimately produced, the Pineiro declarations in the instant case detail the number of pages located by each custodian and the number of pages produced to the Plaintiff.

As outlined in Mr. Pineiro's declarations, ICE searched Enforcement and Removal Operations ("ERO") and Homeland Security Investigations (or "HSI") and all repositories likely to contain responsive records. Pineiro Decl. ECF No. 15-4, ¶¶ 21-38; Pineiro Supp. Decl., ECF No. 20-1, ¶¶ 5-8. ICE searched Enforcement and Removal Operations because Plaintiff requested detention records, and that component manages detention operations. Moreover, the initial

---

[2] The *Stevens* request sought information related to prison grievances, commissary account data, and work program participation for at least three individuals. *Stevens*, 2025 WL 213734, at *1. That is not at all similar to the instant request.

declaration details the repositories that were searched by Enforcement and Removal Operations and the search terms used.  Pineiro Decl. ¶¶ 27-31, 34-36.  This further distinguishes *Stevens* from this case.   The initial declaration also states the number of potentially responsive records located by Enforcement and Removal Operations and the number of pages produced to Plaintiff. Pineiro Decl. ¶¶ 32, 37, 40, 43-44.  This is the opposite of what caused concern to the court in *Stevens*.

Based on the nature of Plaintiff's request, the search of Enforcement and Removal Operations alone would have been sufficient.  To promote good faith, however, ICE also searched Homeland Security Investigations, an ICE office responsible for investigations and other law enforcement activities.  The initial Pineiro Declaration details the repositories that were searched by Homeland Security Investigations and the search terms used.  Pineiro Decl. ¶¶ 38-39.  At base, as discussed above and in Defendant's motion for summary judgment (ECF No. 15), ICE conducted a reasonable and adequate search.

By submitting this supplemental authority, Plaintiff seems to be arguing the totality of circumstances should not be considered, and that any declaration not including some talismanic phrase is not sufficiently detailed.  However, in this case, Plaintiff's argument is incongruous because Plaintiff has never asserted that ICE should have searched additional custodians.  Rather, Plaintiff has seemingly acknowledged that Enforcement and Removal Operations is the proper custodian, but instead, argues that ICE failed to search the electronic Post Order Custody Review (ePOCR) "database."  But the electronic Custody Review or ePOCR section of the Removal Module database was subsequently searched, and the worksheet was located, which was already in Plaintiffs' possession.  Supp. Pineiro Decl. ¶¶ 5-8.  Here, Mr. Pineiro's declarations are sufficiently detailed.

II.     **Lack of Positive Indicia of Overlooked Records**

Turning to the second issue addressed in *Stevens*, the existence of overlooked records. There is no requirement that an agency must recover every relevant document. *Meeropol v. Meese*, 790 F. 2d 942, 952-53 (D.C. Cir. 1986); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 72 (D.D.C. 2017). Unlike in *Stevens*, where there were 10,000 pages of potentially responsive records that were allegedly overlooked, in this case Plaintiff's opposition to ICE's Cross-Motion for Summary Judgment suggests that Guerra-Rodriguez' ePOCR "profile" was overlooked, which amounts to six pages. Opp'n, Ex. A, ECF No. 17. The remainder of the assertions made by Plaintiff amount to little more than speculations about the framework of ICE's database. *Id.* at 6-9. For example, in reference to ICE trainings on how to properly maintain an ePOCR worksheet, Plaintiff asserts that "[a]ll these updates and uploads are 'records' within the meaning of the FOIA[.]" *Id.* at 7. Plaintiff is under the mistaken belief that information cannot be changed on a pre-existing electronic worksheet without creating a new and separate record. With respect to uploads, Plaintiff has failed to identify any information contained in the ePOCR worksheet that does not also appear in the records produced by ICE. So, other than the conclusory assertions made by Plaintiff, it is unclear what, if any, information is outstanding. Thus, the situation here is not at all comparable to that in *Stevens*.

As stated in Mr. Pineiro's declarations, ePOCR is a report writing tool that is housed within ICE's ENFORCE Alien Removal Module (or "EARM") database. Pineiro Decl. ¶ 33; Supp. Pineiro Decl. ¶ 5. ICE is required to perform post-order custody reviews. *Zadvydas v. Davis*, 533 U.S 678, 701 (2001). ePOCR standardized the reports written by immigration officers. Supp. Pineiro Decl. ¶ 5. Plaintiff's Opposition includes excerpts from a 2018 ICE Privacy Impact Assessment (PIA) which establish the relationship between EARM and "eRMP/ePOCR." Opp'n at 8-9. One excerpt even references how the "eRMP/ePOCR" worksheet is printed and placed in

a file, a fact that aligns with the information provided in Mr. Pinero's supplemental declaration. Opp'n at 9.

ICE has conceded that the ePOCR worksheet was not located due to human error. The ePOCR worksheet is unlikely to be discovered during a routine search of EARM, because the tool is housed in a separate part of the database and must be manually navigated to by the searcher. A fact also acknowledged in Plaintiff's opposition. Opp'n at 9.

Apart from a single six-page worksheet, there is no objective indication that any other records were allegedly overlooked here. In the absence of other factors, Plaintiff's grievance about not receiving the ePOCR worksheet and their conjecture about the functioning of ICE's systems are insufficient to rebut the presumption of good faith afforded to the declarations submitted by ICE.

Further, citing to *Stevens*, the Plaintiff's argument that ICE is attempting to conceal records or has not produced all requested records is inapposite because all the supporting documentation used to draft the ePOCR worksheet has been released to Plaintiff. *See* Opp'n at 9. Even in the light most favorable to the Plaintiff, the ePOCR worksheet is only six pages and Plaintiff already has that information. The six pages are a far cry from the 10,000 potentially responsive pages at issue in *Stevens*. Thus, Plaintiff has failed to establish positive indicia of overlooked records.

\* \* \*

Ultimately, Mr. Pineiro's declarations in the instant case are sufficiently detailed and demonstrate that ICE conducted an adequate search and the *Stevens* case has no applicability.

Dated: February 18, 2025
       Washington, DC

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:  /s/ Thomas W. Duffey
THOMAS W. DUFFEY
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2510

*Attorneys for the United States of America*