IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 1:23-CV-03344-CJN

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et. al,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et. al,

*Defendants*.

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES**

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .............................................................................................................................1

ARGUMENT.....................................................................................................................................2

    I.     Plaintiffs have substantially prevailed in this litigation. ...............................................3

    II.    Plaintiffs are entitled to attorneys' fees. ........................................................................5

    III.   Plaintiffs' fee request is reasonable .............................................................................10

CONCLUSION................................................................................................................................10

TABLE OF AUTHORITIES

**FEDERAL CASES**

*A.L. v. Oddo*, 3:24-CV-302-SLH-KAP, *1 (W.D. Pa. Jan. 6, 2025) ............................................... 6

*Am. Civil Liberties Union Immigr. Rights Project v. U.S. Immigr. and Customs Enforcement*,
    58 F.4th 643 (2d Cir. 2023) ..................................................................................................... 2

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F.Supp.3d 396
    (D.C. Cir. 2015) ........................................................................................................ 3, 7, 8, 10

*Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011) ...................... 4

*Burka v. HHS,* 142 F.3d 1286 (D.C. Cir. 1998) .............................................................................. 2

*Dasilva v. U.S. Citizenship & Immigration Servs.,* No. 13–13, 2014 WL 775606, *1 (E.D. La.
    Feb. 24, 2014) .......................................................................................................................... 4

*Davy v. CIA,* 550 F.3d 1155 (D.C. Cir. 2008) ..................................................................... 2, 5, 8, 9

*Edmonds v. FBI*, 417 F.3d 1319 (D.C. Cir. 2005) ........................................................................... 3

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27
    (D.D.C. 2016) ........................................................................................................................... 3

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61
    (D.D.C. 2013) ........................................................................................................................... 8

*Hall & Assocs. v. U.S. Env't Prot. Agency*, 2023 WL 7928765, *1
    (D.D.C. Nov. 16, 2023) ......................................................................................................... 3, 5

*Hensley v. Eckerhart*, 461 U.S. 424, (1983) ................................................................................. 10

*Jud. Watch, Inc. v. FBI*, 522 F.3d 364 (D.C. Cir. 2008) .................................................................. 4

*Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225 (D.D.C. 2012) ............................. 2, 10

*Morley v. CIA,* 719 F.3d 689, (D.C. Cir. 2013) (Kavanaugh, J. concurring) .................................. 5

*National Security Counselors v. C.I.A.*, 811 F.3d 22 (D.C. Cir. 2016) ........................................... 2

*Nationwide Bldg. v. Sampson,* 559 F.2d 704 (D.C. Cir. 1977) ................................................... 2, 9

*Williams v. F.B.I.* 17 F. Supp. 2d 6 (D.D.C. 1997) ......................................................................... 8

*Reyes v. U.S. Nat' Archives & Recs. Admin.*, 356 F. Supp. 3d 155 (D.D.C. 2018) ........................ 9

**FEDERAL STATUTES**

5 U.S.C. § 552(a)(4)(E)(ii), ..................................................................................................2, 3, 4

## INTRODUCTION

This matter arose before the Court only after the Defendants' consistent failure to abide by Congressionally mandated requirements and deadlines for FOIA. Nearly a year after filing the initial request, Plaintiffs were forced to litigate through summary judgment before Defendants finally discharged their obligations under FOIA. *See* Exhibit A, Declaration of Daniel Melo.

By their own admissions, Defendants only began fulfilling their statutory obligations once prompted by the threat of intervention from the judiciary, i.e., after Plaintiffs filed this lawsuit. As noted in the agency's first declaration from ICE FOIA Director Fernando Pineiro (Pineiro Declaration), the agency took two weeks to even acknowledge Plaintiffs' digital request—over half of the initial time the statute gives them to make a determination on a FOIA request—and to task ICE's Enforcement and Removal Operations ("ERO") subcomponent with conducting a search for records. Dkt. No. 14-4 ¶¶ 6-9. Despite getting a status request from Plaintiffs on October 12, 2023, ERO had to be re-tasked with conducting the search *after* Plaintiffs' initial Complaint a month later because "ERO did not perform a search after the initial tasking." *Id*. ¶ 11. ERO did not even begin looking for responsive records until December 14, 2023—nearly 4 months after Plaintiffs' FOIA request was submitted to the agency. *Id.* ¶¶ 26-27 ("Subsequent to the initiation of the lawsuit, ERO was tasked again with performing a search. . . .").

