UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Civil Action No. 23-3344 (CJN) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS**

Defendants, the United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement ("ICE") (collectively "Defendants"), by and through undersigned counsel, hereby submit this Memorandum of Points and Authorities in opposition to Plaintiffs' motion for attorney's fees (Pl. Mot., ECF No. 26), in this case brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  As explained below and in the accompanying declaration of Fernando Pineiro ("Pineiro Decl."), Plaintiffs are neither eligible for nor entitled to attorney's fees, and the amount of fees sought is unreasonably high and grossly inflated.  When the background and history of this case is reviewed, it is clear the Court should award nothing to the Plaintiffs, the Capital Area Immigrants' Rights Coalition ("CAIR") and their client, Roberto Carlos Rodriguez Guerra ("Rodriguez Guerra").

## BACKGROUND

This matter was brought before this Court prematurely and unnecessarily by the Plaintiffs. The complaint in this matter was filed on November 8, 2023 (ECF No. 1), arising out of a FOIA

request submitted barely two months earlier, dated August 29, 2023. *See* Ex. A to Plaintiffs' complaint, ECF No. 1-1. This particular action concerns a single FOIA request which sought records related to the detention of one individual, Plaintiff Rodriguez Guerra, and did not seek records of any other persons, nor did it seek records of any public interest. ECF No. 1-1. These records were sought in connection with a habeas petition filed by Rodriguez Guerra: "The FOIA request was submitted in conjunction with a federal habeas petition challenging Mr. Rodriguez Guerra's continued ICE detention and seeks information relevant to that petition." Compl., ECF No. 1, ¶¶ 4, 8.

ICE promptly responded to Plaintiffs' FOIA request approximately two weeks later, on September 15, 2023, assigning the request tracking number 2023-ICFO-40841, and informing Plaintiffs' counsel that due to the large number of FOIA requests received by ICE, there would be a delay in processing the request, and that the request would "necessitate a thorough and wide-ranging search . . ." *See* Ex. B to Plaintiff's complaint, ECF No. 1-2; *See also* Pineiro Decl. ¶ 9. ICE FOIA specifically informed Plaintiffs of the following in its timely response:

> Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Per Section 5.5(a) of the DHS FOIA regulations, 6 C.F.R. Part 5, ICE processes FOIA requests according to their order of receipt. Although ICE's goal is to respond within 20 business days of receipt of your request, the FOIA does permit a 10-day extension of this time period. As your request seeks numerous documents that will necessitate a thorough and wide-ranging search, ICE will invoke a 10-day extension for your request, as allowed by Title 5 U.S.C. § 552(a)(6)(B). If you're able to narrow the scope of your request please contact our office. Narrowing the scope may speed up the search process. We will make every effort to comply with your request in a timely manner…

> We have queried the appropriate program offices within ICE for responsive records. If any responsive records are located, they will be reviewed for determination of releasability. Please be assured that one of the processors in our office will respond to your request as expeditiously as possible. We appreciate your patience as we proceed with your request.

ECF No. 1-2.

The Pineiro Declaration confirms that ICE submitted the request for processing promptly after receipt and prior to the institution of this lawsuit. Indeed, on September 15, 2023, the ICE FOIA Office tasked Enforcement and Removal Operations ("ERO") with conducting a search. Pineiro Decl. ¶ 10. Due to the number of FOIA requests received by ICE, there was an unavoidable delay in conducting the search, but the processing of Plaintiffs' request was in the queue prior to the initiation of the lawsuit. Pineiro Decl. ¶ 10.

On October 12, 2023, Plaintiffs sent a status inquiry letter to ICE, where Plaintiffs acknowledged that the request "is still listed as pending in the SecureRelease portal." Pineiro Decl. ¶ 11. The ICE FOIA Office responded the following day, stating: "[a]s of today, your request is currently pending the search for responsive documents. If any responsive records are located, they will be reviewed for a determination of releasability." Pineiro Decl. ¶ 11. The ICE FOIA Office again informed Plaintiffs' counsel that it was experiencing delays and would respond to Plaintiffs' request as expeditiously as possible. *Id.* Plaintiffs were neither satisfied with this prompt response nor patient, and shortly thereafter filed their complaint on November 8, 2023. Nonetheless, the Defendants were processing Plaintiffs' FOIA request prior to the institution of this litigation, and the lawsuit was not the reason the records were produced. Pineiro Decl. ¶¶ 9-12. Plaintiffs' request was placed in the queue for processing, along with a multitude of other requests ICE had received before Plaintiffs' Request. Pineiro Decl. ¶ 12. The answer to the complaint was filed on January 8, 2024. ECF No. 8.

At the time the ICE FOIA Office received Plaintiffs' August 29, 2023 FOIA request, the FOIA backlog was 29,622 requests. At the time of Plaintiffs' October 12, 2023 status inquiry, the backlog had increased to 32704 requests. Pineiro Decl. ¶ 18.

On February 28, 2024, less than six months after the submission of the request, ICE provided Plaintiffs with its response to the FOIA request, producing forty-eight pages with partial withholdings pursuant to FOIA Exemptions 5, 6, 7(C) and 7(E).  Pineiro Decl. ¶ 22; *see also* Ex. 2 to Defendants' cross-motion for summary judgment, ICE's release letter, ECF No. 15-5.  Based upon ICE's backlog of requests and processing time, this production would have been made around that time without the initiation of Plaintiffs' lawsuit.  Pineiro Decl. ¶ 22.

Although Exemption 5 withholdings were properly applied, ICE decided to exercise its discretion and lifted those redactions.  Pineiro Decl.¶ 22.  Plaintiffs never challenged the withholdings made pursuant to Exemptions 6 or 7(C).[1]  See Pl. Mot for Summary Judgment, ECF No. 8, at 8.  The records were then re-released to Plaintiffs with the previously withheld Exemption 5 information in a supplemental release dated July 15, 2024, consisting of forty-nine pages.  Pineiro Decl. ¶ 22; *See also* Def. Mot. Ex. 3, release letter, ECF No. 15-6.  The one additional page consisted of a page that had been previously marked as a duplicate but was found to be responsive. *Id*.

Thus, Plaintiffs were promptly provided with all records responsive to their request on two occasions, and the first response was provided to Plaintiffs before they even filed their motion for summary judgment and would have been provided around that time in any event, and not because of the lawsuit.  Pineiro Decl. ¶¶ 22, 23.

