IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 1:23-CV-03344-CJN

CAPITAL AREA IMMIGRANTS' RIGHTS COALITION, et. al,

*Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et. al,

*Defendants*.

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR ATTORNEY'S FEES AND COSTS**

The parties all recognize that "Congress did not enact the fee-shifting provision of FOIA to punish agencies for their slowness in processing FOIA requests, but to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure." *Terris, Pravlik & Millian, LLP v. Centers for Medicare & Medicaid Services*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011). The parties diverge in their categorization of Plaintiffs' request for attorney's fees: Defendants apparently believe the request to be an attempt to punish them for their slowness; Plaintiffs, on the other hand, seek the reward that is due to them under the FOIA statute for overcoming Defendants' intransigence and substantially prevailing in bringing about disclosure of the records they requested.

In their Opposition (ECF No. 29) to Plaintiffs' motion for attorney's fees (ECF No. 26), Defendants essentially repeat the same arguments that they have relied on throughout this litigation: that the agency was going to get around to disclosing the responsive records eventually

1

and that this litigation was therefore premature and unnecessary. These arguments ignore the reality of what happened in this case: through litigation, and only through litigation, Plaintiffs obtained more records from Defendants – and obtained them more quickly – than they would have otherwise. Plaintiffs have thus "substantially prevailed" in this case by catalyzing "a voluntary or unilateral change in position by the agency" in relation to Plaintiffs' "not insubstantial" claim. 5 U.S.C. § 552(a)(4)(E)(ii). Plaintiffs are therefore eligible for attorney's fees, despite Defendants' flawed arguments to the contrary.

Plaintiffs are also entitled to attorney's fees under the D.C. Circuit's four-factor test because, contrary to Defendants' claim that none of the factors favor Plaintiffs, all of the factors either favor Plaintiffs or are neutral at worst. Finally, Plaintiffs' fee request is reasonable and appropriate when considered in the context of this case, which was unnecessarily prolonged by Defendants' indefensible intransigence.

## ARGUMENT

**I.     Plaintiffs Are Entitled to Fees Because They Substantially Prevailed By Catalyzing Voluntary Changes In The Agency's Position, Resulting In The Release Of More Records, More Quickly**

In Defendants' view, Plaintiffs did not "substantially prevail" and are therefore not entitled to fees because the Court granted Defendants' Cross-Motion for Summary Judgment (on the issue of exemptions only), denied Plaintiffs' Motion for Summary Judgment, and technically did not order Defendants to produce the ePOCR checklist because Defendants had already agreed to produce it.[1] ECF No. 29 at 11-17. Defendants' arguments ignore or minimize the obvious ways in

---

[1] The Court did order Defendants to confirm in writing that they had produced an updated version of the ePOCR checklist to Plaintiffs. *See* ECF No. 24 (Minute Order). Plaintiffs maintain that this order is sufficient to establish that Plaintiffs "substantially prevailed" in this case under 5 U.S.C. § 552(a)(4)(E)(ii)(I), but the Court need not reach this issue because it can – and should – find that

which Plaintiffs' litigation catalyzed multiple changes in Defendants' position regarding Plaintiffs' FOIA request, resulting in Plaintiffs obtaining more records, more quickly, than they would have without litigation. Plaintiffs have met their burden to show "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 96 (D.C. Cir. 2020). Indeed, with the sole exception of the exemptions at issue in the Court's Order on the motions for summary judgment, Plaintiffs ultimately obtained all of the records they initially sought through their FOIA request. *Mobley v. Dep't of Homeland Sec.*, 908 F. Supp. 2d 42, 47 (D.D.C. 2012) ("[T]he D.C. Circuit has interpreted the term 'substantially prevailed' rather narrowly to require that a FOIA plaintiff relying on the catalyst theory must receive records responsive to its request in order for that plaintiff to have 'substantially prevailed.'" (citing *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir. 2011))).

### A. Defendants Failed To Reasonably Respond to Plaintiffs' FOIA Request And Litigation Was Therefore Necessary To Catalyze The Prompt Release Of Responsive Records

Defendants claim that, although the agency only initially disclosed responsive records to Plaintiffs after a lawsuit was filed, this sequence of events is insufficient on its own to establish that the litigation "substantially caused" Defendants to release records under the catalyst theory. ECF No. 29 at 13. This may be true as a general proposition and certainly applies in cases where the agency has acted with reasonable diligence. *Grand Canyon*, 947 F.3d at 97 ("[T]he mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."). But here, the situation was not one where the agency had diligently searched for and located a large volume of records and was in the process of reviewing them in anticipation of

---

Plaintiffs substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii)(II) by catalyzing the agency's voluntary or unilateral change in position.

