**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAPITAL AREA IMMIGRANTS' RIGHTS
COALITION, *et al.*,

      *Plaintiffs*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      *Defendants*.

Civil Action No. 1:23-cv-03344 (CJN)

## **ORDER**

Plaintiffs move for attorney's fees in this FOIA case. ECF 26. For the reasons that follow, the Court grants in part and denies in part that motion.

On August 29, 2023, Plaintiffs Roberto Carlos Rodriguez Guerra and Capital Area Immigrants' Rights (CAIR) Coalition filed a FOIA request seeking records about Rodriguez Guerra's detention by Immigration and Customs Enforcement (ICE). ECF 1-1. On September 15, 2023, ICE acknowledged receipt of Plaintiffs' request but warned that "[d]ue to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request." ECF 1-2 at 2. That same day, ICE's FOIA Office tasked Enforcement and Removal Operations (ERO) with conducting the search. ECF 29-1 ¶ 10. On October 12, 2023, Plaintiffs inquired about the status of their request, and the next day, ICE responded that it was still pending. *Id.* ¶ 11.

On November 8, 2023, Plaintiffs sued ICE and the Department of Homeland Security for failing to timely process their FOIA request. ECF 1. "Shortly after the filing of the lawsuit, the ICE FOIA Office again tasked ERO with conducting a search because ERO did not perform a

search after the initial tasking," ECF 14-4 ¶ 11, despite the request having been "placed in the queue for processing" on September 15, 2023, ECF 29-1 ¶ 10. On February 28, 2024, ICE produced 48 pages of responsive records, with some partial redactions under FOIA Exemptions 5, 6, 7(C), and 7(E). *Id.* ¶ 22. On May 20, 2024, Plaintiffs moved for summary judgment, seeking "the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B); *see also* ECF 9. On July 15, 2024, ICE lifted its Exemption 5 withholdings, and it also produced another page that had previously been marked as a duplicate. ECF 29-1 ¶ 22. The next month, the government cross-moved for summary judgment. ECF 15.

In February 2025, the Court held oral argument on the motions for summary judgment. Min. Entry of Feb. 19, 2025. Among other issues, the Parties argued about the electronic Post Order Custody Review (ePOCR) checklist that ICE uses to ensure that it reviews certain documents when making detention decisions. ECF 14-4 ¶ 33. The government contended that it did not need to turn anything more over about the ePOCR checklist because it was merely an "electronic tool" and all the documents referenced on it had already been produced. ECF 29 at 5–6. At the hearing, however, it agreed "to produce the six-page ePOCR checklist to Plaintiffs." *Id.* at 6. Thereafter, the Court ordered the government to file a supplemental declaration that included "a statement as to whether it has produced to Plaintiffs an updated version of the ePOCR for Plaintiff Rodriguez Guerra, as it agreed to do during the oral argument on February 19, 2025." Min. Order of Feb. 28, 2025. ICE's FOIA Director confirmed that the agency released the ePOCR checklist to Plaintiffs on February 26, 2025. ECF 23-1 ¶ 19. On March 31, 2025, the Court denied summary judgment to Plaintiffs and granted it to the government. ECF 24. Plaintiffs now move for attorney's fees. ECF 26.

Under FOIA, courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "This language naturally divides the attorney-fee inquiry into two prongs, . . . fee eligibility and fee entitlement." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citation and internal quotation marks omitted). "A FOIA plaintiff is *eligible* for fees if it has substantially prevailed on the merits of its claim." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 470 F.3d 363, 368 (D.C. Cir. 2006). To have "substantially prevailed," a plaintiff must have obtained relief through (1) "a judicial order" or (2) "a voluntary or unilateral change in position by the agency, if the [plaintiff]'s claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Establishing "[e]ligibility for fees does not necessarily mean," however, "that a party is *entitled* to attorney fees under FOIA." *Jud. Watch*, 470 F.3d at 369. To determine whether a plaintiff "*should* receive fees," *Brayton*, 641 F.3d at 524, courts consider "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. CIA*, 719 F.3d 689, 690 (D.C. Cir. 2013).