Only after Plaintiffs filed for summary judgment did Defendants reprocess documents and remove some exemptions. *Id*. ¶¶ 21-40. After a great deal of obfuscation and refusal by Defendants to produce records related to the electronic Post Order Custody Review (ePOCR) system, this Court ordered them to produce the contents of Plaintiff Rodriguez Guerra's ePOCR profile. *See* February 28, 2025 Minute Order; Dkt. No. 24 at 1 This case falls squarely within the

1

plain text of FOIA's attorney fee provision as Plaintiffs have substantially prevailed and therefore merit reasonable attorneys' fees.

## ARGUMENT

FOIA allows for attorneys' fees where a plaintiff has "substantially prevailed" through judicial order or the agency's unilateral change in position. *See* 5 U.S.C. § 552(a)(4)(E)(i)-(ii). To seek attorneys' fees, FOIA requires a litigant to demonstrate that the lawsuit was reasonably necessary and that the litigation substantially caused the requested records to be released. *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 231 (D.D.C. 2012) (quoting *Burka v. HHS,* 142 F.3d 1286, 1288 (D.C.Cir.1998)). "Congress sought to encourage meritorious FOIA litigation by making any complainant who substantially prevails eligible to recover reasonable attorney's fees." *National Security Counselors v. C.I.A.*, 811 F.3d 22, 24 (D.C. Cir. 2016). "The purpose of the fee provision is to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation." *Nationwide Bldg. v. Sampson,* 559 F.2d 704, 711 (D.C. Cir. 1977). A "grudging application" of this fee provision would be clearly contrary to congressional intent." *Davy v. CIA,* 550 F.3d 1155, 1158 (D.C. Cir. 2008) (citations and quotations omitted).

Congress requires agencies to respond in 20 working *days,* not weeks, not months, or in this case for some records—over a year later. *See* 5 U.S.C. § 552(a)(3)(A) (agencies "shall make the records *promptly* available to any person.") (emphasis added). Non-exempt records are to be made "promptly available," *Jud. Watch, Inc.*, 895 F.3d at 780; *see also*, *Am. Civil Liberties Union Immigr. Rights Project v. U.S. Immigr. and Customs Enforcement*, 58 F.4th 643, 651 (2d

2

Cir. 2023); *Edmonds v. FBI*, 417 F.3d 1319,1324 (D.C. Cir. 2005) (Because "[i]nformation is often useful only if it is timely. . . [E]xcessive delay by the agency in its response is often tantamount to denial."). Because this Court entered an order changing the legal relationship between the parties and because the instant matter was the catalyst for the agency to begin producing records, this Court should award Plaintiffs attorneys' fees under FOIA.

## I.     Plaintiffs have substantially prevailed in this litigation.

Plaintiffs substantially prevail when they secure a judicial order, an enforceable written agreement, or a consent decree. *Hall & Assocs. v. U.S. Env't Prot. Agency*, 2023 WL 7928765, *7 (D.D.C. Nov. 16, 2023). Court orders—even scheduling orders—that change the legal relationship between the parties may also help determine that plaintiffs substantially prevailed in a FOIA matter. *Id.; Elec. Privacy Info. Ctr. (EPIC) v. U.S. Dep't of Homeland Sec.*, 218 F.Supp.3d 27, 39 (D.D.C., 2016). The FOIA statute also provides for fee eligibility where a complainant has substantially prevailed if the complainant has obtained relief through "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(II). This includes a showing that the lawsuit "caused the agency to release the documents obtained during the pendency of the litigation." *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F.Supp.3d 396, 404 (D.C. Cir. 2015) (cleaned up, internal citations omitted).

Plaintiffs have substantially prevailed under both subsections of the statute. After a year and a half of protracted litigation and intransigency from Defendants, this Court entered an order directing Defendants to submit a supplemental declaration defending their withholdings and confirming they had "produced to Plaintiffs an updated version of the ePOCR for Plaintiff

3

Rodriguez Guerra, as it agreed to do during the oral argument." *See* February 28, 2025, Minute Order; Dkt. No. 24 at 1. This alone is sufficient to convey prevailing party status to Plaintiffs. *See EPIC*, 217 F.Supp.3d at 39 ("An order that requires an agency to produce documents by a date certain changes the legal relationship between the parties . . . after the order, the agency must do so or be subject to the sanction of contempt.") (citing *Jud. Watch, Inc. v. FBI*, 522 F.3d 364, 368 (D.C. Cir. 2008).