**The Parties' Motions for Summary Judgment**

Not only did the Plaintiffs institute this litigation prematurely and unnecessarily, and the Defendants were processing the request prior to the institution of the litigation, but Plaintiffs also

---

[1]    Therefore, the only withholdings that remained for decision by the Court at summary judgment were Defendants' Exemption 7(E) withholdings.  As discussed, infra, Defendants were granted summary judgment on that issue.

filed an unnecessary motion for summary judgment on May 20, 2024 (ECF No. 9). As stated, Plaintiffs had already received the information they sought on February 28, 2024, almost three months before the motion was filed. Also, summary judgment was eventually limited to a single issue: "whether the government properly redacted internal codes from the records it released to Plaintiffs." *See* Order, ECF No. 24, at 1. Defendants cross-moved for summary judgment (ECF No. 15). This Court determined that the Defendants had properly applied Exemption 7(E) redactions to the codes as they contained information compiled for law enforcement purposes and release of the information could harm ICE's enforcement efforts and "could reasonably be expected to risk circumvention of the law." *See* Order at 5. Thus, Plaintiffs' motion for summary judgment was denied and Defendants' motion for summary judgment was granted. *Id*.

Plaintiffs in their motion for fees continue to focus on the electronic Post Order Custody Review ("ePOCR"), a six-page document, and incorrectly claim that this Court ordered the Defendants to produce this record. There is not a single order from the Court directing the Defendants to produce this or any other records in this case. Indeed, the first filing in this case after the Defendants filed their answer was Plaintiffs' motion for summary judgment. Also, there was not a single status report filed prior to Plaintiffs filing their unnecessary motion.

Any and all records related to the ePOCR had been provided to Plaintiffs. Plaintiffs incorrectly asserted in their summary judgment motion that ICE has "failed to produce the contents of a pivotal database" known as the ePOCR. Pl. Mot at 13. As explained in Defendants' cross-motion, the ePOCR is not a database, but an electronic tool that replaced a prior checklist. As explained by Mr. Pineiro in his declaration in support of the cross-motion, a post order custody review "analysis must be performed to justify a noncitizen's continued detention after being ordered removed. The electronic POCR (ePOCR) is not a database. Instead, it is a tool which

replaced the previous transfer checklist and is used to ensure that certain documents are included in the review.  The ePOCR does not store information." Initial Pineiro Decl., ECF No. 15-4, ¶ 33. However, those documents were produced to Plaintiffs and there was no new information to be provided in the ePOCR checklist.

In his declaration in support of this opposition to fees, Mr. Pineiro again points out that the ePOCR is a checklist/worksheet, and that Plaintiffs were provided on two occasions with the underlying records that went into the ePOCR.  Pineiro Decl. ¶¶ 23-27.

At the summary judgment hearing, Defendants agreed to produce the six-page ePOCR checklist to Plaintiffs but reiterated that the documents mentioned in that ePOCR had already been provided to them.  Indeed, undersigned counsel had sent an email to counsel for Plaintiffs on August 26, 2024, notifying him that he had received the records which form the ePOCR checklist, and provided citations to the Bates pages that had been produced where those records could be found.  *See* Ex. A hereto.  Thus, even though Plaintiffs had been provided with all the information and records requested concerning Rodriguez Guerra's detention, Defendants nonetheless agreed to provide the six-page ePOCR checklist to Plaintiffs even though Plaintiffs had in their possession all the underlying records.  The Court never ordered the Defendants to produce the ePOCR, as incorrectly argued in Plaintiffs' fee motion at page 1.  Indeed, in footnote 1 of this Court's order on summary judgment it is recited that the "Parties agreed that ePOCR is a checklist and that the government would produce an up-to-date version of it to Plaintiffs."  ECF No. 24.  This was done but again, Plaintiffs already had the underlying information.

**Plaintiffs' Fee Request**

As with the institution of this unnecessary litigation and the superfluous filing of a motion for summary judgment, the Plaintiffs' motion for fees has likewise been rushed to the Court and

was clearly filed to pad the request for fees.  On April 4, 2025, counsel for Plaintiffs emailed the undersigned a request for attorney's fees in the total amount of $35,364.64.  Plaintiffs then filed shortly thereafter, on April 14, 2025, the instant motion for fees wherein $47,919.60 is requested, plus $480.64 in costs, plus $12,362.40 for "fees on fees".  Thus, this is a request for fees and costs in the amount of $60,762.64 in a case involving 49 pages of records, 48 of which were produced to Plaintiffs prior to summary judgment, where the Defendants were processing the request prior to the filing of a complaint, not a single status report has been filed,[2] where summary judgment was granted in favor of the Defendants, and no orders have been entered against the Defendants.

## LEGAL STANDARD FOR FEES UNDER FOIA

FOIA provides that "[t]he court *may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i) (emphasis added).  A court has "very broad discretion" about "whether to award or deny fees."  *Morley v. CIA*, 894 F.3d 394, 391, 396 (D.C. Cir. 2018) (FOIA does not provide that a court "'must' or 'shall' award fees").

To be "eligible" for fees, a plaintiff must have "substantially prevailed."  *Jud. Watch, Inc. v. Dep't of Com.*, 470 F.3d 363, 368–69 (D.C. Cir. 2006).  A plaintiff "has substantially prevailed if [he] has obtained relief through" (1) "a judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [plaintiff's] claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  The second prong of this test reflects an approach known as the "catalyst theory," under which a plaintiff may "prove fee

---

[2] After the filing of the answer on January 8, 2024 (ECF No. 8), there were no joint status reports filed or other activity on the docket until Plaintiffs filed their motion for summary judgment on May 20, 2024 (ECF No. 9).  Thus, there was a complaint, an answer, and then an unnecessary motion for summary judgment.

eligibility by showing that its lawsuit substantially caused the government to release the requested documents before final judgment." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020) (internal quotation marks omitted).