3

promptly releasing them when some impatient requestors decided to sue. *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 5 (D.D.C. 2011) (finding plaintiff did not substantially prevail when "delay in the [defendant's] release was not due to intransigence, but rather was the result of a diligent ongoing process that began before the initiation of the instant lawsuit").

Rather, Defendants' pre-litigation actions in this case demonstrate negligence at best, notwithstanding significant FOIA backlogs. Defendants have admitted that ICE ERO failed to even begin searching for records responsive to Plaintiffs' request until after Plaintiffs filed their complaint, nearly four months after submitting their FOIA request. ECF No. 15-4 (Initial Pineiro Decl.) ¶ 11 ("Shortly after the filing of the lawsuit, the ICE FOIA Office again tasked ERO with conducting a search because ERO did not perform the initial tasking.").[2] Defendants do not explain why, when Plaintiffs inquired as to the status of their FOIA request in mid-October 2023 (after the 30-day statutory response deadline had already passed), the ICE FOIA office did not realize that ICE ERO had still not searched for responsive records. This begs the question of when, in the absence of Plaintiff's lawsuit, the ICE FOIA office would have realized ICE ERO's failure to conduct a search and re-tasked them with the search; Defendants have provided no answer. Defendants do claim, without evidence, that "[b]ased upon our backlog and processing time, this production would have been made around [February 28, 2024] without the initiation of this lawsuit." ECF No. 29-1 (Pineiro Decl.) ¶ 22. But ICE's average processing time in Fiscal Year 2023 was 227 days for "complex" requests (as ICE deemed Plaintiffs' request here), meaning that

---

[2] In his most recent declaration, ECF No. 29-1, ICE FOIA Director Pineiro describes this series of events somewhat differently: "Shortly after the filing of the lawsuit, the ICE FOIA Office again tasked ERO with conducting a search because *ERO had not completed its search* after the initial tasking by the time of the lawsuit was filed." ECF No. 29-1 at ¶ 20 (emphasis added). To the extent that this new language is intended to imply that ERO had begun – but had not completed – searching for records before Plaintiffs filed their lawsuit, this Court should give this new language no weight and should rely instead on Director Pineiro's prior admission.

4

Plaintiffs would likely not have received any responsive documents from ICE until April 6, 2024, at the earliest. *See* Ex. A, FOIA.gov Report Results.

Given the uncontroverted evidence in this case, litigation was clearly necessary to secure responsive records in a reasonable timeframe, especially considering that the requested records were relevant to Plaintiff Rodriguez Guerra's habeas challenge to his unlawful detention by ICE during this same time. The evidence further shows that Plaintiffs' lawsuit substantially caused ICE to release responsive records by prompting them to actually search for and release responsive records. *See Elec. Priv. Info. Ctr. v. DHS*, 218 F. Supp. 3d 27, 41 (D.D.C. 2016) (finding that agency's "'sudden acceleration' in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA"); *Rosenfeld v. DOJ*, 904 F. Supp. 2d 988, 998 (N.D. Cal. 2012) (concluding that "both the timing and the circumstances of [the defendant's] release of documents in this case indicate that [the plaintiff's] FOIA lawsuit was, at root, 'what actually triggered the documents' release'" (citing *Church of Scientology v. USPS*, 700 F.2d 486, 492 (9th Cir. 1983))). Indeed, Congress contemplated an award of fees in just this situation when it amended the FOIA to add the catalyst theory provision in 2007. *See* OPEN Government Act of 2007, Pub. L. No. 110–175, 121 Stat. 2524. When the statute was passed, Senator Leahy, the co-sponsor of the law, clarified on the floor of the Senate that "[u]nder the bill, a FOIA requester can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government *releases those records* before the court orders them to do so." 153 Cong. Rec. S15,704 (daily ed. Dec. 14, 2007) (statement of Sen. Patrick Leahy) (emphasis added). On this basis alone, Plaintiffs have demonstrated that they substantially prevailed by catalyzing a prompt release of records from Defendants via litigation.