Starting with eligibility, Plaintiffs put forth multiple theories of how they substantially prevailed in this suit. ECF 26-1 at 3–5; ECF 30 at 2–8. They contend that their suit catalyzed ICE to make the initial 48-page production because the agency did not actually start processing their request until they filed the complaint. They argue that their motion for summary judgment prompted the government to change its position on certain withholdings and produce an additional

page. And they contend that they convinced the Court to pressure ICE into turning over the ePOCR checklist.[1]  Only Plaintiffs' third theory has merit.

Plaintiffs' first theory—that ICE would not have produced responsive documents in a timely manner without the filing of this suit—lacks the requisite degree of causal connection.  A plaintiff can recover attorney's fees under FOIA where "he substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524–25.  But "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984).  "If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in his suit." *Cox v. U.S. Dep't of Just.*, 601 F.2d 1, 6 (D.C. Cir. 1979).

Plaintiffs have not met their burden to show that "it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 97 (D.C. Cir. 2020) (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).  ICE promptly confirmed receipt of Plaintiffs' FOIA request and cautioned from the onset that "some delay" might occur "[d]ue to the increasing number of FOIA

---

[1] Plaintiffs initially suggested that they were eligible for fees related to the ePOCR checklist because a court order required ICE to turn over that document. *See* ECF 26-1 at 3–4.  But after the government pointed out that "[t]he Court did not order the Defendants to produce anything" because ICE had "'agreed' to produce this checklist," ECF 29 at 12 (quoting Min. Order of Feb. 28, 2025), Plaintiffs clarified that the Court ordered the government to "confirm in writing that [ICE] had produced an updated version of the ePOCR checklist to Plaintiffs," ECF 30 at 2 n.1. Although Plaintiffs maintain that the minute order in question "is sufficient to establish that Plaintiffs 'substantially prevailed' in this case under 5 U.S.C. § 552(a)(4)(E)(ii)(I)," they argue that "the Court need not reach this issue because it can – and should – find that Plaintiffs substantially prevailed under 5 U.S.C. § 552(a)(4)(E)(ii)(II) by catalyzing the agency's voluntary or unilateral change in position." *Id.*

requests received by this office." ECF 1-2 at 2. Given that there was already a backlog of nearly 30,000 requests when Plaintiffs originally filed their FOIA request, ECF 29-1 ¶ 18(a), it is unsurprising that Plaintiffs' request would take some time to process—regardless of whether Plaintiffs filed a lawsuit. The record thus suggests that "unavoidable delay . . . was the actual reason for the agency's failure to respond to a request," which is not enough for Plaintiffs to demonstrate that they substantially prevailed.[2] *Cox*, 601 F.2d at 6; *see also Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when disclosure results not from the suit but from delayed administrative processing.").

Furthermore, Plaintiffs fail to show that filing the suit even meaningfully sped up the production of relevant documents. ICE's FOIA Director stated in a sworn declaration that even if they had never filed suit, Plaintiffs would have received the 48 pages that ICE did turn over at around the same time (February 2024). ECF 29-1 ¶ 22. Plaintiffs attempt to discredit this claim by pointing out that ICE's average processing time for a FOIA request designated as complex, like this one, was 227 days. ECF 30 at 4–5. But nothing in the record suggests that ICE's estimate is false, as it is hardly surprising that processing this request would go faster than other complex requests given that it only resulted in around 50 responsive pages. In addition, ICE produced the relevant documents on February 28, 2024, which was barely a month earlier than Plaintiffs' counterfactual estimate of April 6, 2024, for when they would have received the documents had

---

[2] Plaintiffs argue that the filing of their complaint was particularly important here because it is uncertain when "the ICE FOIA office would have [otherwise] realized ICE ERO's failure to conduct a search and re-tasked them with the search." ECF 30 at 4. Although it is true that "the ICE FOIA Office *again* tasked ERO with conducting a search" "[s]hortly after the filing of the lawsuit" "because ERO did not perform a search after the initial tasking," ECF 14-4 ¶ 11 (emphasis added), the ICE FOIA Director later clarified that "Plaintiffs' request was in the queue to be processed in the ordinary course of business" when the suit was filed and that "[t]he ICE FOIA Office followed its standard FOIA processing procedure in this case," ECF 29-1 ¶¶ 20–21.

they not filed suit.  Because "predictions, by their very nature, are not perfect," "the minor timeline discrepancies here" do not establish that Plaintiffs' lawsuit caused a change in ICE's position. *Grand Canyon*, 947 F.3d at 98.