Plaintiffs have also substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii), as this litigation was the catalyst to prompt Defendants' compliance with the statute. Defendants tacitly acknowledge that the litigation prompted them to search for records—"Shortly after the filing of the lawsuit, the ICE FOIA Office *again* tasked ERO with conducting a search because ERO did not perform the initial tasking." Dkt. 14-4 (1st Pineiro Declaration) ¶ 11. Homeland Security Investigations (HSI) was also first tasked with a search after the filing of the complaint. *Id*. Officer Pineiro's declaration goes on to detail that ERO did not conduct its first search until December 14, 2023, nearly four months after Plaintiffs filed their initial request. *Id*. ¶ 27. It was not until Plaintiffs filed the instant litigation and pursued summary judgment that Defendants searched for and eventually produced all responsive records. *See* Dkt. No. No. 14-4 ¶¶ 26-27. Because Plaintiffs' lawsuit was the catalyst that drove the agency to release the records, Plaintiffs have substantially prevailed by producing a voluntary or unilateral change in position by the agency. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011); *Dasilva v. U.S. Citizenship & Immigration Servs.,* No. 13–13, 2014 WL 775606, at *3 (E.D. La. Feb. 24, 2014) ("[P]laintiff is eligible to receive attorney's fees because this set [of records] was disclosed after approximately five months and, more importantly, after defendant

4

submitted a declaration, sworn under penalty of perjury, to the effect that all documents had already been disclosed and defendant then reconsidered its position after plaintiff moved for summary judgment.").

### II. Plaintiffs are entitled to attorneys' fees.

After considering fee eligibility, courts determine whether the plaintiffs are entitled to attorneys' fees. In doing so, courts in this Circuit typically weigh four factors: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents. *Hall & Assocs. v. U.S. Env't Prot. Agency*, 2023 WL 7928765, at *9 (quoting *Davy v. CIA*, 550 F.3d at 1160). Notably, this test does not exist in the plain text of the statute and as former D.C. Circuit Judge Kavanaugh bluntly remarked, it is time to "ditch the four-factor standard." *See Morley v. CIA,* 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J. concurring). Relying in part on Judge Randolph's dissent in *Davy,* then-Judge Kavanaugh noted that "the four factors have no basis in the statutory text" and, indeed, "Congress's decision not to include the four factors in the statutory text appears to have been deliberate." *Id.* Moreover, Judge Kavanaugh described the first three factors as "incompatib[le] with the FOIA's structure and purposes" and "so vague and malleable that they provide very little guidance to district courts." *Id.* at 691–92. Plaintiffs ask this Court to adhere to the plain text of the statute and submit that, as discussed *supra*, because Plaintiffs have demonstrated they substantially prevailed in this litigation, they have necessarily demonstrated that they warrant attorneys' fees under the statute.

Nevertheless, even under the four-factor test, Plaintiffs have prevailed on all four factors.

5

Regarding the public benefit, this factor "requires consideration of both the effect of the litigation . . . and the potential public value of the information sought." *Id.* at 406. In the instant matter, Plaintiffs sought records related to ICE's efforts to remove Mr. Rodriguez Guerra from the United States. This request touched on ICE records related to its ePOCR module, something that, as briefing in the instant matter has made abundantly clear—ICE has provided very little information to the public about. *See* Dkt. No. 17 at 7-9. As Defendants admit, these records pertain to its decision-making and compliance with regulations and Supreme Court precedent protecting noncitizens' fundamental liberty interests. *See* Dkt. No. 14-4 (First Pineiro Declaration) ¶ 33. Similarly, both the Courts and the public forum alike are alight with discussions of ICE's recent conduct surrounding removals.[1] Moreover, as is evident here, ICE increasingly generates digital records relating to a noncitizen's detention and uses a number of electronic systems to do so. *See* Dkt. No. 9-3 ¶ 6. It is axiomatic that learning and understanding how ICE documents its decisions and actions in the ePOCR module in the context of an individual case would contribute to that discourse.