If a plaintiff demonstrates he is eligible for fees, the next question becomes whether he is entitled to fees. In making the entitlement determination, the court considers "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (cleaned up). Plaintiff bears the burden of proof on both entitlement and eligibility. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

Even if a plaintiff establishes eligibility and entitlement, he must establish a fee request's reasonableness. A "district court is expressly empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness." *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). In assessing reasonableness, the Court looks at the number of hours spent on particular tasks, *Covington*, 57 F.3d at 1107, and whether the plaintiff exercised sound billing judgment by excluding hours incurred as a result of overstaffing or hours that are excessive, redundant, or unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In exercising its discretion to award or deny fees, "[t]he touchstone of a court's discretionary decision" must be whether "an award of attorney fees is necessary to implement the FOIA." *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 715 (D.C. Cir. 1977).

## ARGUMENT

FOIA creates "mismatched incentives" for requesters—and their counsel—to sue frequently. *Am. Ctr. for L. & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021). So long as "the agency [is] ultimately footing the bill," FOIA plaintiffs and their counsel

"have everything to gain" in bringing these suits, and little reason to forbear. *Id.* "FOIA's requester-friendly fee shifting provisions encourage" more and more FOIA lawsuits, "with taxpayers picking up the tab." *Ctr. for Immigr. Stud. v. USCIS*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022). Unsurprisingly, requesters and counsel frequently treat FOIA as a "blank check." *Id.* at 275.

This case illustrates the problems with FOIA and fee requests. Plaintiffs' FOIA lawsuit joined the exploding cascade of such lawsuits within this District, with "taxpayers picking up the tab" for Plaintiff's counsel's unreasonable—and ultimately unnecessary for the disclosure of the records sought by Plaintiff—fees. *Ctr. for Immigr. Stud.*, 628 F. Supp. 3d at 271.

The majority of the work for which Plaintiffs seek fees in this case is driven by fee recovery and not the release of records. And although FOIA provides that a requester may recover "reasonable attorney fees and other litigation costs reasonably incurred" where the requester has substantially prevailed, 5 U.S.C. § 552(a)(4)(E)(i), that tail should not wag the dog of the statute's disclosure purpose. *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 959–60 (D.C. Cir. 2017) (Henderson, J., concurring) (lamenting "satellite fee litigation" where counsel "lost sight of the real party in interest" and counsel sought a "windfall"; an excessive "fee request is not victimless: the money has to come from someone"). This is especially salient where, as here, those purposes would have been fulfilled—without issue—had Plaintiffs afforded Defendants the opportunity to complete their search and processing, instead of filing a complaint barely two months after the request was submitted.

This Court should award Plaintiffs nothing. As a threshold matter, Plaintiffs fail to show eligibility for fees in the first place, as they cannot show that this suit substantially caused Defendants to release records. To the contrary, Defendants would have responded to Plaintiffs'

request regardless of whether they sued, and any delay was due to Defendants' substantial backlog of pending FOIA requests and available resources, with Defendants attesting that this lawsuit did not cause Defendants to change their position with respect to processing Plaintiffs' request or releasing responsive records, or the timing of any releases.  Pineiro Decl. ¶¶ 9-27.  For these reasons, Plaintiffs fail to show that they are eligible for attorney's fees.

Nor have Plaintiffs shown they are entitled to fees.  There is no inherent public benefit derived from the records released.  As admitted by Plaintiffs, these records were sought in conjunction with a pending habeas petition.  Compl., ECF No. 1, ¶ 8.  Plaintiffs' private interest in these records is such that they had "'sufficient private incentive to seek disclosure' of the documents without expecting to be compensated for it." *McKinley*, 739 F.3d at 711 (quoting *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008)).  Moreover, Plaintiffs' satisfaction with the search conducted and the unchallenged nature of Defendants' withholdings save for those under 7(E), plus the Defendants prevailing on the Exemption 7(E) withholdings at summary judgment, demonstrates that Plaintiffs cannot establish that Defendants lacked a reasonable basis in law to support the information they withheld.

In addition, the amount claimed here is grossly excessive and a claim for any fees should be denied outright on that basis alone.  As a decision to award fees is discretionary, a court "may deny in its entirety a request for an 'outrageously unreasonable' amount, lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place.'" *Env't Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (quoting *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980)); *see also Baylor*, 857 F.3d at 960 (Henderson, J., concurring) ("Steep overbilling ought to come at a steep price."); *id.* (discussing possibility of no fee award as a

consequence of an unreasonable fee demand); *id.* at 959 (a fee request should not become "the tail . . . wagging the dog"). This is precisely such a situation where no fees should be awarded.

And, to the extent this Court elects to award Plaintiffs any fees, it should award far less than the amount Plaintiffs seek, as detailed further below.

Defendants regret Plaintiffs' decision to saddle this Court with "one of the least socially productive types of litigation imaginable"—namely, satellite attorney's fees litigation. *Hensley*, 461 U.S. at 442 (Brennan, J., concurring in part and dissenting in part); *accord id.* at 437 (majority op.) ("A 'request for attorney's fees should not result in a second major litigation[.]'" (citation omitted)). But Defendants have a duty to taxpayers and the public at large to resist a profoundly flawed and unreasonable fee demand. Further, by signaling to counsel that they cannot expect to be compensated by the government for suits that were avoidable, as this one should have been, the burden on this Court of unwarranted FOIA suits and on the government of unnecessary FOIA requests may decrease, thereby allowing more prompt determinations regarding FOIA requests submitted by all individuals, including those not represented by experienced FOIA litigators.

**I.**    **Plaintiffs Fail to Demonstrate That They are Eligible for Attorney's Fees.**

In short, the Plaintiffs have not shown that their lawsuit substantially caused the Defendants to release records to Plaintiffs and it is readily apparent that Defendants made a good faith effort to respond to Plaintiffs' request in a timely manner. The accompanying Pineiro Declaration makes clear that any delay was not due to a lack of cooperation, but due to the large number of FOIA requests received by ICE.

A "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA] case . . . in which the [plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "has substantially prevailed if [he] has obtained relief through" (1) "a judicial order, or an enforceable written agreement or consent decree," or

(2) "a voluntary or unilateral change in position by the agency, if the [plaintiff's] claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii).  The second prong of this test reflects the "catalyst theory," under which a plaintiff may "prove fee eligibility by showing that its lawsuit substantially caused the government to release the requested documents before final judgment." *Grand Canyon Tr.*, 947 F.3d at 96 (internal quotation marks omitted); *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 47 (D.D.C. 2012) ("[T]he D.C. Circuit has interpreted the term 'substantially prevailed' rather narrowly to require that a FOIA plaintiff relying on the catalyst theory must receive records responsive to its request in order for that plaintiff to have 'substantially prevailed.'" (citing *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir. 2011))).