    **B. Plaintiffs' Litigation Catalyzed Several Voluntary Changes in Position by Defendants Which Led To Additional Disclosures**

In addition to catalyzing Defendants' initial disclosure of 48 pages responsive to Plaintiffs' FOIA request, Plaintiffs' litigation also catalyzed several voluntary changes in position by Defendants after that initial production.

First, in response to Defendants' initial production, Plaintiffs proactively raised the issue of potentially overbroad application of exemptions to some of the records as part of an attempt to narrow the issues in this lawsuit. *See* ECF 9-6 (Exhibit C to Plaintiff's Motion for Summary Judgment, Email from Plaintiffs' Counsel to Defendants' Counsel, dated March 19, 2024). Defendants did not respond to this good faith effort, leading Plaintiffs to address the issue of exemptions in their Motion for Summary Judgement, filed on May 20, 2024. *See* ECF No. 9. Following the filing of that motion, Defendants voluntarily decided to remove the redactions under Exemption 5 and on July 15, 2024, they released 49 pages to Plaintiffs, which included the same 48 pages that had been previously released (minus the aforementioned redactions), plus one additional page that had previously been marked as a duplicate. ECF No. 29-1 (Pineiro Decl.) ¶ 22. Defendants criticize Plaintiffs' Motion for Summary Judgment as "unnecessary" because, according to them, "Plaintiffs had already received the information they sought on February 28, 2024, almost three months before the motion was filed." ECF No. 29 at 5. Defendants refuse to acknowledge that Plaintiffs received additional records/information following the filing of the Motion for Summary Judgment because to do so would be to admit that Plaintiffs have also substantially prevailed on the issue of Exemption 5 reductions by causing a voluntary change in the agency's position. *See, e.g.*, *Our Child.'s Earth Found. v. Nat'l Marine Fisheries Serv.*, No. 14-01130, 2017 WL 783490, at *6 (N.D. Cal. Mar. 1, 2017) (finding plaintiff prevailed in part because agency "took a closer look at its searches and withholdings" and produced additional documents).

Second, on the much discussed ePOCR system, Defendants emphasize that the parties ultimately agreed that the ePOCR system is a checklist, but they ignore how they had refused to release a copy of that checklist to Plaintiffs until the Court effectively induced them to do so at the summary judgment hearing. ECF 29 at 6. Implicitly recognizing that Plaintiffs' litigation did catalyze the release of additional ePOCR records, Defendants nevertheless repeat the same argument in their Opposition that they were forced to abandon at that hearing: that the ePOCR checklist was simply redundant to the records that they had already provided to Plaintiffs. ECF 29 at 5-6, 12-13. Yet again, Defendants refuse to acknowledge that Plaintiffs received additional records following the filing of the Motion for Summary Judgment and summary judgment hearing because to do so would be to admit that Plaintiffs have also substantially prevailed on this by causing a voluntary change in the agency's position.

Defendants also argue that "the production of the six-page ePOCR checklist is the definition of an insubstantial claim under 5 U.S.C. § 552(a)(4)(E)(ii)(II)." ECF No. 29 at 12. Defendants appear to misapprehend the nature of the "not insubstantial" claim analysis. The analysis turns not on the number of pages released in response to litigation, but rather on the completeness of the relief that Plaintiffs obtained in relation to the claims brought in their Complaint. *People for the Ethical Treatment of Animals v. NIH*, 130 F. Supp. 3d 156, 163 (D.D.C. 2015) ("While the Court agrees that the sum total of plaintiff's victory . . . was small, the test is not merely the size of the relief obtained but whether plaintiff obtained some judicial relief on the merits that resulted in a 'change in legal relationship' between the parties."); *Mobley*, 908 F. Supp. 2d at 48 ("[I]f a plaintiff obtains only one small piece of the relief it seeks in its complaint, . . . calling such prevalence 'substantial' is clearly incorrect."). Here, Plaintiffs brought claims that Defendants had (1) failed to timely respond to Plaintiffs' request, (2) failed to conduct an adequate

7

search, and (3) improperly withheld responsive records. These are Plaintiffs' "not insubstantial" claims (note that there is no claim specific to ePOCR), and throughout the course of this litigation, as outlined above, Plaintiffs have substantially prevailed on each of these claims by catalyzing voluntary agency action that would most likely not occurred without this litigation. Plaintiffs are therefore entitled to attorney's fees under 5 U.S.C. § 552(a)(4)(E)(i)-(ii).