Plaintiffs' next argument—that the government changed its position on certain withholdings—fails due to forfeiture.  ICE's FOIA Director admits that "[a]lthough ICE believed the Exemption 5 withholdings were proper, ICE decided to exercise its discretion and lifted the limited Exemption 5 redactions."  ECF 29-1 ¶ 22.  But Plaintiffs did not argue in their motion that they were eligible for fees based on ICE's change in position regarding such redactions.  Indeed, Plaintiffs use the word "exemption" or "exemptions" only three times in their entire motion—none in reference to the Exemption 5 invocations in particular.  It was not until their reply brief that Plaintiffs first suggested that their motion for summary judgment catalyzed ICE to remove the Exemption 5 redactions and produce an extra page beyond the 48 originally produced.  ECF 30 at 6.  Because "[i]ssues may not be raised for the first time in a reply brief," *Rollins Env't Servs. Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991), Plaintiffs forfeited this basis for fees.

Plaintiffs' strongest theory is that they are eligible for fees based on ICE's production of the ePOCR checklist.  "Under the catalyst theory, a FOIA requester is eligible for attorney's fees if the agency voluntarily or unilaterally changes its position as a result of the plaintiff's lawsuit." *Los Padres ForestWatch v. U.S. Forest Serv.*, 775 F. Supp. 3d 353, 362 (D.D.C. 2025).  The government initially refused to produce the ePOCR checklist as part of this litigation.[3]  But, during

---

[3] Plaintiffs eventually acquired a copy of the ePOCR checklist on August 27, 2024, after it was unsealed in a different case.  *See* ECF 17 at 4–5; *see also* ECF 17-3.  The government admitted that the checklist "was not included in the productions made by ICE" because "the Custody Review section of the Removal Module . . . was not checked during the searches."  ECF 20 at 6–7.  But it maintained that the ePOCR checklist was irrelevant because it was a mere worksheet and Plaintiffs had already been provided the underlying information within it.  *See id.* at 5–8.

the hearing on the motions for summary judgment, the government "voluntarily agreed to produce it" in this case.  ECF 29 at 12.  That reversal thus amounts to "a voluntary or unilateral change in position by the agency."  5 U.S.C. § 552(a)(4)(E)(ii)(II).

The government argues that production of the ePOCR checklist was insubstantial because ICE had already turned over the underlying documents referenced in it.  ECF 29 at 12–13.  "[A] voluntary or unilateral change in position by the agency" can be the basis for concluding that a plaintiff "substantially prevailed" only "if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii)(II).  The Court of Appeals has provided minimal guidance about what makes a claim "not insubstantial," and courts in this District are divided on the related—but distinct—issue of what amounts to substantially prevailing under the statute.  *Compare Mobley v. DHS*, 908 F. Supp. 2d 42, 48 (D.D.C. 2012) ("The word 'substantially' means 'in a sound or solid manner' or 'in all essential characters or features,' and thus, if a plaintiff obtains only one small piece of the relief it seeks in its complaint, as the plaintiffs did here, calling such prevalence 'substantial' is clearly incorrect." (alterations adopted) (citation omitted)), *with People for the Ethical Treatment of Animals v. NIH*, 130 F. Supp. 3d 156, 163 (D.D.C. 2015) ("While the Court agrees that the sum total of plaintiff's victory in this case was small, the test is not merely the size of the relief obtained but whether plaintiff obtained some judicial relief on the merits that resulted in a 'change in the legal relationship' between the parties.").  Because Plaintiffs received relief in the form of an actual document production, rather than a mere procedural victory, it appears that Plaintiffs' claim is "not insubstantial" with respect to convincing ICE to turn over the document.    5   U.S.C. § 552(a)(4)(E)(ii)(II).  The Court acknowledges that this issue is a close call but ultimately sides with Plaintiffs because "the processing and production of documents"—even if only six pages worth, and even if much of the underlying content was already produced—"is the entire point of

FOIA." *Elec. Priv. Info. Ctr. v. IRS*, 261 F. Supp. 3d 1, 12 (D.D.C. 2017), *aff'd*, 910 F.3d 1232 (D.C. Cir. 2018); *see also Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979) ("[T]he basic objective of the Act is disclosure.").