Further, this information is of vital importance to noncitizens and their counsel in the immigration detention context, as ICE's failure to abide by its policy and the regulations can be pivotal in securing habeas release. *See, e.g.*, *A.L. v. Oddo*, 3:24-CV-302-SLH-KAP at *5 (W.D. Pa. Jan. 6, 2025) (granting habeas petition based in part on ICE's failure to follow its own

---

[1] *See e.g.*, Ben Finley, *Who is Kilmar Abrego Garcia, the man ICE mistakenly deported to an El Salvador Prison?*, AP News (April 8, 2025) https://apnews.com/article/trump-deportation-salvador-maryland-abrego-garcia-7b17b702b77a24d92a28dd4be5755fdd; Laura Romero, *Venezuelan migrants deported to El Salvador despite order barring removal to third countries*, ABC News (April 1, 2025), https://abcnews.go.com/Politics/venezuelan-migrant-recently-deported-el-salvador-final-order/story?id=120353709.

policies regarding petitioner's custody reviews). Plaintiff CAIR Coalition (CAIR Co.),[2] a 501(c)(3) nonprofit, routinely represents noncitizens in removal proceedings and federal courts, including in habeas petitions for noncitizens facing prolonged detention. *See* Dkt. No. 9-3 ¶ 1. CAIR Co. also widely distributes resources and information to the public about ICE's detention and removal practices, including FOIA results, criminal-immigration resources, and practice advisories. Plaintiff CAIR Co. is able to disseminate information gained from this litigation and ePOCR to a wide audience.[3] Finally, there is a fundamental public interest—particularly to noncitizens—in knowing whether ICE is complying with the Constitution and its attendant regulations regarding detention and removal. *See supra*, n.1.

The second factor and third factors (often combined in the analysis) also clearly favor Plaintiffs. *See Am. Immigr. Council*, 82 F.Supp.3d at 405. These factors look to any commercial benefit to the plaintiff and the nature of a plaintiff's interest in pursuing the records. *See id*. Again, Plaintiff CAIR Co.'s nonprofit mission of representing noncitizens in removal proceedings, including educating the immigration bar on representing noncitizens in challenges to their detention. As is evident in the instant matter, at the core of challenging detention is the lawfulness of ICE's actions, including whether it can continue to hold a noncitizen under the Constitution and the INA. *See* Dkt. No. 9-5 (FOIA production) at 32-33; 14-4 (Pineiro Decl.) ¶ 33; 9-6 (Melo Declaration in Support of Expedited Treatment) ¶ 3. The records sought in the instant matter go not only to this material issue, but revealed a system that ICE is utilizing but

---

[2] Plaintiff CAIR Co.'s public facing name is now Amica Center for Immigrants Rights. *See* Amica Center, "How we started," (last accessed April 14, 2025), https://amicacenter.org/about-us/.

[3] *See* Amica Center, "Tools and Guides," (last accessed April 14, 2025), https://amicacenter.org/legal-resources/tools-guides/.

has provided little transparency about. *See* Dkt. No. 9-6 ¶¶ 5-8; Dkt. No. 16 at 7-8 (discussing limited public information about ePOCR and its digital predecessor). Because Plaintiffs are a nonprofit organization and an indigent noncitizen respectively, there was no commercial interest sought or gained in making their request under FOIA. *See American Immigration Council*, 82 F.Supp.3d at 406 (noting that even where a nonprofit uses FOIA records to solicit donations, this is still not a "commercial benefit"). As a non-profit organization, Plaintiff CAIR Co. is "among those whom Congress intended to be favorably treated under FOIA's fee provision." *Davy v. CIA*, 550 F.3d 115, 1161-62. *See also Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F.Supp.2d 61, 69 (D.D.C. 2013) ("These [second and third] factors also favor non-profit organizations like [Plaintiff], which aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote.") (internal quotation marks omitted). Even Plaintiff Rodriguez Guerra's personal interest in the records does not preclude an award of fees as his attempt to vindicate his constitutional rights "fits well within the scope of the second criteria for awarding attorneys' fees." *Williams v. F.B.I.*, 17 F.Supp. 2d 6, 9 (D.D.C. 1997). These two factors thus favor Plaintiffs.