Here, Plaintiffs obtained no relief under a court order, enforceable written agreement, or consent decree.  Indeed, Defendants prevailed on the only issue decided on summary judgment. Plaintiffs' motion was denied; Defendants was granted. *See* Order, ECF No. 24 at 5.

Plaintiffs are incorrect when they argue that the "court entered an order directing Defendants to submit a supplemental declaration defending their withholdings and confirming they had 'produced to Plaintiffs an updated version of the ePOCR for Plaintiff Rodriguez Guerra, as it agreed to do during the oral argument.'"  Pl. Mot. at 3-4, quoting the Court's February 28, 2025 Minute Order, ECF No. 24 at 1.  The Court did not order the Defendants to produce anything in its Minute Order but recites that the government "agreed" to produce this checklist.  *Id.*  Further, the Court was informed at oral argument that ePOCR is merely a checklist and that Plaintiffs had been provided with the underlying information, but Defendants nonetheless voluntarily agreed to produce it.

Further, the production of the six-page ePOCR checklist is the definition of an insubstantial claim under 5 U.S.C. § 552(a)(4)(E)(ii)(II).  Plaintiffs had received all the records regarding

Rodriguez Guerra's detention. Plaintiffs were provided with a checklist of documents they had already received well prior to summary judgment and it did not provide Plaintiffs with any new or substantial information; they merely received a worksheet of what had already been produced to them. Thus, receipt of this six-page ePOCR checklist that Defendants agreed to produce in no way demonstrates that Plaintiffs prevailed on any substantial claim.

Finally, after submission of the supplemental declaration requested by the Court, it was determined that the Defendants were justified in withholding information under Exemption 7(E) and Defendants were granted summary judgment. *See generally*, Order. This can hardly be considered an order in favor of Plaintiffs.

Plaintiffs also fail to show that this lawsuit substantially caused Defendants to release records under the catalyst theory. The catalyst theory turns on whether a Plaintiff's lawsuit "substantially caused" the agency to release documents. *Brayton v. Off. of the Trade Rep.,* 641 F. 3d 521, 525 (D.C. Cir. 2011). The evidence Plaintiffs cite is the timeline, but the fact that one event happens after another does not indicate that the earlier event caused the latter event. "[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Grand Canyon*, 947 F.3d at 97; *accord Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587-88 (D.C. Cir. 1981) ("an allegedly prevailing complainant must assert something more than *post hoc, ergo propter hoc*" (citation omitted)); *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 206 (D.D.C. 2016) ("while it is true that Defendants released some documents after [plaintiff] filed the complaint as a purely chronological matter, it is also clear beyond cavil that the catalyst method requires more"). Rather, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force*, 160 F. Supp. 3d at 206; *accord Env't*

*Integrity Project v. EPA*, 316 F. Supp. 3d 320, 328 (D.D.C. 2018) (same). "Absent any evidence on the matter, the natural inference is that the [agency] was simply responding to the [plaintiff's] request," even if belatedly. *Pyramid Lake Paiute Tribe of Indians v. Dep't of Just.*, 750 F.2d 117, 120 (D.C. Cir. 1984); *see also Harvey v. Lynch*, 178 F. Supp. 3d 5, 8 (D.D.C. 2016) ("As the D.C. Circuit has observed, 'both the plethora of [FOIA] cases pending before federal agencies at any given time[ ] and the time-consuming nature of the search and decision process' would make a strict-liability rule for agencies that miss the 20-day FOIA deadline both unnecessarily harsh and potentially quite expensive." (quoting *Cox v. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979), *abrogated on other grounds*, *Benavides v. Bureau of Prisons*, 993 F.2d 257 (D.C. Cir. 1993))). Thus, Plaintiffs' argument at p. 2 of their motion that the Defendants were required to respond in 20 working days is without merit given the realities of FOIA as recognized in this district.

Plaintiffs offer no hard evidence beyond mere temporal proximity to suggest that this suit substantially caused Defendants to release records. Defendants have confirmed that the timing of the release was a function of Defendants' FOIA backlog, the complexity of the request, and available resources—not a result of the lawsuit. The records would have been produced when they were produced in the normal course, not due to the lawsuit. Pineiro Decl. ¶¶ 9-27. Plaintiffs make the unsubstantiated and unsupportable assertion that "this litigation was the catalyst to prompt Defendants' compliance with the statute." Pl.'s Mot. at 4. Rather, Defendants processed and concluded the processing of Plaintiffs' request in the ordinary course. Indeed, Defendants have attested that it was the backlog of FOIA requests and not this lawsuit which delayed any response. Pineiro Decl. ¶¶ 9-27.

The period between when Plaintiffs submitted their requests and Defendants first produced or concluded producing records is immaterial, as "Congress did not enact the fee-shifting provision

of FOIA to punish agencies for their slowness in processing FOIA requests, but to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure." *Terris, Pravlik & Millian, LLP v. Ctrs. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011); *see also Burka v. Dep't of Health & Hum. Servs.*, 142 F.3d 1286, 1289–90 (D.C. Cir. 1998) ("An award of attorney's fees was intended . . . not [to] reward successful claimants or penalize the government."). Plaintiffs thus fail to show, as is their burden, eligibility for attorney's fees.

Moreover, when "an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the [plaintiff] substantially prevailed in his suit." *Church of Scientology*, 653 F.2d at 588 (citation omitted); *see also Env't Integrity*, 316 F. Supp. 3d at 328 ("unintentional administrative burdens . . . delayed [the agency's] response, and [plaintiff's] lawsuit did not cause the eventual release"). "Courts have found that a delay may be unavoidable when the agency is insufficiently staffed to respond to FOIA requests." *Id.* (citing *Conservation Force*, 160 F. Supp. 3d at 206); *see also Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1497 (D.C. Cir. 1984) (a "tremendous FOIA backlog" can explain an agency's delay); *Codrea v. ATF*, 272 F. Supp. 3d 49, 53 (D.D.C. 2017) ("an agency's delay in response until after a lawsuit is filed may be the result of factors having nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests"); *Short v. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing"). Thus, "if the government's assertion for any delay is the slowness of the FOIA process despite its due diligence, disclosure after the lawsuit is filed, even if long delayed, will not in itself justify the award of fees." *Terris*, 794 F. Supp. 2d at 38.