> II. **Plaintiffs Are Entitled To Fees Because All Four Factors Either Favor Them Or Are Neutral At Worst**

Plaintiffs respectfully repeat here their request to the Court to adhere to the plain text of the statute and hold that, because Plaintiffs have substantially prevailed in this litigation, they are also necessarily entitled to attorney's fees under the plain text of the FOIA statute. *See Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J. concurring) (stating that it is time to "ditch the four-factor standard"). Nevertheless, even under the D.C. Circuit's four-factor test, Plaintiffs have prevailed on all four factors and are therefore entitled to fees, notwithstanding Defendants' deeply flawed arguments to the contrary.

> A. **The Public Has Benefitted From The Records Revealed In This Case**

Defendants argue that no information requested or disclosed in this litigation is "of any public benefit whatsoever," and accuse Plaintiffs of "sophistry" in arguing that a FOIA lawsuit against ICE by a nonprofit organization on behalf of an indigent client has at least some inherent public benefit. ECF No. 29 at 19; *cf. Moffat v. DOJ*, No. 09-12067, 2012 WL 113367, at *2 (D. Mass. Jan. 12, 2012) ("'[A] successful FOIA plaintiff always acts in some degree for the benefit of the public, both by bringing the government into compliance with the language of the Act and by securing for society the benefits assumed to flow from the disclosure of government information.'" (quoting *Crooker v. U.S. Parole Comm'n*, 776 F.2d 366, 367 (1st Cir. 1985)). Although part of the animating impetus behind Plaintiffs' FOIA request and litigation was Plaintiff

8

Rodriguez Guerra's desire to free himself from ICE custody via a habeas petition, this action did not occur in a vacuum. In fact, this litigation was part of a broader effort by Plaintiff CAIR Coalition to raise awareness about ICE's practice of continuing to detain certain noncitizens for months after they have won protection from deportation without properly reviewing whether continued detention is necessary or appropriate. As noted in Plaintiffs' Motion for Summary Judgment, Plaintiff Rodriguez Guerra was part of a group of people detained by ICE in Virginia who filed habeas petitions together, alleging that ICE was unlawfully detaining them for months after they had won protection from deportation. ECF No. 9-6 at 6 ("ICE appears to have a policy of arbitrarily detaining noncitizens such as Mr. Rodriguez Guerra after they win protection from removal before an immigration court, in violation of its own policy and the Constitution.") (citing ACLU of Virginia Press Release, "ICE is unlawfully detaining non-citizens who already won their immigration cases," (Aug. 3, 2023), [https://www.acluva.org/en/press-releases/ice-unlawfully-detaining-non-citizens-who-already-won-their-immigration-cases](https://www.acluva.org/en/press-releases/ice-unlawfully-detaining-non-citizens-who-already-won-their-immigration-cases)). That group habeas action was eventually converted into a class action lawsuit, with Plaintiff Rodriguez Guerra as lead plaintiff, which resulted in a settlement between the plaintiffs and ICE (among other defendants). *See* Settlement Agreement, *Rodriguez Guerra, et al. v. Perry, et al.,* No. 1:23-cv-1151 (E.D. Va. Jul. 29, 2024).

The records released in this case helped inform the legal strategy and ultimately contributed to the positive outcome in that case, which changed ICE's practices and also informed the public of these practices. Specifically, the records disclosed in this litigation confirmed that ICE was needlessly detaining Plaintiff Rodriguez Guerra, even after he won protection from deportation to his native country, while ICE made half-hearted "attempts" to remove Plaintiff Rodriguez Guerra to a random selection of third countries to which Plaintiff Rodriguez Guerra had no ties, despite

9

knowing full well that these attempts were highly likely to fail (as they ultimately did). ECF No. 9-6 at 6-8. These same records confirmed significant errors in ICE's post-order custody review (POCR) process Plaintiff Rodriguez Guerra's case, including ICE's failure to review his case at all for over seven months. *Id*. at 8. Revelation of ICE's errors in this case likely played a part, however small, in convincing the agency to enter into a settlement agreement with Plaintiff CAIR Coalition to avoid further mistakes being made (and thereby avoiding future litigation on this issue). The benefits of disclosing these records therefore extend beyond Plaintiff Rodriguez Guerra's individual concerns and helped inform the public debate over ICE's adherence to the law in its treatment of noncitizens in this country – an issue that has only increased in salience since the disclosure of these records in 2024.