Moving to entitlement, the four factors weigh slightly in Plaintiffs' favor. "The first factor assesses the public benefit derived from the case and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citation and internal quotation marks omitted). That factor favors Plaintiffs—though not significantly. Plaintiff CAIR Coalition emphasizes that it sought the records about Plaintiff Rodriguez Guerra's detention as "part of a broader effort . . . to raise awareness about ICE's practice of continuing to detain certain noncitizens for months after they have won protection from deportation without properly reviewing whether continued detention is necessary or appropriate."[4]  ECF 30 at 9. "[E]valuat[ing] the specific documents at issue in the case at hand," Plaintiffs make a fair argument that the information they learned from this lawsuit—specifically, which information is compiled on the ePOCR checklist—has a potential public benefit for those challenging similar detentions by ICE. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Given past and ongoing litigation challenging ICE detentions where ePOCR checklists will presumably be consulted, the release of Rodriguez Guerra's ePOCR checklist in this suit "is likely to add to the fund of information that citizens may use in making vital political choices." *Id.* (quoting *Fenster v. Brown*, 617 F.2d 740, 744 (D.C. Cir. 1979)). To be sure, the production of the ePOCR checklist is unlikely to have a major impact on ICE detention

---

[4] That CAIR Coalition is a non-profit organization counsels in favor of fee entitlement. *See Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013) ("These factors also favor non-profit organizations . . . , which 'aim to ferret out and make public worthwhile, previously unknown government information—precisely the activity that FOIA's fees provision seeks to promote.'" (quoting *Davy*, 550 F.3d at 1160)).

disputes generally given the limited nature of the information contained therein. But the government is wrong to dismiss it as lacking "any public benefit whatsoever." ECF 29 at 19.

"The second and third parts [of the entitlement inquiry] focus on the commercial benefit to the plaintiff and the plaintiff's interest" and "are closely related and often considered together." *Cotton*, 63 F.3d at 1120 (citation and internal quotation marks omitted). The second factor supports Plaintiffs in this case, but the third factor favors the government. Although Plaintiffs did not have a commercial interest in filing their FOIA request, they certainly had a private interest in accessing Rodriguez Guerra's records to support his habeas petition. *See* ECF 1 ¶ 8 ("The FOIA request was submitted in conjunction with a federal habeas petition challenging Mr. Rodriguez Guerra's continued ICE detention and seeks information relevant to that petition."). Because those "who have a sufficient private interest in the requested information do not need the additional incentive of recovering their fees and costs to induce them to pursue their request in the courts," *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 484 (D.C. Cir. 1980), together these factors cut against Plaintiffs.

"The fourth factor considers whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162 (citations and internal quotation marks omitted). "[T]he purpose of" this factor "is to determine not whether the agency acted correctly, but rather 'whether the agency has shown that it had any colorable or reasonable basis for not disclosing' the relevant material." *Morley v. CIA*, 894 F.3d 389, 394 (D.C. Cir. 2018) (quoting *Davy*, 550 F.3d at 1163). ICE's refusal to initially provide the ePOCR checklist leads this factor to weigh in favor of Plaintiffs. Had ICE simply turned over that document—which it had no good reason not to given that it clearly fell within the bounds of Plaintiffs' request—at least

some portions of the summary judgment briefing and hearing would not have been necessary.  The government never put forth a reasonable basis for this withholding, as its arguments that Plaintiffs misunderstood how the system worked and already had the underlying documents referenced in the checklist provided no explanation for why ICE could not just produce the six-page checklist as it eventually did, or why it did not have to do so.  *See* ECF 15 at 14; ECF 20 at 5–9.  Weighing the relevant factors together, the Court concludes that Plaintiffs are entitled to attorney's fees related to the ePOCR checklist.