Finally, the fourth factor—the reasonableness of the agency's withholding—resolutely favors Plaintiffs. Defendants' withholding of records here, both as to the initial production and its year-long refusal to produce ePOCR records, lacked a reasonable basis in law. This factor looks to "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Am. Immigr. Council*, 82 F.Supp.3d at 407. Put another way, the fourth factor meant to "incentiviz[e] the government to promptly turn over –

8

before litigation is required – any documents that it ought not withhold." *Davy*, 550 F.3d at 1166 (Tatel, J., concurring). Here, Defendants obfuscated and hand-waved their way around the basic task of producing Mr. Rodriguez Guerra's ePOCR profile for months before the Court ultimately got them to concede at oral argument that the contents of a noncitizen's ePOCR profile are records under FOIA and the agency had an obligation to produce them. *See* February 28, 2025 Minute Order; Dkt. No. 24 at 1. The agency had no reasonable basis in law for withholding the ePOCR records and therefore, the fourth factor also weighs in favor of Plaintiffs. *See Davy*, 550 F.3d at 1163 (The question and burden is on the agency to show "that it had any colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit."). In the same respect, Defendants' FOIA backlog—one of their own making (*see* Dkt. No. 9-1 at 19-26)—cannot form a reasonable basis in law for withholding any of the records. *See Reyes v. U.S. Nat' Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 167-68 (D.D.C. 2018). (FOIA's purpose "would not be served if it were reasonable for agencies to withhold documents for indeterminant periods of time because they have too many FOIA requests and too few FOIA staff members.")

In sum, all four factors favor Plaintiffs. Congressional history "clearly indicates that the attorney fees provision was adopted to ensure that judicial review of exemption claims would be available practically as well as legally. . . [T]oo often the barriers presented by court costs and attorneys' fees are insurmountable for the average person requesting information, allowing the government to escape compliance with the law. . . ." *Nationwide*, 559 F.2d at 711–12. For these reasons, this Court should award Plaintiffs reasonable attorneys' fees.

//

//

### III.  Plaintiffs' fee request is reasonable.

A reasonable attorneys' fee award is determined by calculating the "lodestar" amount, which is the number of hours reasonably worked multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Here, Plaintiffs' counsel set forth 78.3 hours of time litigating the instant matter through summary judgment. *See* Ex. A; Ex. B, Declaration of F. Evan Benz. This amount of time to fully litigate this case through cross-motions for summary judgment is reasonable. To calculate fees for public-interest attorneys who have no customary hourly rates, "Courts often look to prevailing market rates in the community." *See Am. Immigr. Council*, 82 F.Supp.3d at 405. Plaintiffs have used the *Fitzpatrick* matrix accepted and published by the Department of Justice (DOJ) to calculate the hourly rate for attorneys' fees in FOIA matters. *See* D.D.C. DOJ, *The Fitzpatrick Matrix* at 1-2 (last accessed April 9, 2025) (available at https://www.justice.gov/usao-dc/media/1395096/dl?inline). Here, undersigned counsel is in their 10th year of licensure and utilized the rate of $612 under the *Fitzpatrick* matrix. Including the costs of filing and service, the total amount requested is $48,400.24

Plaintiffs also seek to recover fees on fees for time spent litigating the fee issue against the agency. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable," *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp.2d at 239. Plaintiffs have spent a total of 20.2 additional hours litigating this motion and request additional attorneys' fees in the amount of $12,362.40. *See* Ex. A; B.

## CONCLUSION

Defendants failed to abide by the statutory deadlines under FOIA. They refused to hand over responsive records until the Court convinced them otherwise after cross-motions for

10

summary judgment. All of which could have been avoided, as Congress intended, by the agency complying with the law and timely releasing the requested records in the first place, without any litigation being necessary. Plaintiffs should be awarded $47,919.60 in fees; $480.64 in costs; and fees on fees of $12,362.40.

Date:  April 14, 2025

Respectfully submitted,

/s/ *Daniel Melo*
Daniel Melo
NC Bar # 48654
Amica Center for Immigrant Rights
(formerly Capital Area Immigrants' Rights Coalition)
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 916-8180
Fax: (202) 331-3341
Daniel.Melo@amicacenter.org

*/s/ F. Evan Benz*

F. Evan Benz
Amica Center for Immigrant Rights
NC Bar # 49077
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 869-3984
Fax: (202) 331-3341
evan@amicacenter.org

*Pro Bono Counsel for Plaintiffs*