Defendants' delay in processing Plaintiffs' FOIA requests was due merely to the large volume of FOIA requests pending before them.  Pineiro Decl. ¶¶ 9-18.  Defendants assigned Plaintiffs' FOIA request to the appropriate processing queue, along with the other requests in the backlog.  Pineiro Decl.¶ 12; *see also Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 615–16 (D.C. Cir. 1976) (agency should process FOIA requests "on an equal and fair basis," and should generally handle "all requests on a first-in, first-out basis").

Defendants never refused to process Plaintiffs' FOIA request nor suggested they would not do so absent litigation.  Indeed, Plaintiffs were told promptly upon receipt of the request that there would be a delay in processing.   The Defendants attest that the timing of the release was a function of their FOIA backlog, the complexity of the requests, and available resources—not a result of the lawsuit.  Pineiro Decl ¶¶ 9-27; *Grand Canyon Tr.*, 947 F.3d at 97 ("Neither agency suggested it would fail to comply with the request"); *Env't Integrity*, 316 F. Supp. 3d at 327 ("Nothing in [the] answer suggests that the agency refused to search for or release responsive documents to [plaintiff] prior to [the] filing of the complaint"); *Conservation Force*, 160 F. Supp. 3d at 206 ("No averments or other facts in the instant record indicate that Defendants only produced these documents because of [the] lawsuit or its necessary consequents, nor was there any about-face from an initial agency refusal here" (cleaned up)).

While Defendants have made the above showing explaining the reasons that Plaintiffs are not eligible for fees, they have no burden to do so.  To the contrary, the burden is entirely on the Plaintiffs.  *See Paiute Tribe*, 750 F.2d at 121 ("It is the plaintiff's burden to present evidence establishing a direct causal nexus in order to be eligible for attorney's fees under the FOIA."); *Grand Canyon Tr.*, 947 F.3d at 97 (plaintiff "has the burden of showing 'that it is more probable than not that the government would not have performed the desired act absent the lawsuit'").  To

establish eligibility, Plaintiffs must show that it is more probable than not both (1) that the suit was "necessary to obtain the information" and (2) that "a causal nexus exists between that action and the agency's surrender of the information." *Cox*, 601 F.2d at 6. Here, "[t]he burden falls on the party seeking the fee award to persuade the court that both elements of this standard are satisfied where [as here] no court judgment ordering release exists." *Sweatt v. Navy*, 683 F.2d 420, 424 (D.C. Cir. 1982). The fee petition should be denied based on Plaintiffs' failure to make this threshold showing.

Further, even if the Court were to conclude that Plaintiff "'may have won a battle'" in the litigation by receiving disclosure post-complaint, that does not mean that he necessarily substantially prevailed. *Weisberg v. Dep't of Just.*, 848 F.2d 1265, 1273 (D.C. Cir. 1988) (citation omitted), *overruled on other grounds by King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991); *accord Hensley*, 461 U.S. at 436 ("the most critical factor is the degree of success obtained"); *Open Am.*, 547 F.2d at 615 (under FOIA, the role of courts should be reserved, among other things, for "when the agency was not showing due diligence"). Plaintiffs obtaining of the requested records, without successfully challenging any issues regarding Defendants' searches or invocations of exemptions, is the quintessential outcome that they could have received through the administrative process. That does not mean that Plaintiff has proven that he "substantially prevailed," 5 U.S.C. § 552(a)(4)(E)(i), including establishing that his "claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii).

It is Plaintiffs' burden to demonstrate eligibility for fees, not Defendants' burden to contest it. Plaintiffs have submitted no convincing evidence demonstrating eligibility. Rather, Defendants have demonstrated that Plaintiffs are not eligible for an award of fees.

II.    **Plaintiffs Fail to Demonstrate Entitlement to Attorneys' Fees and Costs.**

Not only have Plaintiffs failed to establish eligibility for fees, likewise they have failed to satisfy the second prong of the FOIA fees analysis, entitlement to fees.

The D.C. Circuit has articulated a "four-factor standard . . . for considering a substantially prevailing party's entitlement to attorney's fees in FOIA cases." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013). "Those four factors are: (1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Id.* "[W]hen the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors and whether to award attorney's fees." *Morley*, 894 F.3d at 391. In weighing these four factors, the D.C. Circuit has further explained that

> Essentially, the first three factors assist a court in distinguishing between requesters who seek documents for public informational purposes and those who seek documents for private advantage. The former engage in the kind of endeavor for which a public subsidy makes some sense, and they typically need the fee incentive to pursue litigation; the latter cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate.

*Davy*, 550 F.3d at 1160. "[W]hen the four factors point in different directions, the district court has very broad discretion in deciding how to balance those factors[.]" *Morley*, 894 F.3d at 391. Plaintiff bears the burden to demonstrate his entitlement to fees. *See Covington,* 57 F.3d at 1107.

## A.    There Is No Public Benefit in the Records Released.

"[T]he 'public benefit' criterion 'speaks for an award (of attorneys' fees) where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.'" *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)). The mere release of information pursuant to a court order is insufficient for this factor to weigh in favor of a fee award. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Thus, in considering the public benefit, courts evaluate the

specific information ordered released, *id.*, as well as whether the case advanced the public interest. *Chesapeake Bay Found. v. Dep't of Agric.*, 108 F.3d 375, 377 (D.C. Cir. 1997). Importantly, the focus of the public interest inquiry is whether a public interest was derived from "the litigation." *Id.* "Minimal, incidental and speculative public benefit will not suffice." *Aviation Data Serv. v. FAA*, 687 F.2d 1319, 1323 (10th Cir. 1982). A plaintiff "must show 'at least a modest probability of generating useful new information about a matter of public concern.'" *Trotter v. Ctr. for Medicare & Medicaid Servs.*, Civ. A. No. 19-2008 (RCL), 2022 WL 951377, at *3 (D.D.C. Mar. 30, 2022) (quoting *Cotton*, 63 F.3d at 1120).