Moreover, courts have recognized in other contexts the public benefit of releasing records relating to one individual's treatment by a government agency as a method of holding agencies accountable to their statutory and Constitutional obligations and uncovering those agencies' mistakes. *See, e.g.*, *Yonemoto v. VA*, 549 F. App'x 627, 629 (9th Cir. 2013) (holding that district court correctly found that suit "resulted in a public benefit by shedding light on the VA's treatment of its personnel, forcing the VA to comply with [FOIA], and uncovering other emails bearing on problems with the agency's operations"); *Baker v. DHS*, No. 11-588, 2012 WL 5876241, at *6 (M.D. Pa. Nov. 20, 2012) (finding public benefit in information related to plaintiff's Merit Systems Protection Board case alleging discrimination by Secret Service as it "is likely to assist military personnel working within the government"); *McCoy v. BOP*, No. 03-383, 2005 WL 1972600, at *1 (E.D. Ky. Aug. 16, 2005) (concluding that release of records concerning death of inmate in BOP's custody served public's interest "in ensuring that the BOP fulfills its statutory duty to safeguard the well-being of individuals in its custody"). Such is the case here, too.

Thus, beyond the inherent public benefit present in holding an agency to account for its obligations under the FOIA, there was also specific public benefit related to this litigation in raising public awareness about ICE's practices and treatment of certain detained noncitizens. This factor favors Plaintiffs.

### B. Plaintiffs Had No Commercial Interest In The Requested Requests And No Other Reasonably Available Means To Obtain Them

On the second and third factors, Defendants essentially repeat their argument that this FOIA litigation was merely about Plaintiff Rodriguez Guerra's private interest in seeking release from ICE custody and thus is insufficient to entitle Plaintiffs to fees. ECF No. 29 at 20-21. In doing However, as made clear to Defendants throughout this litigation, and as detailed above, this FOIA lawsuit did not occur in a vacuum, but was part of a broader effort by CAIR Coalition (now Amica Center for Immigrant Rights) to raise awareness and gain understanding for the public's benefit about ICE's policies and practices regarding certain detained noncitizens like Plaintiff Rodriguez Guerra. As a 501(c)(3) non-profit organization, CAIR Coalition had no commercial interest in this litigation, nor did Plaintiff Rodriguez Guerra. As a non-profit organization, Plaintiff CAIR Co. is "among those whom Congress intended to be favorably treated under FOIA's fee provision." *Davy v. CIA*, 550 F.3d 115, 1161-62. *See also Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F.Supp.2d 61, 69 (D.D.C. 2013) ("These [second and third] factors also favor non-profit organizations like [Plaintiff], which aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote.") (internal quotation marks omitted). And Plaintiff Rodriguez Guerra's personal interest in the records does not preclude an award of fees, as his records request related both to his individual desire to be freed from ICE custody and to the larger purpose of exposing ICE's errors in his case as means of increasing public awareness about ICE's treatment of certain detained

11

noncitizens. *See, e.g.*, *Hernandez v. U.S. Customs & Border Prot.*, No. 10-4602, 2012 WL 398328, at *11 (E.D. La. Feb. 7, 2012) (awarding fees despite plaintiff's personal interest in documents dealing with deportation case as interest "also implicates the strong public interest in preserving the administration of justice in our nation's immigration courts"); *Moffat*, 2012 WL 113367, at *2 (finding prisoner not precluded from award of fees despite "intense personal interest in using the records sought to protest his innocence"); *McCoy*, 2005 WL 1972600, at *2 (finding fee entitlement, even though plaintiff's FOIA request "served her personal interest in obtaining . . . evidence" for use in related tort litigation); *Jarno v. DHS*, 365 F. Supp. 2d 733, 740 (E.D. Va. 2005) (concluding that plaintiff's interest in requested documents "support[ed] an award of attorney's fees," despite his motivation to seek disclosure to "facilitate the fair adjudication of his political asylum claim"). These two factors thus favor Plaintiffs.