Because Plaintiffs are eligible for and entitled to at least some fees, the Court must determine whether Plaintiffs' requested amount of "attorney fees and other litigation costs" is "reasonable."  5 U.S.C. § 552(a)(4)(E)(i).  "A plaintiff's overall success on the merits . . . must be considered in determining the reasonableness of a fee award."  *Jud. Watch*, 470 F.3d at 369. "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  As already discussed, Plaintiffs substantially prevailed on only a narrow issue in this case:  production of the ePOCR checklist.  The Court denied their motion for summary judgment and granted the government's cross-motion in full, ECF 24, and Plaintiffs failed to establish that filing suit caused ICE to turn over the responsive documents.  A significant reduction of Plaintiffs' requested amount of $47,919.60 in fees and $480.64 in costs is therefore merited.  ECF 26-1 at 11.

"The 'usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the "lodestar" amount.'"  *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 82 F. Supp. 3d 396, 408 (D.D.C. 2015) (quoting *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C.

Cir. 1998)).  Where, as here, "the plaintiff's suit cannot be divided into discrete claims on which the plaintiff has won or lost, 'the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"  *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 774 F. Supp. 2d 225, 233 (D.D.C. 2011) (quoting *Hensley*, 461 U.S. at 435); *see also Mazloum v. District of Columbia*, 654 F. Supp. 2d 1, 4 (D.D.C. 2009) ("Courts routinely reduce the fee request by a percentage representing plaintiff's perceived success.").  This case ultimately involved 55 pages of responsive records—49 pages in the least-redacted form, produced on July 15, 2024; and 6 pages of the ePOCR checklist, produced on February 26, 2025.  ECF 23-1 ¶ 19; ECF 29-1 ¶ 22.  Because Plaintiffs substantially prevailed only as to the ePOCR checklist, the Court attempts to approximate the compensable success here by multiplying the lodestar amount by the percentage of produced pages that were part of the ePOCR checklist.  This calculation results in an award amount of $5,227.59 (the result of $47,919.60 x (6/55)).[5]  As for expenses, the Court awards the full filing fee and service of process amounts for an additional award of $480.64 because those costs would have been the same no matter the degree of Plaintiffs' success in this suit.  *See* ECF 26-2 at 6.

Concluding with fees on fees, the Court also significantly reduces Plaintiffs' requested amount.  "While it is settled in this circuit that hours reasonably devoted to a request for fees are compensable, fees on fees must be reasonable, and not excessive."  *Urb. Air Initiative, Inc. v. EPA*, 442 F. Supp. 3d 301, 326 (D.D.C. 2020) (quoting *Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015)).  And "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."  *Comm'r v. Jean*, 496 U.S. 154, 163 n.10

---

[5] Plaintiffs utilized the *Fitzpatrick* matrix to calculate the hourly rate for their proposed fees.  *See* ECF 26-1 at 10.  The government does not object to their reliance on that matrix.

(1990).  The Court therefore adopts the approach taken by other courts and awards Plaintiffs the same percentage of their requested fees on fees amount as they received for their requested fees for litigating the merits.  *See, e.g.*, *Prunty v. Vivendi*, 195 F. Supp. 3d 107, 117 (D.D.C. 2016); *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 241 (D.D.C. 2012).  This approach produces an award of $1,348.63 (the result of $12,362.40 x (6/55)) for fees on fees.

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiffs' Motion for Attorney's Fees, ECF 26, is **GRANTED IN PART** and **DENIED IN PART**; and it is further

**ORDERED** that the government shall pay Plaintiffs reasonable attorney's fees and costs in the amount of $7,056.86, which includes $5,227.59 in attorney's fees, $480.64 in costs, and $1,348.63 in fees on fees.

This is a final, appealable Order.

DATE:  June 3, 2026

_____
CARL J. NICHOLS
United States District Judge