Here, Plaintiffs fail to demonstrate that any information either requested or disclosed by Defendants in response to this litigation is of any public benefit whatsoever. Plaintiffs make the specious argument that "this information is of vital importance to noncitizens and their counsel in the immigration detention context, as ICE's failure to abide by its policy and the regulations can be pivotal in securing habeas release." Pl. Mot. at 6. This is sophistry at its finest. Plaintiffs admit in their complaint that this request was submitted to gain information regarding Rodriguez-Guerra's detention and to support his claim for habeas relief. Compl. ¶¶ 4, 8.

Plaintiffs cannot establish a public benefit with mere "conclusory statements" about the supposed import of the records requested, and here he has not shown that they affect "'vital political choices.'" *Trotter*, 2022 WL 951377, at *3 (quoting *Fenster*, 617 F.2d at 744). Indeed, Plaintiffs' argument could be made about nearly any FOIA lawsuit involving Defendants, but, while theoretically "the release of any government document benefits the public by increasing its knowledge of its government," "Congress did not have this broadly defined benefit in mind when it . . . authorize[d] attorneys' fees" under FOIA. *Cotton*, 63 F.3d at 1120. Rather, here the benefit

derived from Plaintiffs' FOIA request is inherently specific to Plaintiff Rodriguez-Guerra himself and his habeas petition and to Plaintiffs' counsel as they seek to receive fees.

At bottom and without question, Plaintiffs have submitted a FOIA request that is of interest only to themselves and of no demonstrated interest to the public at large. "Where, as here, there was no public benefit to the litigation, an award of attorneys' fees and costs is unwarranted." *Chesapeake Bay Found.*, 108 F.3d at 378.

**B.    The Commercial Benefit and the Nature of Plaintiffs' Interest Weigh in Favor of Denying a Fee Award.**

The second factor—the request's commercial benefit to the plaintiff—and the third factor—the plaintiff's interest in the records—often have been combined "into a single factor assessing whether a plaintiff 'has sufficient private incentive to seek disclosure' of the documents without expecting to be compensated for it." *McKinley*, 739 F.3d at 711 (internal quotation marks omitted; quoting *Davy*, 550 F.3d at 1160). "When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is usually inappropriate." *Cotton*, 63 F.3d at 1120; *see also Fenster*, 617 F.2d at 744 ("[T]he private self-interest motive of, and . . . pecuniary benefit to, the complainant (is) sufficient to insure the vindication of the rights given in the FOIA." (quoting S. Rep. No. 854, 93d Cong., 2d Sess. 19 (1974))).

Here, Plaintiffs' arguments as to the second and third factors parrot one another. Plaintiffs argue that they submitted the request to ferret out and make public worthwhile and previously unknown government information. Pl. Mot. at 8. At most, this "only marginally" helps Plaintiffs demonstrate entitlement. *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, Civ. A. No. 17-0160 (TNM), 2019 WL 1491982, at *4 (D.D.C. Apr. 4, 2019), *aff'd*, No. 19-5165, 2019 WL 4565818 (D.C. Cir. Sept. 6, 2019); *see also McKinley*, 739 F.3d at 712 (second and third factors did "little to advance" and did not "strongly support" but did not "counsel against" entitlement to fees).

Balanced against that minimal benefit is Plaintiffs' strong individual interest in pursuing this litigation to admittedly support a habeas petition. Plaintiffs plainly have sufficient incentive to pursue this FOIA request without the inducement of fees. "Where a plaintiff has a commercial benefit or a personal interest in pursuing litigation, 'award of fees is generally inappropriate' because there is already sufficient motivation for the claimant to bring suit without the promise of attorneys' fees." *Dorsen v. SEC*, 15 F. Supp. 3d 112, 122–23 (D.D.C. 2014) (citing *Fenster*, 617 F.2d at 743); *see Poett v. Dep't of Just.*, Civ. A. No. 08-0622 (CKK), 2010 WL 3892249, at *6 (D.D.C. Sept. 30, 2010) (concluding that, despite lack of commercial benefit, fee request should be denied, as "lack of a public benefit inherently illuminates the fact that Plaintiff's relationship to the disclosed document is of a private and personal nature"); *Maydak v. Dep't of Just.,* 579 F. Supp. 2d 105, 109 (D.D.C. 2008) (refusing to award litigation costs where plaintiff requested records pertaining to himself and matters affecting his detention); *Nw. Univ. v. Dep't of Agric.,* 403 F. Supp. 2d 83, 88 & n.7 (D.D.C. 2005) (denying fees where plaintiff sought records of investigations of itself, apparently to challenge agency's findings).

To disqualify a fee applicant under the second and third factors, the D.C. Circuit has held that "a motive need not be strictly commercial; any private interest will do." *Tax Analysts v. Dep't of Just.*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). Because Plaintiffs have admitted they sought this information for a private purpose, the second and third factors in the entitlement analysis weigh against Plaintiffs and further demonstrate that an award of fees would be inappropriate.

### C.    Defendants' Conduct Had a Reasonable Basis in Law, and a Mere Brief Administrative Delay in Processing Does Not Warrant an award of Fees

The "purpose of the fourth factor of the attorney's fees inquiry is to determine not whether the agency acted correctly, but rather whether the agency has shown that it had any colorable or reasonable basis for not disclosing the relevant material." *Morley*, 894 F.3d at 394 (internal

quotation marks omitted). Relevant to this inquiry is "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (internal quotation marks omitted).

Here, Defendants had a reasonable basis for not releasing the records at issue sooner—their backlog of other FOIA requests. Pineiro Decl; *see also Simon v. United States*, 587 F. Supp. 1029, 1032 (D.D.C. 1984) ("[W]hile an agency's failure to meet deadlines is not to be condoned, it does not warrant an award of fees in and of itself."). Nor have Plaintiffs offered any evidence that Defendants acted in bad faith, or with recalcitrance or obduracy. Again, the timeline favors the Defendants. Defendants acknowledged receipt of the requests almost immediately and informed Plaintiffs there was a backlog and that there would be a delay. Defendants nonetheless submitted the request for a search for potentially responsive records; and expeditiously processed the records in accordance with their procedures. Pineiro Decl. ¶¶ 9-27.

Moreover, Plaintiffs did not successfully dispute the adequacy of Defendants' searches or the appropriateness of the withholdings; indeed, Plaintiffs lost their claim that the internal codes were improperly withheld pursuant to Exemption 7(E), upon which Defendants prevailed at summary judgment. If a plaintiff "does not contest" an agency's determinations, he has agreed that "there was no improper withholding, [and] the Court need not decide whether the agency had a 'colorable or reasonable basis.'" *Gov't Accountability Project v. Dep't of Homeland Sec.*, Civ. A. No. 17-2518 (CRC), 2020 WL 4931932, at *2 (D.D.C. June 2, 2020) (quoting *Davy*, 550 F.3d at 1163).