### C. Defendants' Withholding of Records In This Case Was Neither Reasonable Nor Colorable Under Law

Defendants claim that they "had a reasonable basis for not releasing the records at issue sooner—their backlog of other FOIA requests." ECF No. 29 at 22. However, as outlined above in Section I.A *supra*, it was not the agency's FOIA backlog that unreasonably delayed its response to Plaintiffs' request—it was their failure to ensure that a search for responsive records had even been conducted during the several months that Plaintiffs waited before filing suit. *See Pinson v. Lappin*, 806 F. Supp. 2d 230, 236 (D.D.C. 2011) (agency behavior found unreasonable where "[o]nly after this litigation commenced did the [agency] fulfill its obligation under the FOIA" by releasing information to plaintiff); *Elec. Priv. Info. Ctr. v. DHS*, 811 F. Supp. 2d 216, 236 (D.D.C. 2011) (agency's "administrative delay and a generic claim of a FOIA backlog do not form a 'reasonable basis in law' for withholding"); *see also Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1390 (8th Cir. 1985) (government's reasons for delay — namely processing backlogs, confusion,

and administrative error — were not reasonable legal bases and, because "[t]he FOIA does not contain a statutory exception for administrative inefficiency," plaintiff was entitled to fees).

Defendants also claim that "Plaintiffs did not successfully dispute the adequacy of Defendants' searches or the appropriateness of the withholdings," and therefore "the Court need not decide whether the agency had a 'colorable or reasonable basis.'" ECF No. 29 at 22 (citing *Gov't Accountability Project v. Dep't of Homeland Sec.*, Civ. A. No. 17-2518 (CRC), 2020 WL 4931932, at *2 (D.D.C. June 2, 2020) (quotation omitted). Defendants willfully ignore the portions of Plaintiffs' Motion for Summary Judgment that did dispute the adequacy of their search and the propriety of their withholdings. As discussed in Section I.B *supra*, Plaintiffs' litigation catalyzed voluntary changes in position by Defendants on both the Exemption 5 withholdings and the withholding of the ePOCR, which meant that those issues were no longer live by the time the Court ruled on the Motion for Summary Judgment. Using such a voluntary change in position in an attempt to defeat Plaintiffs' fee request is just the sort of agency tactic that the catalyst theory and 2007 FOIA amendments were meant to address. *See Hernandez*, 2012 WL 398328, at *6 (explaining that Congress enacted the Open Government Act of 2007 to address how, under the prior rules, "the Government [could] ignore valid FOIA claims but prevent an award of attorney's fees by disclosing the documents at the last moment before the Plaintiff obtained a judgment"). The Court thus should examine the agency's justifications for not releasing any records to Plaintiffs before litigation commenced and should consider the justifications of the agency's withholdings in this matter, as demonstrated by both their briefing and by their voluntary conduct in this litigation. For the reasons outlined above, the Court should find that Defendants' arguments and behavior have been recalcitrant, obdurate, or otherwise unreasonable. This factor therefore favors Plaintiffs.

13

In sum, the four factors all favor Plaintiffs or are, at worst, neutral. The Could should therefore conclude that Plaintiffs are entitled to attorney's fees, in addition to being eligible for the same.

### III. **Plaintiffs' Fee Request Is Reasonable And Appropriate Given Defendants' Intransigence In This Case**

Defendants protest that Plaintiffs' requested fee amount is "astronomical" and "astounding[,]" without acknowledging their own role in provoking and unduly prolonging this litigation, causing Plaintiffs to spend more time on this case than would have been otherwise necessary. ECF No. 29 at 25, 26. First, Defendants might well have avoided this litigation entirely if they had ensured that a reasonable search was conducted in a timely manner and had provided Plaintiffs with a reasonable, estimated timeframe of when records would be disclosed. Second, Defendants might well have resolved this case shortly after the initial production of records – or at least eliminated the need for Plaintiffs to file such a comprehensive Motion for Summary Judgment and their own lengthy Cross-Motion for Summary Judgment, which necessitated a response from Plaintiffs – had they bothered to respond to Plaintiffs' good faith efforts to narrow the issues in this case. *See* ECF No. 9-6 (Email from Plaintiffs' Counsel to Defendants' Counsel, dated March 19, 2024, attempting to narrow issues in case). Defendant ultimately did narrow the issues in this case through its voluntary disclosure of additional documents *following* the filing of these motions, but they have provided no explanation as to why they did not take these actions *prior to* such motions were filed. Third, Defendants may have avoided Plaintiffs' "fees on fees" request had they agreed to or even made a reasonable counteroffer to Plaintiffs' initial fee request in the ten days that it was outstanding. *See* ECF No. 29 at 7 ("On April 4, 2025, counsel for Plaintiffs emailed the undersigned a request for attorney's fees in the total amount of $35,364.64.").