Under these circumstances—mere brief delay due to the sizable backlog of pending FOIA requests ahead of Plaintiffs, and no successfully challenged searches for records or withholdings—Plaintiffs fail to demonstrate that Defendants' conduct was unreasonable. "[T]his is not a case in

which the government stubbornly refused to accede to a valid claim," *Peter S. Herrick's Customs & Int'l Trade Newsl. v. Customs & Border Prot.*, Civ. A. No. 04-0377 (JDB), 2006 WL 3060012, at *10 (D.D.C. Oct. 26, 2006), but rather, one where "backlogs of FOIA requests," *Codrea*, 272 F. Supp. 3d at 53, resulted in "an unavoidable delay" despite Defendants' good faith and "due diligence in the administrative processes," *Church of Scientology*, 653 F.2d at 588; *see also Edelman v. SEC*, 356 F. Supp. 3d 97, 108–09 (D.D.C. 2019) ("although the [agency] exceeded the statutory time period, there is no evidence that it did so in an extreme or egregious way and [ ] there is nothing about the [agency's] delay suggesting that it conducted its searches in anything other than good faith" (cleaned up)); *United Am. Fin., Inc. v. Potter*, 770 F. Supp. 2d 252, 258 (D.D.C. 2011) ("It is true that this litigation stretched on for a period of almost four years, but that is not evidence of obdurate behavior." (internal quotation marks omitted)); *Frye v. EPA*, Civ. A. No. 90-3041, 1992 WL 237370, at *3, 6 (D.D.C. Aug. 31, 1992) (agency conduct reasonable despite "delay of over two years" before suit, on basis that, because "a group of nondisclosed documents was released administratively to the plaintiff prior to briefing on the merits, there was no cause to scrutinize the legal basis under which the documents had been withheld . . . . [P]laintiff has pointed to nothing in the record that would support a finding of affirmative bad faith on [agency's] part"); *cf. Morley*, 894 F.3d at 393 (although agency "failed to properly respond to the request within 20 days, as required by statute," that "is true of a vast number of FOIA requests," and "the statute does not suggest that an award of attorney's fees should be automatic in those situations").

Again, regarding the ePOCR, Defendants agreed to produce that six-page worksheet and all of the underlying information comprising that worksheet had been provided to Plaintiffs well before summary judgment was even filed.

In sum, all four factors weigh heavily against any entitlement to fees or, at minimum, do not tip in Plaintiffs' favor. Under these circumstances, Plaintiffs fail to show entitlement to attorney's fees. Accordingly, this Court would comfortably act within its discretion to deny Plaintiffs' motion on entitlement grounds. *Morley*, 894 F.3d at 396 (no entitlement to fees where "factor four heavily favor[ed] the agency and the other three factors only slightly favor[ed]" plaintiff); *McKinley*, 739 F.3d at 713 ("With the first and fourth factors strongly weighing against fees, and the remaining factors doing little to advance Plaintiff's position, we could hardly find an abuse of discretion in the court's ultimate determination that . . . Plaintiff is not entitled to receive an award of fees and costs" (cleaned up)); *Assassination Archives*, 2019 WL 1491982, at *7 (plaintiff not entitled to fees where "[t]he first three factors may weigh in [its] favor, but only slightly," as "the fourth factor weigh[ed] strongly in the [agency's] favor"). Here, none of the four factors favor Plaintiffs; indeed, they favor Defendants.

## III.    **Plaintiffs Seek an Unreasonable Amount of Fees.**

Finally, Plaintiffs' requested fees are wholly unreasonable, and this court should deny Plaintiffs' motion on this basis alone.

This is a case involving 49 pages of records produced by the Defendants. Plaintiffs rushed this matter into suit, filing a complaint just over two months after the request was submitted and after having been informed that there would be a delay due to ICE's FOIA backlog. The records were produced to Plaintiffs within six months of the request. After receipt of the records, Plaintiffs filed an unnecessary motion for summary judgment and lost the only issue decided by the Court at summary judgment, the application of Exemption 7(E). No court orders were issued against the Defendants during this litigation, contrary to Plaintiffs' claim. The production of the six-page ePOCR, which the Defendants agreed to produce, was a mere red herring in this litigation. All of

the information recited in that checklist had been provided to the Plaintiffs prior to the Defendants voluntarily agreeing to produce it.

Despite the foregoing, Plaintiffs demand an astronomical $60,762.64 from the Defendants. The Court should not countenance this strategy.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  A court then "should exclude from this initial fee calculation hours that were not reasonably expended."  *Id.* at 434 (cleaned up).  After all, "billing judgment is an important component in fee setting. . . .  Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.* (cleaned up).  A plaintiff bears the "burden of establishing the reasonableness of [the] fee request," and his "[s]upporting documentation 'must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended.'" *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989)); *Covington*, 57 F.3d at 1107 ("a fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates").  This burden is rightly imposed on a plaintiff, as he is the one suitably positioned to justify the propriety of the time spent on discrete tasks.  A plaintiff that fails to provide requisite details "fails to appreciate [ ] that the public interest in disclosure is arguably at its zenith when the fee demand is made against the public fisc," and "there is something untoward about Plaintiff asking to conceal . . . the work done from public view." *King & Spalding, LLP v. Dep't of Health & Hum. Servs.*, Civ. A. No. 16-1616 (APM), 2020 U.S. Dist. LEXIS 60949, at *5–6 (D.D.C. Apr. 7, 2020); *accord id.* at *8 (rejecting plaintiff's contention that fee demand

records could be withheld from public view, because "the reasonableness of the time they expended on this matter" "go[es] to the very heart of what is before the court"). Courts thus demand of fee applicants "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 66 F. Supp. 3d 134, 148 (D.D.C. 2014) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

Here, Plaintiffs seek a grossly excessive fee relative to the minimal amount of work that has been done. Astoundingly, Plaintiffs seek $60,762.64, for minimal work done on a case where Plaintiffs received the records on February 28, 2024, almost three months before summary judgment was filed. This Court thus would act comfortably within its discretion to deny the fee demand altogether.