14

As it happened, Defendants litigated this case zealously at every turn, before ultimately relenting on issues like the Exemption 5 redactions and the ePOCR checklist. Plaintiffs similarly sought to vindicate their rights under FOIA with diligence and zeal, and their efforts were rewarded by catalyzing disclosure of more records in a shorter time frame than if they had not pursued litigation. Because of their success, Plaintiffs are eligible for and are entitled to attorney's fees in the full amount requested. Plaintiffs dedicated two attorneys with ten years of experience each to this case, which is reasonable considering the amount of briefing that was involved and the complexity and novelty of the issues, not to mention an in-person summary judgment hearing that resulted in Defendants' voluntary disclosure of additional records. This is hardly "minimal work." ECF No. 29 at 26.

Defendants' arguments that the Court should award no fees whatsoever as a matter of discretion ignore the reality of the parties' actions in the case and fly in the face of the very purpose of FOIA fee-shifting. "Congress did not enact the fee-shifting provision of FOIA to punish agencies for their slowness in processing FOIA requests, but *to reward plaintiffs whose filing of lawsuits alters the government's slowness and brings about disclosure*." *Terris, Pravlik & Millian, LLP*, 794 F. Supp. 2d at 38 (emphasis added). Defendants' alternative argument that the Court should award no more than a minimal amount for production of the six-page ePOCR records is similarly unmoored from reality or the statute's purpose. As discussed in detail above in Sections I.A-B *supra*, the disclosure of the ePOCR records was merely the last in a series of voluntary disclosures that Plaintiffs catalyzed via this litigation: first, the initial 48-page production following the filing of the lawsuit; second, the removal of certain exemptions and disclosure of one additional record; and third, the ePOCR records (which, again, are separate and distinct from the underlying information that Defendants had previously provided). Denying or severely limiting

fees to Plaintiffs on Defendants' theories would reward Defendants for the very kind of conduct that the FOIA statute was amended to prevent in 2007. *See Hernandez*, 2012 WL 398328, at *6 (explaining that Congress enacted the Open Government Act of 2007 to address how, under the prior rules, "the Government [could] ignore valid FOIA claims but prevent an award of attorney's fees by disclosing the documents at the last moment before the Plaintiff obtained a judgment").

At the very minimum, the Court should award Plaintiffs the amount of fees they initially requested and which Defendants unreasonably rejected – $35,364.64. This amount encapsulates the time spent by Attorney Daniel Melo in successfully overcoming Defendants' intransigence in this case, and such an award would minimally satisfy the purpose of fee-shifting under FOIA.

## **CONCLUSION**

Based on the foregoing, this Court should grant Plaintiffs' motion for attorney's fees.

Date: July 3, 2025

Respectfully submitted,

 */s/ F. Evan Benz*
F. Evan Benz
NC Bar # 49077
Capital Area Immigrants' Rights Coalition
d/b/a Amica Center for Immigrant Rights
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 869-3984
Fax: (202) 331-3341
evan@amicacenter.org
*Pro Bono Counsel for Plaintiffs*


 */s/ Daniel Melo*
Daniel Melo
NC Bar # 48654
Capital Area Immigrants' Rights Coalition
d/b/a Amica Center for Immigrant Rights
1025 Connecticut Ave NW Ste. 701

Washington, DC 20036
Tel: (202) 916-8180
Fax: (202) 331-3341
Daniel.Melo@amicacenter.org
*Pro Bono Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that on this date, I filed this PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS and any attachments using the CM/ECF system.

Dated: July 3, 2025                                          Respectfully submitted,

 */s/ F. Evan Benz*
F. Evan Benz
NC Bar # 49077
Capital Area Immigrants' Rights Coalition
d/b/a Amica Center for Immigrant Rights
1025 Connecticut Ave NW Ste. 701
Washington, DC 20036
Tel: (202) 869-3984
Fax: (202) 331-3341
evan@amicacenter.org
*Pro Bono Counsel for Plaintiffs*