Should the Court be inclined to award any amount, it should award no more than a minimal amount for production of the six-page ePOCR. It cannot be determined from Plaintiffs' filing how much time was expended on seeking the ePOCR. Nonetheless, Defendants informed Plaintiffs that they had received the underlying documents that were used to complete the checklist, even directing Plaintiffs the to the Bates stamped documents that had been produced. Ex. A.

In this case, the Court's discretion would be better applied in an award of no fees. An excessive "fee request is not victimless: the money has to come from someone." *Baylor*, 857 F.3d at 960 (Henderson, J., concurring). This Court thus should exercise its discretion to ensure that Plaintiff and its counsel do not reap a "windfall." *Id.*

Indeed, it is well within this Court's discretion to deny outright an "'outrageously unreasonable'" fee demand, "lest claimants feel free to make 'unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what

they should have asked for in the first place.'" *Env't Def. Fund*, 1 F.3d at 1258 (citation omitted); *see also Baylor*, 857 F.3d at 960 (Henderson, J., concurring) (discussing possibility of no fee award as a consequence of an unreasonable fee demand); *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 736 (D.C. Cir. 2018) (observing that "a court may punish an intolerably excessive fee request by denying any award at all" (quoting *Baylor*, 857 F.3d at 957 (Henderson, J., concurring))).  If overbilling is less egregious but still unreasonable, the Court "may impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request." *Env't Def. Fund*, 1 F.3d at 1258; *Baylor*, 735 F. App'x at 736 (district court acted "well within its discretion to find that Baylor pursued an unreasonable strategy seeking exorbitant fees and that a reduction was warranted").

This Court should decline to award fees to Plaintiffs even if the Court finds that Plaintiffs are eligible for and entitled to fees.  Plaintiffs did not prevail on the only issue decided by summary judgment.  Further, a very minimal amount of work can be related to the production of the ePOCR, and that information was totally superfluous. Combined with the limited public benefit, if any, of the disclosure and Plaintiffs' motivation to aid themselves, this Court should exercise its discretion to decline to award fees.

Further, as with everything Plaintiffs have done in this case, this fee application was rushed and only submitted to pad the exorbitant request for fees.  Plaintiffs submitted a request for fees on April 4, 2025, then submitted the instant motion for fees on April 14, 2025, asking for a much larger amount.

Finally, should the Court award any fees, it should eliminate or significantly deduct the fees counsel has spent briefing the fee petition and any reply.  Although "hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive." *Louise*

*Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2023 WL 3478479, at *7 (D.D.C. May 16, 2023) (quoting *Urb. Air*, 442 F. Supp. 3d at 326).

Plaintiffs' counsel seeks a significant windfall through preparation of the fee petition. *See Louise Trauma*, 2023 WL 3478479, at *7 (explaining that a court has a duty to "scrutinize fees-on-fees to ensure that the total is reasonable and does not represent a windfall for the attorneys," and that plaintiff's fees on fees request of nearly 30% of the claimed total cost was unsupportable windfall (quoting *Urb. Air*, 442 F. Supp. 3d at 327)). "[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail" on any aspect of Plaintiff's fee request. *Immigr. & Nat. Serv.*, 496 U.S. at 163 n.10; *see Prunty v. Vivendi*, 195 F. Supp. 3d 107, 117 (D.D.C. 2016) ("the court reduces the fees-on-fees award to reflect Defendants' degree of success on their fee petition"); *Sierra Club v. Jackson*, 926 F. Supp. 2d 341, 350 (D.D.C. 2013) ("A party seeking fees for fees should not receive fees for the time spent defending aspects of the fee application that were unsuccessful" (cleaned up)). As Plaintiffs' fee petition is deficient in myriad aspects, the Court should eliminate the entirety of the fees on fees that Plaintiffs seek ($12,362.40, plus any amount for Plaintiff's reply). *See* Pl. Mot. at 10.

At minimum, the Court should significantly reduce Plaintiffs' request for reimbursement of fees on fees if any award is made. *See, e.g.*, *Urb. Air*, 442 F. Supp. 3d at 327 (awarding less than 30% of requested fees-on-fees, where request constituted nearly 30% of claimed total litigation costs); *Baylor*, 857 F.3d at 959–60 (Henderson, J., concurring) (a court should exercise its discretion to ensure that the fee request does not become "the tail . . . wagging the dog," and "[s]teep overbilling ought to come at a steep price" (cleaned up)); *Trichilo v. Sec'y of Health & Hum. Servs.*, 823 F.2d 702, 708 (2d Cir. 1987) ("If counsel makes inflated or outrageous fee demands, the court could readily deny compensation for time spent in pressing them, since that

time would not have been reasonably spent." (internal quotation marks omitted)); *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998) (district court acts well "within the district court's discretion" to "award a lesser figure" than the disproportionate and inflated amount of fees-on-fees that was demanded); *Jud. Watch, Inc. v. Dep't of Just.*, 878 F. Supp. 2d 225, 241 (D.D.C. 2012) (after finding that plaintiff was entitled to only 5.3% of fees sought for litigating the merits, awarding plaintiff the same percentage of the "fees on fees" plaintiff had sought).

Here, Plaintiffs have not been at all successful. They were provided with the documents long before summary judgment was filed. They lost the only issue decided on summary judgment. The documents related to the ePOCR had long been in Plaintiffs' possession prior to summary judgment being filed. The Court should thus, at minimum, reduce Plaintiff's "fees on fees" to align with the same proportion that Plaintiffs' counsel ultimately dedicated to the merits of the request.

## CONCLUSION

Based on the foregoing, this Court should deny Plaintiffs' motion for attorney's fees outright or, at most, award a substantially reduced amount.

Dated: June 26, 2025
      Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By: _____*/s/ Thomas W. Duffey*_____
    THOMAS W. DUFFEY
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2510

    *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAPITAL AREA IMMIGRANTS' RIGHTS
COALITION, et al.,

     Plaintiffs,

     v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,

     Defendants.

Civil Action No. 23-3344 (CJN)

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiffs' motion for attorney's fees and costs, Defendants'

opposition, and the entire record, it is hereby

ORDERED that Plaintiffs' motion is DENIED.

This is a final appealable Order.

SO ORDERED, this _____ day of _____, 2025.

_____
CARL J. NICHOLS
United States District Judge